IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK STATE RIFLE
& PISTOL ASSOCIATION, ROMOLO
COLANTONE, EFRAIN ALVAREZ, and
JOSE ANTHONY IRIZARRY,

Plaintiffs,

-against-

THE CITY OF NEW YORK,
THE NEW YORK CITY POLICE,
DEPARTMENT LICENSE DIVISION,

Defendants,

Case Number:

**COMPLAINT**

**13 CV   2115**

JUDGE SWEET

## COMPLAINT

**COME NOW** the Plaintiffs, THE NEW YORK STATE RIFLE & PISTOL

ASSOCIATION, ROMOLO COLANTONE, EFRAIN ALVAREZ and JOSE ANTHONY

IRIZARRY, by and through their undersigned counsel, and complain of the Defendants as follows:

### THE PARTIES

1.      Plaintiff Romolo Colantone is a natural person and a citizen of the United States

residing in Staten Island, New York.  Mr. Colantone is the holder of a Premises Residence firearms

license issued by the City of New York.

2.      Plaintiff Efrain Alvarez is a natural person and a citizen of the United States residing

in Bronx County, New York.  Mr. Alvarez is the holder of a Premises Residence firearms license

issued by the City of New York.  Mr. Alvarez also holds non-resident firearm permits issued by the

states of New Hampshire, Connecticut, Florida, Virginia, and Utah.

3.      Plaintiff Jose Anthony ("Tony") Irizarry is a natural person and a citizen of the

United States residing in Bronx County, New York.  Mr. Irizarry is the holder of a Premises

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

1

Residence firearms license issued by the City of New York. Mr. Irizarry also holds non-resident firearm permits issued by the states of Pennsylvania and Utah.

4. Plaintiff THE NEW YORK STATE RIFLE AND PISTOL ASSOCIATION ("NYSRPA") is a New York not-for-profit corporation having its primary place of business at 90 South Swan Street in Albany, NY. The NYSRPA is New York state's largest and the nation's oldest firearms advocacy organization. Since 1871 the NYSRPA has been dedicated to the preservation of Second Amendment rights, promotion of firearm safety, education and training, and the shooting sports. Members of the NYSRPA participate in numerous rifle and pistol matches within and without the City of New York on an annual basis. The NYSRPA brings this action on behalf of itself and its members.

5. Defendant CITY OF NEW YORK is a municipal entity organized under the Constitution and laws of the State of New York.

6. Defendant NEW YORK CITY POLICE DEPARTMENT LICENSE DIVISION is a sub-division of the CITY OF NEW YORK.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### About the NYC Permit Restriction

9. Under New York law, lawful possession of a firearm within one's home or place of business requires a permit. Penal Law §§ 265.01, 265.20(a)(3), 400. In the absence of a permit, possession of a firearm within one's home or place of business is a Class A Misdemeanor

punishable by up to one (1) year in prison, a $1,000 fine, or both. Penal Law §§ 265.01, 60.01(30), 70.15.

10.     New York City ("NYC") residents who wish to possess a firearm must first obtain a license from the New York City Police Department ("NYCPD"). There are several different types of licenses that can be obtained in NYC: premises (residence or business), carry business, limited carry business, carry guard / gun custodian, and special carry (special carry business and special carry guard / gun custodian). Applicants for any of these licenses must complete a detailed application form and undergo an interview with a licensing officer. NYC firearms licenses must be periodically renewed and are subject to revocation for various reasons (including violations of the terms of the license itself). It is the responsibility of the NYCPD's License Division to issue, renew, monitor, and revoke firearm permits for New York City residents.

**About the Plaintiffs**

11.     Plaintiff Romolo Colantone applied for and received a NYC firearms license approximately thirty three (33) years ago, in the year 1979. At that time, the license was known as a "target" license. Mr. Colantone's license was regularly renewed, and is now known as a Premises Residence license.

12.     Mr. Colantone regularly traveled outside of both New York City and New York State to attend regional indoor and outdoor competitive shooting events, such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey, and the Steel Challenge Championships (steel target) in Old Bridge, New Jersey.

13.     Mr. Colantone's family has owned land in the Catskills region of New York for thirty two (32) years. Eight (8) years ago, Mr. Colantone built a second family home in Hancock, New York. Mr. Colantone and his family visit their land and second home several times each year.

They enjoy hunting and fishing during in-season, and also spend summer vacations on the property. The Colantone's Hancock house is located in a remote area, and as such presents a threat to the safety of Mr. Colantone and his family while there.

14.     Mr. Alvarez applied for and received a NYC firearms license approximately twenty five (25) years ago. At that time, the license was known as a "target" license. Mr. Alvarez's license was regularly renewed, and is now known as a Premises Residence license.

15.     Mr. Alvarez regularly traveled outside of both New York City and New York State to attend regional indoor and outdoor competitive shooting events such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey, the Steel Challenge Championships (steel target) in Old Bridge, New Jersey.

16.     Mr. Irizarry applied for and received a NYC Premises Residence firearms license in the year 2004.

17.     Mr. Irizarry regularly traveled outside of both New York City and New York State to attend regional indoor and outdoor competitive shooting events, such as the NRA Sectional Championships (paper target) in Roslyn, New York and Old Bridge, New Jersey, the Steel Challenge Championships (steel target) in Old Bridge, New Jersey.

## About 38 RCNY § 5-23

18.     On or about May 31st, 2001, Title 38 of the Rules of the City of New York was amended to read in pertinent part as follows:

> §5-23  *Types of Handgun Licenses.*
>
> (a)     ***Premises License-Residence or Business.*** *This is a restricted handgun license, issued for the protection of a business or residence premises.*

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

*(1)   The handguns listed on this license may not be removed from the address specified on the license except as otherwise provided in this chapter.*

*(2)   The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license.*

*(3)   To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, and in a locked container, the ammunition to be carried separately.*

*(4)   A licensee may transport his/her handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department – City of New York Hunting Authorization" Amendment attached to her/his license.*

19.   On May 8th, 2012 plaintiff Romolo Colantone wrote to Deputy Inspector Andrew Lunetta of the NYCPD License Division and inquired of his ability under the terms of his NYC Premises Residence license to participate in the 2012 World Class Steel Northeast Regional Championship, to be held at the Old Bridge Rifle & Pistol Club in Old Bridge, New Jersey on June 1st, 2012. (A copy of Mr. Colantone's 05/08/12 letter is attached hereto as Exhibit A).

20.   In a letter dated May 15th, 2012, Deputy Inspector Lunetta advised Mr. Colantone that:

*The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner. Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.*

*Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New York designated by the New York State Fish and Wildlife Law for the purpose of hunting: no areas outside of New York State are permissible for this purpose.*

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

> *These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.*

(A copy of Deputy Inspector Lunetta's 05/15/12 letter is attached hereto as <u>Exhibit B</u>).

## About the Impact of the Licensing Restriction on the Plaintiffs and the Public

21.     As mentioned above, it was Mr. Colantone's intention to attend the Steel Challenge regional shooting competition in Old Bridge, NJ on June 1st, 2012.  However, in direct response to Deputy Inspector Lunetta's May 15th, 2012 letter, Mr. Colantone did not attend the Old Bridge competition.  Mr. Colantone has refrained from attending any shooting events with his handgun that take place outside the City of New York since May 15th, 2012, for fear of the revocation of his Premises Residence license, and also for fear of arrest, criminal prosecution and imprisonment.

22.     Efrain Alvarez intended to attend the Steel Challenge regional shooting competition on Old Bridge, NJ on June 1st, 2012, as well as the IDPA Postal Matches hosted by the Metacon Gun Club in Simsbury, CT.  However, Mr. Alvarez was advised by the hosts of the Old Bridge competition that he was not allowed to attend at and compete at future Old Bridge competitions because the enforcement of 38 RCNY § 5-23 by the New York City Police Department made his attendance illegal.

23.     Tony Irizarry intended to attend the Steel Challenge regional shooting competition on Old Bridge, NJ on June 1st, 2012.  However, Mr. Irizarry was advised by the hosts of the Old Bridge competition that he was not allowed to attend at and compete at future Old Bridge competitions because the enforcement of 38 RCNY § 5-23 by the New York City Police Department made his attendance illegal.

24.     As a direct and proximate result, Efrain Alvarez and Tony Irizarry did not attend the Old Bridge or Simsbury competitions.   Mr. Alvarez and Mr. Irizarry have refrained from attending any shooting events that take place outside the City of New York since June of 2012, for fear of the revocation of their Premises Residence licenses, and also for fear of arrest, criminal prosecution, and imprisonment.

**About the Benefits of Shooting Sports & the Frequency of Shooting Competitions**

25.     Familiarity with firearms, and proficiency in their use, are a pre-requisite to the safe and responsible use of firearms for private and public self-defense, and the defense of one's home.

26.     Proficiency with firearms promotes public safety.   Gun owners trained in and familiar with the operations of their guns are less likely to be involved in accidental shootings, and more likely to successfully use their firearms in self-defense in case of need.

27.     Recreational and competitive sport shooting are traditional uses of firearms in the United States.   Recreational and competitive sport shooting events promote, foster and further individual proficiency in and familiarity with the safe and responsible use of firearms.

28.     The promotion of civilian marksmanship has been a priority of the federal government throughout American history, beginning with the Second Militia Act of 1792 and continuing through today with the modern implementation of the Civilian Marksmanship Program through the federally-charted Corporation for the Promotion of Rifle Practice and Firearms Safety, 36 U.S.C. § 4701, et seq.

29.     Target shooting builds understanding and respect for firearms, and teaches patience, discipline, and hand-eye coordination skills.   Shooting sports and hunting are rated among the safest forms of recreation.   Some 40 million people of all ages safely participate in these activities across the United States each year.

30. Gun ranges, and recreational and competitive shooting events open to the public exist in every American state.

31. The sport of competitive target shooting is defined in large part by travel. It is the nature and tradition of shooting competitions for a match or championship to be "hosted" by a range or gun club, and to be attended by numerous competitors from within the region.

32. There are hundreds of indoor and outdoor competitive shooting events held across the United States each year. In the Northeast, some of these include the Crossman Northeast Field Target Championships (held in Bloomfield, NY); the Schutzenfest Sporting Clays and Top Shot Competition (held each year in North Tonawanda, NY); the SCTP Mid-Atlantic Regional Olympic Trap Championships (held each year in Dalmatia, PA); and the World Class Steel Regional Championships (held each year in either Roslyn, NY or Old Bridge, NJ).

33. Defendant City of New York recognizes the value of firearms training and proficiency, as evidenced by 38 RCNY § 5-23(a)(3)'s stated purpose of maintaining "proficiency with the handgun." In addition, 38 RCNY § 5-22(14) (captioned "licensee responsibilities") states that "the licensee should endeavor to engage in periodic handgun practice at an authorized small arms range/shooting club." Id.

34. Despite the fundamental importance of training and practice as a pre-requisite to the safe and responsible use of a firearm, only one (1) shooting range that is open to the public exists within the borders of New York City: the West Side Pistol & Rifle Range ("WSPRR") located at 20 West 20th Street in Manhattan. New visitors to the WSPRR are required to schedule appointments at least five (5) days in advance of visiting the range, and must undergo a separate criminal background check prior to gaining entry to the facility.

35.    The WSPRR does not hold any form of competitive shooting matches on a regular basis.

36.    New York City residents who wish to abide by 38 RCNY § 5-23, but who are not able to obtain practice time at the WSPRR are faced with the choice of either not practicing safe handgun skills under any circumstances, or otherwise applying for membership in a private gun club located within New York City's borders. Membership in such clubs is a privilege, not a right, and is in no way guaranteed. In addition, obtaining membership in such club entails the paying of application fees, membership fees, and regular dues to the club.

37.    In this manner, 38 RCNY § 5-23 imposes a financial burden on the exercise of a fundamental constitutional right, and forces New York City residents to associate with certain groups of individuals solely for the purposes of exercising a fundamental constitutional right.

## COUNT I

### RIGHT TO KEEP AND BEAR ARMS
### U.S. CONSTITUTION, AMENDMENTS II AND XIV
### 42 U.S.C. § 1983

38.    Paragraphs 1 though 37 are hereby incorporated as if fully repeated herein.

39.    The Second Amendment, which applies against the City of New York and the NYCPD License Division by operation of the Fourteenth Amendment, secures the plaintiffs' individual and fundamental "core" right to possess and carry a firearm for the purposes of public and private defense, and the defense of hearth and home.

40.    The safe, responsible and meaningful exercise of the Second Amendment right by an individual requires unrestricted access to gun ranges and shooting events in order to practice and perfect safe gun handling skills. The Second Amendment secures the right to operate firearms at a

range for the purposes of learning about firearms, gaining proficiency with firearms, and obtaining any and all training required as a condition of firearms ownership, recreation, and competition.

41.     38 RCNY § 5-23 impermissibly restricts a New York City resident's exercise of the Second Amendment right by completely prohibiting that resident from practicing safe gun handling at a target range or shooting event that is located beyond the borders of NYC.

42.     By limiting New York City residents to attending shooting events within New York City borders, when in reality no shooting events take place within New York City borders, 38 RCNY § 5-23 effectuates a total ban on a New York City resident's ability to attend shooting events.

43.     By prohibiting attendance at shooting events, and by limiting New York City residents such as Romolo Colantone, Efrain Alvarez, and Tony Irizarry to practicing at the single gun range open to the public within the City of New York, 38 RCNY § 5-23 defeats their ability to practice, hone and perfect safe gun handling skills.

44.     38 RCNY § 5-23 impedes gun ownership itself and frustrates its own stated goal of obtaining "proficiency with the handgun" by unreasonably limiting, and effectively barring, the plaintiffs' access to the useful information and experience inherently necessary to the exercise of Second Amendment rights.

45.     The defendants have no compelling interest in prohibiting New York City residents from practicing at shooting ranges or recreational or competitive shooting events located outside the borders of New York City. Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving that interest.

46.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from practicing at shooting ranges or recreational or

competitive shooting events located outside the borders of New York City.  Even assuming, *arguendo*, that such an important or substantial governmental interest exists, 38 RCNY § 5-23 is not substantially related to achieving this interest.

47.     In the foregoing ways, and for the foregoing reasons, 38 RCNY § 5-23 is unreasonably and unconstitutionally restrictive, and improperly infringes upon the exercise of the plaintiffs' "core" Second Amendment right.

48.     By enacting and enforcing 38 RCNY § 5-23 in violation of the plaintiffs' constitutional rights under the Second Amendment, the defendants have caused the plaintiffs irreparable harm.

49.     By enacting and enforcing 38 RCNY § 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the U.S. Constitution. Plaintiffs are thereby damaged in violation of 42 U.S.C. § 1983.

50.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the defendants' unconstitutional customs, policies and practices.

## COUNT II

### RIGHT TO INTERSTATE AND INTRASTATE TRAVEL
### U.S. CONSTITUTION, ARTICLE IV, § 2 and AMENDMENT XIV
### 18 U.S.C. § 926A, 42 U.S.C. § 1983

51.     Paragraphs 1 though 50 are hereby incorporated as if fully repeated herein.

52.     The U.S. Constitution protects a citizen's fundamental right to travel within the United States.  This fundamental constitutional right has, at times, been called "the right to free movement."

53.     The fundamental constitutional right to free movement finds its origin in both the Privileges and Immunities Clause of Article IV, § 2 of the U.S. Constitution, and the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution.

54.     U.S. citizens also possess a fundamental constitutional right to travel freely within one's own state.

55.     Individuals who lawfully possess firearms have a federal statutory right to travel both interstate and intrastate with those firearms under 18 U.S.C. § 926A ("the Firearms Owners Protections Act").

56.     By prohibiting New York City residents such as the plaintiffs from attending at shooting ranges or shooting events located beyond the borders of New York City, 38 RCNY § 5-23 violates the plaintiffs' fundamental constitutional rights to interstate and intrastate travel, and also their federal statutory rights to lawfully travel with firearms under the Firearms Owners Protections Act.

57.     The defendants have no compelling interest in prohibiting New York City residents from exercising their fundamental rights to intrastate travel or interstate travel, or in prohibiting New York City residents from lawfully traveling with their firearms beyond the borders of New

York City.  Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving such interest.

58.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from exercising their fundamental rights to intrastate travel or interstate travel, or in prohibiting New York City residents from lawfully traveling with their firearms beyond the borders of New York City.  Even assuming, *arguendo*, that such an important or substantial governmental interest exists, 38 RCNY § 5-23 is not substantially related to achieving this interest.

59.     In the foregoing ways, and for the foregoing reasons, 38 RCNY § 5-23 is unreasonably and unconstitutionally restrictive, and improperly infringes upon the plaintiffs' exercise of the constitutional right to interstate travel and intrastate travel, and the plaintiffs' statutory right to travel with legally possessed firearms.

60.     By enacting and enforcing 38 RCNY § 5-23 in violation of the plaintiffs' rights constitutional right to interstate travel and intrastate travel, and the plaintiffs' statutory right to travel with legally possessed firearms, the defendants have caused the plaintiffs irreparable harm.

61.     By enacting and enforcing 38 RCNY§ 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their constitutional right to interstate travel and intrastate travel in violation of the Privileges and Immunities Clause of Article IV, § 2 of the U.S. Constitution, and the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution,  and their statutory right to travel with legally possessed firearms under the Firearms Owners Protections Act.  Plaintiffs are thereby damaged in violation of 42 U.S.C. § 1983.

62.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the defendants' unconstitutional customs, policies and practices.

## COUNT III

### FREE SPEECH
### U.S. CONSTITUTION, AMENDMENTS I and XIV
### 42 U.S.C. § 1983

63.     Paragraphs 1 though 62 are hereby incorporated as if fully repeated herein.

64.     The First Amendment, which applies against the defendant City of New York and New York City Police Department by operation of the Fourteenth Amendment, secures the plaintiffs' fundamental right to freedom of association, and also the right to receive education and instruction in the use of firearms, including the right to receive the training recognized by the defendants as a prerequisite to owning firearms.

65.     By enacting and enforcing a rule that prohibits the plaintiffs' right to travel to and attend at shooting ranges and shooting competitions outside the City of New York, and by forcing New York City residents to join private gun clubs (and incur the fees and expenses related to such private memberships) in order to exercise a fundamental constitutional right, the defendants have violated the plaintiffs' right to free speech and freedom of association in violation of the First Amendment to the U.S. Constitution.

66.     The defendants have no compelling interest in prohibiting New York City residents from traveling to extra-territorial gun ranges, from participating in extra-territorial competitive shooting events, and forcing New York City residents to join private gun clubs (and incur the fees and expenses related to such private memberships) in order to exercise a fundamental constitutional

right. Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving such interest.

67.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from traveling to extra-territorial gun ranges, in prohibiting New York City residents from participating in extra-territorial competitive shooting events, and in forcing New York City residents to join private gun clubs (and incur the fees and expenses related to such private memberships) in order to exercise a fundamental constitutional right. Even assuming, *arguendo*, that such an important or substantial interest exists, 38 RCNY § 5-23 is not substantially related to achieving such interest.

68.     In the foregoing ways, and for the foregoing reasons, 38 RCNY § 5-23 is unreasonably and unconstitutionally restrictive, and improperly infringes upon the plaintiffs' exercise of the constitutional right to free speech and freedom of association.

69.     By enacting and enforcing 38 RCNY § 5-23 in violation of the plaintiffs' right to free speech and freedom of association in violation of the First Amendment to the U.S. Constitution, the defendants have causes the plaintiffs irreparable harm.

70.     By enacting and enforcing 38 RCNY§ 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their constitutional right to free speech and freedom of association in violation of the First Amendment to the U.S. Constitution. Plaintiffs are thereby damaged in violation of 42 U.S.C. § 1983.

71.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the defendants' unconstitutional customs, policies and practices.

## COUNT IV

### COMMERCE CLAUSE
### U.S. CONSTITUTION, ARTICLE I, § 8, CLAUSE 3
### 42 U.S.C. § 1983

72.     Paragraphs 1 though 71 are hereby incorporated as if fully repeated herein.

73.     The Commerce Clause provides that "the Congress shall have Power . . . to regulate Commerce . . . among the several States." Art. I, § 8, cl. 3. Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a "negative" aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.

74.     The Framers granted Congress plenary authority over interstate commerce in order to avoid economic Balkanization amongst the States. The constitutional principle that drives resistance to economic protectionism is that the economic unit in the United States is the nation itself. It is the nation alone has the gamut of powers necessary to control of the economy. A corollary to this principle is that the states are not separable economic units.

75.     Restricting NYC residents to using only those firing ranges that exist within NYC borders does nothing to promote proficiency in the use of firearms, enhance awareness of firearms safety principles, or encourage the safe and responsible use of firearms.

76.     The defendants have no evidence showing that the physical facilities of the gun ranges within NYC borders firearms are safer than the facilities of gun ranges that exist outside of NYC borders. Similarly, the defendants lack any proof that the safety training principles utilized by NYC gun ranges are so advanced and/or unique that (when compared to those utilized by non-NYC ranges) requiring a NYC resident to practice firearms safety at a NYC gun range produces greater firearms proficiency and/or greater awareness of firearms safety in NYC residents. The

GOLDBERG SEGALLA, LLP
11 Martine Avenue, Suite 705
White Plains, NY 10606
(914) 798-5400

16

defendants have no proof that requiring NYC residents to use only NYC gun ranges has reduced (or even impacted) the incidence of intentional or accidental gun violence within NYC borders. Enacting and enforcing 38 RCNY § 5-23 therefore produces no putative local benefits to NYC residents and serves no legitimate local public interest.

77.     In enacting and enforcing  38 RCNY § 5-23 the defendants seek to regulate and control an activity that takes place wholly outside of the borders of New York City and New York State: attendance at non-NYC approved gun ranges and participation in competitive sport shooting events beyond NYC's borders. The Commerce Clause prohibits the application of a statute or regulation to commerce that occurs wholly beyond a municipality's or state's borders.

78.     Gun ranges that operate beyond NYC borders welcome NYC residents who are lawfully licensed to carry firearms. The sponsors of competitive shooting events that occur in other states do the same.  The issues of whether a NYS resident who is legally permitted to carry a firearm in NYC can practice target shooting at, e.g., a Yonkers gun range, or can attend a competitive shooting event in, e.g., Old Bridge, NJ are properly resolved by the local legislatures of Yonkers or Old Bridge, or the state legislature of New Jersey.  The City of New York has no say in such matters. As such, the enactment and enforcement of 38 RCNY § 5-23 exceeds the inherent limits of the defendants' authority and is invalid regardless of whether § 5-23's extraterritorial reach was intended by the City of New York.

79.     To the extent that the legislative bodies of municipalities and states beyond the borders of NYC or NYS have decided that NYS residents who legally possess firearms *are* welcome to attend local gun ranges and shooting events, the enactment and enforcement of 38 RCNY § 5-23 by the defendants impermissibly interferes with these legitimate local legislative decisions.   This interference violates the Commerce Clause.

80.     The defendants have no compelling interest in prohibiting New York City residents from traveling to extra-territorial gun ranges and prohibiting them from participating in extra-territorial competitive shooting events.  Even assuming, *arguendo*, that such a compelling interest exists, 38 RCNY § 5-23 is not the least restrictive means of achieving such interest.

81.     The defendants do not have an important or substantial governmental interest in prohibiting New York City residents from traveling to extra-territorial gun ranges, or in prohibiting New York City residents from participating in extra-territorial competitive shooting events.   Even assuming, *arguendo*, that such an important or substantial interest exists, 38 RCNY § 5-23 is not substantially related to achieving such interest.

82.     By enacting and enforcing a rule that prohibits the plaintiffs' right to travel to and attend at shooting ranges and shooting competitions outside the City of New York and the State of New York, the defendants have violated the plaintiffs' constitutional rights under the Commerce Clause and have caused the plaintiffs irreparable harm.

83.     By enacting and enforcing 38 RCNY§ 5-23 the defendants, acting under the color of law, have deprived New York City residents, including the plaintiffs, of their rights under the Commerce Clause in violation of Article I, § 8, clause 3 of the U.S. Constitution.  Plaintiffs are thereby damaged in violation of 42 U.S.C. § 1983.

84.     Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the defendants' unconstitutional customs, policies and practices.

**PRAYER FOR RELIEF**

Plaintiffs request that judgment be entered in their favor and against the Defendants as follows:

1.      An order preliminarily and permanently enjoining the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 38 RCNY § 5-23's prohibition from traveling beyond the borders of the City of New York to attend at a gun range, shooting competition, or to use a lawfully possessed and licensed firearm for the purposes of defending one's home, person, and/or property;

2.      Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

3.      Declaratory relief consistent with the injunction;

4.      Costs of suit; and

5.      Any other such further relief as the Court deems just and proper.

Dated:  New York, New York
        March 29, 2013

                                 GOLDBERG SEGALLA LLP

                            By: _____
                                 Brian T. Stapleton, Esq. (BS 5640)
                                 Matthew S. Lerner, Esq. (ML 2020)
                                 Frank J. Ciano, Esq. (FC 4891)
                                 *Attorneys for Plaintiffs*
                                 11 Martine Avenue, Suite 750
                                 White Plains, New York 10606-1934
                                 (914) 798-5400
                                 bstapleton@goldbergsegalla.com
                                 mlerner@goldbergsegalla.com
                                 fciano@goldbergsegalla.com

353636.1

# Exhibit A



POLICE DEPARTMENT

**Commanding Officer, License Division**
**One Police Plaza, Rm. 110A**
**New York, NY 10038**
**Tel: (646) 610-5560**
**Fax: (646) 610-6399**

May 15, 2012

Mr. Romolo Colantone
129 Robinson Avenue
Staten Island, NY 10312-06213

Dear Mr. Colantone:

This is in response to your question about whether participation in a handgun competition in New Jersey would be in compliance with the terms and conditions of your New York City Premise Residence license. With the exception noted below, New York City Premises Residence licenses are only valid in the City of New York.

The following sections from the Rules of the City of New York regarding Premise Residence licenses relate to your question:

38 RCNY § 5-23 (a) (3) To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, in a locked container, the ammunition to be carried separately.

38 RCNY § 5-23 (a) (4) A licensee may transport her/his handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department -- City of New York Hunting Authorization" Amendment attached to her/his license.

The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner. Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence license holders are those located in New York City.

Premise license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of the City of New

York designated by the New York State Fish and Wildlife Law for the purpose of hunting; no areas outside of New York State are permissible for this purpose.

These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.

I hope that this information is helpful to you.

Very truly yours,

Andrew Lunetta
Deputy Inspector