IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NEW YORK STATE RIFLE AND PISTOL ASSOCIATION, INC., et al, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 1:13-cv-02115-RWS |
| THE CITY OF NEW YORK, et al, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR A PRELIMINARY INJUNCTION

COME NOW the Plaintiffs NEW YORK STATE RIFLE AND PISTOL ASSOCIATION,

INC.; ROMOLO COLANTONE; EFRAIN ALVAREZ; and JOSE ANTHONY IRRIZARRY, by

and through counsel, hereby set forth the following facts, reasons, and authorities in support of their

motion for a preliminary injunction.

Dated: May 7, 2013

Respectfully Submitted,

GOLDBERG SEGALLA, LLP

By:   /s/   Brian T. Stapleton
Brian T. Stapleton, Esq. (BS 5640)
Matthew S. Lerner. Esq. (ML 2020)
11 Martine Avenue, Suite 750
White Plains, New York 10606-1934
(914) 798-5400
bstapleton@goldbergsegalla.com

***Counsel For Plaintiffs***

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. iiii

I. Introduction And Summary Of Argument ........................................................... 1

II. Statement Of Facts ............................................................................................. 4

    A. New York City's Restrictive Licensing Regime ............................................ 4

    B. 38 RCNY § 5-23's Unconstitutional Restrictions ......................................... 5

III. Standard Of Review ........................................................................................... 7

IV. Argument ............................................................................................................ 8

    A. Plaintiffs Are Overwhelmingly Likely To Prevail On The
    Merits of Their Constitutional Claims. ........................................................... 8

        1. 38 RCNY § 5-23 Violates The Second Amendment
        By (1) Restricting A Licensee's Ability To Possess
        A Handgun Subject To A Premises Residence
        Licence Issued By New York City In A Licensee's
        Second Home Beyond The Borders of New York City,
        And (2) Restricting A Licensee From Engaging In Target
        Practice and Participating In Shooting Competitions ......................... 9

           a. 38 RCNY § 5-23 Unduly Burdens The Core Right
           Identified In *Heller* And Is Thus Unconstitutional ......................... 9

           i. 38 RCNY § 5-23 Unduly Burdens The Core Right To
           Use Arms In Defense of Hearth And Home ..................................... 10

           ii. 38 RCNY § 5-23 Unduly Burdens The Core Right To
           Perfect The Skills Necessary To Possess And Carry
           Weapons In Case of Confrontation ................................................. 12

           iii. Under The Holdings In *Heller* And *McDonald*
           38 RCNY § 5-23's Restrictions Are Unconstitutional ......................... 14

           b. 38 RCNY § 5-23 Fails Under Any Arguably
           Applicable Standard Of Scrutiny ..................................................... 15

# TABLE OF CONTENTS
(continued)

2. New York City's Restrictions On Target Practice And Competitive Shooting Infringe Plaintiffs' First Amendment Rights ................................................................................................... 17

3. New York City's Restrictions On Target Practice And Competitive Shooting Violate Plaintiffs' Constitutional Right To Travel And The Firearms Owners Protections Act ............................ 20

4. New York City's Restrictions On Target Practice And Competitive Shooting Violate The Dormant Commerce Clause .................................................................................................. 22

B. Plaintiffs Will Suffer Irreparable Harm In The Absence Of A Preliminary Injunction ................................................................ 24

C. Granting Preliminary Injunctive Relief Is In The Public Interest .................... 25

V. CONCLUSION ................................................................................ 25

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

# **TABLE OF AUTHORITIES**

## CASES

*Abood v. Detroit Bd. of Ed.*,
431 U.S. 209 (1977)..............................................................................................19

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)..............................................................................................18

*Ashcroft v. ACLU*,
542 U.S. 656, 666 (2004.......................................................................................15

*Bach v. Pataki*,
408 F.3d 75, 83-86 (2d Cir. 2005).........................................................................1

*Bates v. City of Little Rock*,
361 U.S. 516, 522-23 (1960...................................................................................17

*Burdick v. Takushi*,
504 U.S. 428, 434 (1992).......................................................................................18

*Charette v. Town of Oyster Bay*,
159 F.3d 749, 755 (2d Cir. 1998). ..........................................................................8

*Clark v. Jeter*,
486 U.S. 456, 461 (1988).......................................................................................15

*District of Columbia v. Heller*,
554 U.S. 570 (2008),...............................................................................................1

*Edwards v. California*,
314 U.S. 160 (1941)..............................................................................................20

*Emp't Div., Dep't of Human Res. Of Oregon v. Smith*,
494 U.S. 872, 877-78 (1990).................................................................................13

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
489 U.S. 214, 226 (1989).......................................................................................15

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011),.................................................................................13

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

iii

*Freedom Holdings Inc. v. Spitzer,*
357 F.3d 205, 216 (2d Cir. 2004) ............................................................................. 22

*Gibbons v. Ogden,*
22 U.S. 1, 27 (1824) ................................................................................................. 23

*Green Party of New York State v. New York State Bd. of Elections,*
389 F.3d 411, 419 (2d Cir. 2004 ............................................................................... 18

*Grosjean v. American Press Co.,*
297 U.S. 233 (1936 ................................................................................................... 17

*Johnson v. Miles,*
355 F. App'x 444, 446 (2d Cir. 2009) ....................................................................... 24

*Jolly v. Coughlin,*
76 F.3d 468, 482 (2d Cir.1996) ................................................................................ 24

*Kachalsky v. County of Winchester,*
701 F.3d 81, 88 (2d Cir. 2012) ................................................................................... 9

*Keller v. State Bar of Cal.,*
496 U.S. 1 (1990) ..................................................................................................... 19

*King v. New Rochelle Mun. Hous. Auth.,*
442 F.2d 646, 648 (2d Cir. 1971) ............................................................................. 20

*Ligon v. City of New York,*
12 CIV. 2274 SAS, 2013 WL 628534 (S.D.N.Y. Feb. 14, 2013) ............................... 24

*McDonald v. City of Chicago,*
130 S. Ct. 3020, 3026 (2010) ..................................................................................... 1

*Metro. Taxicab Bd. of Trade v. City of New York,*
615 F.3d 152, 156 (2d Cir. 2010) ............................................................................... 8

*Murdock v. Commonwealth of Pennsylvania,*
319 U.S. 105 (1943) ................................................................................................. 17

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

iv

# TABLE OF AUTHORITIES
(continued)

*Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*,
511 U.S. 93, 98 (1994)..................................................................................... 22

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
460 U.S. 37, 54 (1983 ..................................................................................... 15

*Red Earth LLC v. United States*,
657 F.3d 138, 143 (2d Cir. 2011) ..................................................................... 8

*Richmond Newspapers v. Virginia*,
448 U.S. 555, 579-80 (1980). ........................................................................ 13

*Saenz v. Roe*,
526 U.S. 489, 500 (1999).................................................................................. 20

*Selevan v. New York Thruway Auth.*,
584 F.3d 82, 90 (2d Cir. 2009) ........................................................................ 22

*Shapiro v. Thompson*,
394 U.S. 618, 634 (1969)................................................................................. 20

*Statharos v. N.Y. City Taxi & Limousine Comm'n*,
198 F.3d 317, 322 (2d Cir. 1999...................................................................... 24

*Ullman v. United States*,
350 U.S. 422, 428–29 (1956)........................................................................... 15

*United States v. Decastro*,
682 F.3d 160, 167 (2d Cir. 2012) .................................................................... 10

*United States v. Guest*,
383 U.S. 745 (1966); ........................................................................................ 20

*United States v. Playboy Entm't Grp., Inc.*,
529 U.S. 803, 813 (2000)................................................................................. 15

*United States v. United Foods, Inc.*,
533 U.S. 405, 410 (2001)................................................................................. 19

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7ᵗʰ Floor
White Plains, NY 10607
(914) 798-5400

v

# TABLE OF AUTHORITIES
(continued)

*West Virginia Bd. of Ed. v. Barnette*,
319 U.S. 624 (1943)...........................................................................................19

*Wooley v. Maynard*,
430 U.S. 705, 714 (1977).....................................................................................19

## STATUTES

18 U.S.C. § 926A.................................................................................................2

N.Y. Penal Law § 60.01........................................................................................3

N.Y. Penal Law § 70.15........................................................................................3

N.Y. Penal Law § 265.01.......................................................................................3

N.Y. Penal Law § 265.20(a)(3)................................................................................3

N.Y. Penal Law § 400...........................................................................................3

## TREATISES

11A Charles Alan Wright et al.,
*Federal Practice & Procedure* §2948.1 (2d ed. 1995)...................................................20

Benjamin Vaughan Abbott,
*Judge and Jury: A Popular Explanation of the Leading Topics in the law of the Land* (1880)..........9

Thomas Cooley,
*Treatise on Constitutional Limitations* (1868) ...........................................................9

## REGULATIONS

38 RCNY § 5-23..........................................................................................passim

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. IV, § 2 ........................................................................................................... 16

U.S. Const. art. I, § 8, cl. 3 ...................................................................................................... 18

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), marked a watershed moment in Second Amendment jurisprudence. Resolving a question that had been the subject of ongoing debate for the better part of a century, the Court concluded that the text, structure, and history of the Second Amendment confirm that it "confer[s] an individual right to keep and bear arms." *Id.* at 595. Two years later, the Court concluded in *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010), that this individual right is a fundamental one that applies with full force to the States.

Given that *Heller*'s holding was contrary to the law that had governed most of the Nation, including in the Second Circuit, *see Bach v. Pataki*, 408 F.3d 75, 83-86 (2d Cir. 2005), one would have expected to see states and municipalities respond by examining their laws to determine whether they were consistent with the fundamental individual right the Supreme Court recognized. Instead, municipalities have doubled down. The nearly five years since *Heller* was decided have been marked by intransigence if not outright defiance of the Court's decision. States and municipalities continue to enforce pre-*Heller* regulatory regimes, premised on the mistaken belief that the Second Amendment does not protect an individual right, as if nothing happened.

New York City is a prime example. Plaintiffs in this case are law-abiding citizens who have obtained handgun premises licenses from New York City, and that is no small feat. But the promise of such a license is largely defeated by a series of regulations that are inconsistent with the Second Amendment and other basic constitutional freedoms. Pursuant to a New York City regulation adopted in 2001—38 RCNY § 5-23—plaintiffs may possess a handgun for protection in their premises which address is specified on their licenses but cannot transport their handguns outside of

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

1

New York City for use of protection in their second homes. They can, however, transport the handguns to and from an authorized area designated by the New York State and Wildlife Law. Thus, 38 RCNY § 5-23 allows plaintiffs to use their handguns outside of the boundaries of New York City in certain defined areas for recreation and sport but precludes their ability to protect themselves in second homes outside the City's boundaries. The restriction leads to the bizarre result of violating the core Second Amendment right to self-protection in the home and endorsing hunting outside of New York City. The regulation places more value on hunting than self-protection in one's home. There is no less need for self-protection in a second home, which is often located in rural area and not constantly inhabited, making it an attractive target for criminal activity.

Also pursuant to the regulation, plaintiffs may only hone their handgun skills at small arms ranges and shooting clubs located within New York City. But there is only one such range that is open to the public within City boundaries, access to that range is restricted, and competitive shooting matches are not held there on a regular basis. Moreover, while there are private shooting clubs in New York City, membership in such clubs is far from guaranteed and, if obtained, can be quite expensive. Plaintiffs may not travel with their handguns—even securely stored and unloaded—to use them for training or target practice outside of New York City and may not travel to neighboring States to participate in shooting competitions.

This Court should enter a preliminary injunction enjoining enforcement of 38 RCNY § 5-23. There is a substantial, indeed overwhelming, likelihood that plaintiffs will prevail on the merits of their constitutional claims. *First*, and most obviously, 38 RCNY § 5-23 violates the Second Amendment. The Second Amendment protects the right to keep and bear arms for self-defense within the home. The right to keep and bear arms also necessarily includes the right to acquire and

maintain proficiency in the use of arms. New York City's restriction on target practice and competitive shooting unconstitutionally burdens this core Second Amendment right. *Second*, the City's restrictions run afoul of the First Amendment. By prohibiting licensed City residents from taking their handguns outside the City, 38 RCNY § 5-23 prevents gun owners from associating with the ranges and shooting competitions they prefer, and, in effect, forces residents to become members of private New York City gun clubs they may rather not be associated with. The City's restriction also adversely impacts residents' First Amendment right to teach and learn about how to safely and effectively use a handgun. *Third*, New York City's flat out prohibition on transporting handguns outside of City limits for purposes of target practice or competitive shooting infringes on the fundamental right to intrastate and interstate travel and is in direct conflict with the federal Firearm Owners Protection Act, 18 U.S.C. § 926A. *Fourth*, because 38 RCNY § 5-23 has the practical effect of controlling activity occurring entirely outside New York City boundaries and imposes burdens on interstate commerce without creating commensurate local benefits, it violates the dormant Commerce Clause.

The other injunction factors strongly counsel in favor of granting a preliminary injunction as well. That the violation of a constitutional right constitutes irreparable harm for the purpose of a preliminary injunction is hornbook law, and here plaintiffs are being prohibited from exercising their fundamental First and Second Amendment rights and right to travel. Furthermore, the public interest will be served by the grant of a preliminary injunction—enjoining enforcement of 38 RCNY § 5-23 will mean that New York City residents can protect themselves, their families, and their property in second homes outside of New York City. Additionally, New York City residents will have more outlets at which to practice safe and responsible gun use.

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

## II.    STATEMENT OF FACTS

### A.    New York City's Restrictive Licensing Regime

New York law requires an individual to obtain a permit in order to possess a firearm in his home or place of business.  N.Y. Penal Law §§ 265.01, 265.20(a)(3), 400.  In the absence of a permit, possession of a firearm within one's home or place of business is a Class A Misdemeanor punishable by up to one year in prison, a $1,000 fine, or both.  N.Y. Penal Law §§ 265.01, 60.01(3), 70.15.  In New York City, firearms licensing is controlled by the New York City Police Department ("NYCPD").  Applicants for any license supplied by the NYCPD—including a Premises Residence License, which allows an individual to keep a handgun in his home—must complete a detailed application form and undergo an interview with a licensing officer.  New York City firearms licenses are periodically reviewed and are subject to revocation for various reasons, including violations of the terms of the license itself.  It is the responsibility of the NYCPD's License Division to issue, renew, monitor, and revoke firearm permits for New York City residents.

New York City Premises Residence Licenses come with a number of restrictions.  As relevant here, Title 38 was amended in May 2001 to read as follows:

§ 5-23  Types of Handgun Licenses.

(a)    Premises License-Residence or Business. This is a restricted handgun license, issued for the protection of a business or residence premises.

 (1)    The handguns listed on this license may not be removed from the address specified on the license except as otherwise provided in this chapter.

 (2)    The possession of the handgun for protection is restricted to the inside of the premises which address is specified on the license.

 (3)  To maintain proficiency in the use of the handgun, the licensee may transport her/his handgun(s) directly to and from an authorized small arms range/shooting club, unloaded, and in a locked container, the ammunition to be carried separately.

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

4

(4)  A licensee may transport his/her handgun(s) directly to and from an authorized area designated by the New York State Fish and Wildlife Law and in compliance with all pertinent hunting regulations, unloaded, in a locked container, the ammunition to be carried separately, after the licensee has requested and received a "Police Department – City of New York Hunting Authorization" Amendment attached to her/his license.

**B.     38 RCNY § 5-23's Unconstitutional Restrictions**

Plaintiffs Colantone, Alvarez, and Irizarry are all holders of Premises Residence Licenses issued by New York City and subject to the restrictions of 38 RCNY § 5-23. See, Affidavit of Romolo Colantone, attached hereto as "Exhibit A;" Affidavit of Jose Anthony Irrizarry, attached hereto as "Exhibit B;" and Affidavit of Efrain Alvarez, attached hereto as "Exhibit C."   Plaintiff New York State Rifle and Pistol Association ("NYSRPA")—New York's largest and the Nation's oldest firearms advocacy organization—has scores of members that hold Premise Residence Licenses.

For many years, Plaintiff Colantone regularly traveled outside of New York City and New York State to attend shooting competitions in an effort to maintain proficiency in using his handgun and to ensure that he could use it effectively to defend his hearth and home should the need arise. Exhibit A.  On May 8, 2012, to confirm that his license allowed him to participate in a shooting competition held in New Jersey, Plaintiff Colantone wrote to Deputy Inspector Andrew Lunetta of the NYCPD License Division to inquire about the scope of 38 RCNY § 5-23's restrictions. Id.  In a letter dated May 15, 2012, Deputy Inspector Lunetta advised Mr. Colantone that:

The Rules of the City of New York contemplate that an authorized small arms range/shooting club is one authorized by the Police Commissioner.  Therefore the only permissible ranges for target practice or competitive shooting matches by NYC Premises Residence License Holders are those located in New York City.

Premises license holders who have obtained the Hunting Authorization from the License Division may transport their handgun to those areas outside of City of New York designated by the New York State Fish and Wildlife Law for the purpose of hunting: no areas outside of New York State are permissible for this purpose.

These rules do not apply to New York City issued long gun permits. Long guns owned and registered under a NYC Rifle and Shotgun permit can be transported out of the City and back to the permit holder's residence if they are unloaded, in a locked non-transparent case, with ammunition carried separately.

Exhibit A. See also, Exhibit C.

As a result, and despite the fundamental importance of training and practice as a prerequisite to the safe and responsible use of a firearm, New York City residents' ability to engage in target practice and participate in shooting competitions is severely constrained. There is only one public shooting range within the borders of New York City—the West Side Pistol & Rifle Range ("WSPRR") located at 20 West 20th Street in Manhattan. New visitors to the WSPRR are required to schedule appointments at least five days in advance and must undergo a criminal background check prior to gaining entry to the facility. That background check is in addition to the one that licensees must undergo to obtain their licenses in the first place. The WSPRR does not hold any form of competitive shooting matches on a regular basis.

New York City residents who wish to abide by 38 RCNY § 5-23 but who are not able to obtain practice time at the WSPRR are faced with the choice of either not practicing safe handgun skills under any circumstances, or otherwise applying for membership in a private gun club located within New York City's borders. Membership in such clubs is a privilege, not a right, and is in no way guaranteed. In addition, obtaining membership in a private club entails the paying of application fees, membership fees, and regular dues. The fees charged by those clubs are

undoubtedly higher than they would be if New York City residents were free to use facilities outside the City.

Because of the restrictions 38 RCNY § 5-23 imposes, Plaintiff Colantone has refrained from engaging in target practice or participating in shooting competitions outside New York City. <u>Exhibit A</u>. Similarly, Plaintiffs Alvarez and Irizarry have been told by out-of-state ranges that they were not permitted to engage in target practice or participate in shooting competitions at those ranges because of New York City's enforcement of 38 RCNY § 5-23. <u>Exhibits B and C</u>.

Because of the restrictions 38 RCNY § 5-23 imposes, Plaintiff Colantone has refrained from transporting his handgun to his second home outside of the boundaries of New York City. Exhibit A Plaintiff Colantone's family has owned land in the Catskill region of New York for the past thirty-two years. Id. He built a second family home eight years ago in Hancock, New York. Id. The house is located in a remote area; its location presents a threat to the safety of his family and him while at the house. Id. He and his family visit the land and second home several times each year. Id. In direct response to Deputy Inspector Lunetta's May 15, 2012 letter, plaintiff Colantone has refrained from taking his handgun licensed in New York City to his house in Hancock, New York since May 15, 2012. Id. Because plaintiff Colantone chooses to abide by 38 RCNY § 5-23, he is faced with the choice whether to forego visiting his Hancock house or to visit it without the ability to protect himself, his family, and his property. Id.

## III.     <u>STANDARD OF REVIEW</u>

Under Second Circuit precedent, to obtain a preliminary injunction, the moving party must demonstrate "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (internal quotation marks and citations omitted). When the preliminary injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," it "should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Id.*; *see Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011) (describing preliminary injunction standard). Although a motion for a preliminary injunction "should not be resolved on the basis of affidavits which evince disputed issues of fact," "[a]n evidentiary hearing is not required when the relevant facts . . . are not in dispute." *Charette v. Town of Oyster Bay,* 159 F.3d 749, 755 (2d Cir. 1998).

## IV. ARGUMENT

### A. Plaintiffs Are Overwhelmingly Likely To Prevail On The Merits Of Their Constitutional Claims.

#### 2. 38 RCNY § 5-23 Violates The Second Amendment By (1) Restricting A Licensee's Ability To Possess A Handgun Subject To A Premises Residence Licence Issued By New York City In A Licensee's Second Home Beyond The Borders of New York City, And (2) Restricting A Licensee From Engaging In Target Practice and Participating In Shooting Competitions.

New York City impermissibly restricts New York City residents' core Second Amendment right to use arms in defense of hearth and home. By prohibiting residents from transporting their licensed handguns beyond the borders of New York City, 38 RCNY § 5-23 makes it impossible for those residents who own a second home outside of New York to protect themselves, their families, and their property with the licensed handgun.

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7ᵗʰ Floor
White Plains, NY 10607
(914) 798-5400

Whether a primary residence or a second home, an individual has an interest for self-protection and may in fact have an even greater need in a second home. Second homes are often more rural, and the fact that such homes are not constantly inhabited can make them attractive targets for criminal activity. The Second Amendment secures the core right to defend New York City residents' hearth and home, whether within the borders of New York City or outside of them.

New York City also impermissibly restricts New York City residents' exercise of the Second Amendment right to keep and bear arms by completely prohibiting residents from practicing safe gun handling at a target range or shooting event that is located beyond the borders of New York City. And because of the limited availability of such ranges and events in New York City, 38 RCNY § 5-23 effectively prohibits New York City residents from honing the skills necessary to defend hearth and home altogether. Indeed, 38 RCNY § 5-23 impedes gun ownership itself by unreasonably limiting, and effectively barring, access to useful information and experiences that are necessary to the exercise of Second Amendment rights.

The safe, responsible, and meaningful exercise of the Second Amendment right by an individual requires unrestricted access to gun ranges and shooting events in order to practice and perfect safe gun handling skills. The Second Amendment secures the right to operate firearms at a range for the purposes of learning about firearms, gaining proficiency with firearms, and obtaining any and all training required as a condition of firearms ownership, recreation, and competition.

<blockquote>
a.    **38 RCNY § 5-23 Unduly Burdens The Core Right Identified In *Heller* And Is Thus Unconstitutional.**
</blockquote>

As the Second Circuit has recognized, "[i]n *Heller*, the Supreme Court concluded that the Second Amendment codifies a pre-existing 'individual right to possess and carry weapons in case of confrontation." *Kachalsky v. County of Winchester*, 701 F.3d 81, 88 (2d Cir. 2012) (quoting *Heller*,

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

554 U.S. at 592). That right was "fundamental to the newly formed system of government" at the Founding, *McDonald*, 130 S. Ct. at 3037, and is "fundamental to our scheme of ordered liberty," *United States v. Decastro*, 682 F.3d 160, 167 (2d Cir. 2012). *See McDonald*, 130 S. Ct. at 3042 ("[T]he Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."); *id.* at 3041 ("Evidence from the period immediately following the ratification of the Fourteenth Amendment only confirms that the right to keep and bear arms was considered fundamental."); *id.* at 3037 ("The right to keep and bear arms was considered no less fundamental by those who drafted and ratified the Bill of Rights."); *id.* at 3040 (39th Congress' "efforts to safeguard the right to keep and bear arms demonstrate that the right was still recognized to be fundamental"); *id.* at 3041 ("In debating the Fourteenth Amendment, the 39th Congress referred to the right to keep and bear arms as a fundamental right deserving of protection.").

      i.     38 RCNY § 5-23 Unduly Burdens The Core Right
                 To Use Arms In Defense Of Hearth And Home.

The right to keep and bear arms to protect one's hearth and home is a core right under the Second Amendment. The Second Amendment provides that "A well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized that the Second Amendment protects the individual right to keep and bear arms in the home and for self-defense. And in *McDonald v. Chicago*, 130 S. Ct. 3020, 3021, 3050 (2010), the Court concluded that "the Second Amendment right recognized in *Heller*" was a fundamental right that was fully applicable to the States. Those two precedents taken together

undoubtedly demonstrate that New York City's restrictions that prohibit plaintiff Colantone from transporting his handgun to his home in Hancock, New York are unconstitutional.

38 RCNY § 5-23's restrictions cannot be squared with *Heller*. *Heller* held that the District of Columbia's ban on handgun possession in the home violated the Second Amendment. *Heller*, 554 U.S. at 635. In so doing, the Court stated that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," and that the core purpose of the right is to allow "law-abiding, responsible citizens to use arms in defense of hearth and home" where the need for self-defense "is most acute." *Id.* at 592, 628, 635. "[H]andguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *Heller*, 554 U.S. at 629.

The New York City regulation makes it impossible for New York City residents with a second home beyond the borders of New York City, like Romolo Colantone, to use handguns "for the core lawful purpose of self-defense and is hence unconstitutional." *Heller*, 554 U.S. at 630. "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home." *Heller*, 554 U.S. at 636; *see McDonald*, 130 S. Ct. at 3044 ("[T]he Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home."); *id.* at 3048 (The right to keep and bear arms is "valued because the possession of firearms [i]s thought to be essential for self-defense."). If New York City residents are unable to transport their handguns to their second homes outside of New York City they, in turn, will be unable to use them for self-defense in their second homes.

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

There is no reason to think that Mr. Colantone has any less of a need to protect himself, his family, and his property at his second home. An individual living part-time in a home has no less need for self-protection and may in fact have an even greater need. Second homes are often more rural, and the fact that such homes are not constantly inhabited can make them attractive targets for criminal activity.

ii.      38 RCNY § 5-23 Unduly Burdens The Core Right
To Perfect The Skills Necessary To Possess And
<u>Carry Weapons In Case Of Confrontation.</u>

The right to perfect the skills necessary to "possess and carry weapons in case of confrontation" is part and parcel of the fundamental right to keep and bear arms. As the *Heller* Court made clear, "'to bear arms implies something more than the mere keeping; it implies the learning to handle and use them . . .; it implies the right to meet for voluntary discipline in arms, observing in doing so the public order.'" 554 U.S. at 616. Indeed, there is "'[n]o doubt[] a citizen who keeps a gun or pistol under judicious precautions, practices in safe places the use of it, and in due time teaches his sons to do the same, exercises his individual right.'" 554 U.S. at 619. Because 38 RCNY § 5-23 effectively prohibits the full and effective exercise of the right to keep and bear arms, it runs afoul of the Second Amendment.

Even if the rights at issue here were not among the "core" rights protected by the Second Amendment, see *Kachalsky*, 701 F.3d at 84, *Decastro*, 682 F.3d at 165-166, at the very least, those rights are necessary to effectively exercise the right to bear arms and thus should be afforded the same protection. The Supreme Court "has acknowledged that certain unarticulated rights are implicit in enumerated guarantees," and certain "fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly

defined." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980). Thus the protective ambit that attaches to a fundamental right necessarily includes the protection of activities necessary to effectually exercise that right. *Cf. Emp't Div., Dep't of Human Res. Of Oregon v. Smith*, 494 U.S. 872, 877-78 (1990). So it is here. The right to keep and bear arms necessarily includes the right to engage in the activities to enable one to exercise that right effectively: target practice and shooting competitions.[1] 38 RCNY § 5-23 abridges that right and is unconstitutional.

The Seventh Circuit's decision in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), is instructive. Just four days after *McDonald* was decided, Chicago passed an ordinance mandating one hour of range training as a prerequisite to lawful gun ownership. *Id.* at 689-90. The same ordinance, however, prohibited the operation of firing ranges within the city. *Id.* at 690. In holding that the plaintiffs in that case were entitled to a preliminary injunction against enforcement of the ordinance, the Seventh Circuit recognized that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id.* at 704. Preventing individuals "from engaging in target practice" was "a serious encroachment on the right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense." *Id.* at 708.[2]

---

[1] To the extent that one were to view the right at stake in this case as a right to bear arms for purposes of recreation, that right would still be fundamental. As the dissenters in *Heller* recognized, the majority secured a right to keep and bear arms for "self-defense, *recreation*, and other lawful purposes." *Heller*, 554 U.S. at 677 n.38 (Stevens, J., dissenting) (emphasis added); *id.* at 684 (Breyer, J., dissenting).

[2] Notably, the Second Circuit cited *Ezell* as persuasive authority in *United States v. Decastro*, 682 F.3d at 166, 167, *supra*.

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

13

To be sure, the Second Circuit has identified 18th century laws that regulated the "time, place and manner for the discharge of firearms (as on public streets and taverns or on New Year's Eve)," and concluded that such "laws did not much burden self-defense and had a minimal deterrent effect on the exercise of Second Amendment rights." *Decastro*, 682 F.3d at 160. But the fact that those laws might have been permissible under the Second Amendment only underscores the constitutional problems with 38 RCNY § 5-23. Rather than granting sweeping permission followed by a list of exceptions, 38 RCNY § 5-23 categorically prohibits engaging in target practice or participating in shooting competitions and then makes an exception for specifically approved ranges located in New York City. And the effect of the New York City regulation is much worse. The only way that a New York City resident can legally engage in target practice (without successfully obtaining membership in a private club and paying the associated fees) is by reserving a timeslot at the one publicly available range, which he may be unable to do. *See Decastro*, 683 F.3d at 160 (noting that *Heller* and *McDonald* "emphasized the practical impact of a challenged regulation on the ability of citizens to possess and use guns for the core lawful purpose of self-defense").

   iii. Under The Holdings In *Heller* And *McDonald*,
       38 RCNY § 5-23's Restrictions Are Unconstitutional.

Because of the severity and nature of 38 RCNY § 5-23's restrictions on the Second Amendment right, it is squarely unconstitutional under *Heller* and *McDonald*. The only way to avoid invalidating 38 RCNY § 5-23 on Second Amendment grounds would be to conclude that the right to keep and bear arms is less fundamental than other fundamental rights. But the Supreme Court has stressed that it is improper to prefer certain enumerated constitutional rights while relegating others to a lower plane: No constitutional right is "less 'fundamental' than" another, and there is "no principled basis on which to create a hierarchy of constitutional values . . . ." *Valley*

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7ᵗʰ Floor
White Plains, NY 10607
(914) 798-5400

14

*Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982); *accord Ullman v. United States*, 350 U.S. 422, 428–29 (1956) ("To view a particular provision of the Bill of Rights with disfavor inevitably results in a constricted application of it. This is to disrespect the Constitution."). Courts would not tolerate for one second a regime that allowed individuals to exercise their other fundamental rights in accordance with the restrictions 38 RCNY § 5-23 imposes. The same should be true of the Second Amendment.

> **b. 38 RCNY § 5-23 Fails Under Any Arguably Applicable Standard Of Scrutiny.**

New York City's restrictions on the effective exercise of Second Amendment rights also fail any arguably applicable standard of scrutiny. "[W]hen government action impinges upon a fundamental right protected by the Constitution"—as it does here—strict scrutiny applies. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983); *see Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("[C]lassifications affecting fundamental rights are given the most exacting scrutiny."). Under strict scrutiny, a law infringing a constitutional right must be narrowly tailored to serve a compelling government interest. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). To be narrowly tailored, a law must actually advance the compelling interest it is designed to serve, and be the least restrictive means of achieving that advancement. *See Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 226 (1989); *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). When applying strict scrutiny, the challenged law is presumed invalid, and the government bears the burden of rebutting that presumption. *Playboy Entm't Grp.*, 529 U.S. at 817.

New York City lacks a compelling interest in prohibiting the select group of New York City residents to whom it has issued premises licenses from transporting their licensed handguns beyond the borders of New York City to use for self-protection in a second home. The same holds true of

prohibiting practicing at shooting ranges or recreational or competitive shooting events located outside the borders of New York City. The Second Circuit has recognized that the State of "New York has [a] substantial, indeed compelling, governmental interest[] in public safety and crime prevention." *Kachalsky*, 701 F.3d at 97. New York City surely has that same interest. But this interest cannot be invoked in support of a law that makes it (1) impossible for New York City residents to use their handguns for self-defense in their second homes, and (2) difficult (or impossible) to practice the safe and effective use of a handgun. Were the City acting in pursuit of its interests in public safety or crime prevention, it would allow a licensee who owns a second home outside of the City borders to transport his handgun to that home for use of self-protection. In fact, the City carves out an exception for those residents who wish to transport their handgun to those areas outside of the City designated by the New York State Fish and Wildlife Law for the purpose of hunting. Complaint, Exhibit A. By the same token, the City would make it easier to engage in target practice and competitive range shooting, not harder, if the City were acting in pursuit of its interests in public safety or crime prevention. And even assuming—against fact and logic—that New York City did have a compelling interest in its prohibition, 38 RCNY § 5-23 is not the least restrictive means of achieving that interest.

New York City's regulations fail intermediate scrutiny for the same reasons.[3] Under that test, a regulation "passes constitutional muster only if it is substantially related to the achievement of an important governmental interest." *Kachalsky*, 701 F.3d at 96. The only conceivable interests that the City could cite in support of 38 RCNY § 5-23 are its "interests in public safety and crime prevention." *Id.* at 97. The restrictions at issue here are not substantially related to the achievement

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

---

[3] *Heller* and *McDonald* make clear that some form of heightened scrutiny is required. *See Heller*, 554 U.S. at 628 (rejecting rational basis review).

16

of those interests. Indeed, 38 RCNY § 5-23 critically undermines public safety by (1) making it impossible to use the handgun for self-protection in a resident's second home outside of the City, and (2) making it harder for licensed handgun owners to use their firearms safely and effectively. Having licensed handgun owners without means to protect themselves, their families, and their property in their homes hardly serves the government's (or anyone else's) interests. The same holds true for having licensed handgun owners without means to hone their skills.

> ### 3. New York City's Restrictions On Target Practice And Competitive Shooting Infringe Plaintiffs' First Amendment Rights.

New York City's restrictions on target practice and competitive shooting also violate plaintiffs' First Amendment rights. By prohibiting New York City residents from practicing at ranges and participating in shooting competitions outside City boundaries, 38 RCNY § 5-23 infringes plaintiffs' freedom of association and freedom of speech.

Gun ranges and recreational and competitive shooting events open to the public exist in every American state. 38 RCNY § 5-23 makes it impossible for New York City handgun licensees to participate in these competitions outside of New York City in abrogation of plaintiffs' First Amendment freedom of association. Like the right to bear arms, "the right of peaceable assembly was considered by the Framers of our Constitution to lie at the foundation of [our] government." *Bates v. City of Little Rock*, 361 U.S. 516, 522-23 (1960). Thus, the "freedom of association" is "protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Id.* at 523; *see Grosjean v. American Press Co.*, 297 U.S. 233 (1936); *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. 105 (1943).

When faced with a "violation of the right to associate," "a court must consider the 'character and magnitude' of the alleged injury the plaintiff has sustained, and then must identify and evaluate the interests [that arguably] . . . justify the burdens imposed by the challenged rule, taking into consideration the extent to which the state's interests make it necessary to burden plaintiff's rights." *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 419 (2d Cir. 2004) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). "If those rights are subject to severe restriction, the regulation has to be narrowly drawn to advance a compelling state interest." *Id.* If the law imposes only "'reasonable, nondiscriminatory restrictions,'" then important regulatory interests are sufficient to justify those restrictions. *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

The restriction on plaintiffs' freedom of association is severe. New York City residents are forbidden from participating in competitive shooting events outside New York City borders. And they are effectively prohibited from doing so anywhere given that such events do not regularly take place at the only range available to the public. Indeed, the only way 38 RCNY § 5-23's restriction on the freedom of association could be more severe would be if it expressly prohibited participation in recreational and competitive shooting events. But there is no real difference between this hypothetical and the way New York City's prohibition operates in fact.

What is more, New York City residents who want to comply with 38 RCNY § 5-23 but participate in competitive shooting events are effectively coerced into joining private clubs that they may prefer not to join. As the one restricted public range does not offer such competitions, the only option left to New York City residents is New York City private clubs. This too infringes plaintiffs' First Amendment rights. Just as the First Amendment prevents the government from unduly

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

burdening speech, it also prevents the government from compelling individuals to speak or associate against their will. *See United States v. United Foods, Inc.*, 533 U.S. 405, 410 (2001); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943); *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977); *Keller v. State Bar of Cal.*, 496 U.S. 1 (1990). The forced association imposed by 38 RCNY § 5-23 further underscores the First Amendment problems the regulation faces and the fact that plaintiffs will succeed on the merits.

Were this not enough, 38 RCNY § 5-23 runs afoul of the First Amendment in yet another way. The First Amendment protects a right to teach, learn, and convey information. *See, e.g.*, *Keyishian v. Board of Regents*, 385 U.S. 589, 603 (1967) (First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom"); *Sweezy v. New Hampshire*, 354 U.S. 234, 249-50 (1957) (plurality) ("right to lecture . . . could not be seriously debated," and noting that "teachers and students must always remain free to inquire, to study and to evaluate, and to gain new maturity and understanding"); *Universal City Studios v. Corley*, 273 F.3d 429, 446 (2d Cir. 2001) ("Even dry information, devoid of advocacy, political relevance, or artistic expression, has been accorded First Amendment protection."). This right is inextricably intertwined with the right to bear arms. As *Heller* noted, there is "'[n]o doubt[] a citizen who keeps a gun or pistol under judicious precautions, practices in safe places the use of it, *and in due time teaches his sons to do the same*, exercises his individual right.'" *Heller*, 554 U.S. at 619 (emphasis added). By eliminating the vast majority of options for New York City residents to teach and learn safe and effective handgun practices, 38 RCNY § 5-23 substantially burdens plaintiffs' First Amendment rights.[4]

---

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

[4] As already discussed in the Second Amendment context, there is no compelling or important interest served by limiting the availability of licensed New York City residents to practice the safe

4. **New York City's Restrictions On Target Practice
And Competitive Shooting Violate Plaintiffs'
Constitutional Right To Travel And
The Firearms Owners Protection Act.**

New York City's restriction on where a licensee can take his handgun also runs afoul of the fundamental constitutional right to travel—both inside one's state and across state borders—and federal law expressly permitting the transportation of firearms between jurisdictions.

The fundamental constitutional right to travel finds its origin in both the Privileges and Immunities Clause of Article IV, § 2 of the U.S. Constitution, and the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution. This right "protects the right of a citizen of one State to enter and to leave another State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999); *see United States v. Guest,* 383 U.S. 745 (1966); *Edwards v. California,* 314 U.S. 160 (1941). More than this, pursuant to Article IV, § 2, "a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Saenz*, 526 U.S. at 501. The right to travel also allows State residents to move freely within their home State. As the Second Circuit has pointed out, "[i]t would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state." *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971).

Restrictions on the fundamental right to intrastate and interstate travel are unconstitutional "'unless shown to be necessary to promote a compelling governmental interest.'" *King*, 442 F.2d 646, 648 (2d Cir. 1971) (quoting *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969)). 38 RCNY § 5-23

and effective use of their handguns. *See supra*. Even if there were, 38 RCNY § 5-23 is not narrowly drawn or reasonably constructed to achieve that interest.

clearly impinges on New York City residents' fundamental right to travel. Because of the restrictions that regulation imposes, City residents cannot transport their firearms to other States where those firearms may be lawfully used or to other parts of New York where opportunities for target practice and competitive shooting are legal and more readily and more economically available. The only thing standing between plaintiffs and participating in a shooting competition in Yonkers or New Jersey is 38 RCNY § 5-23.

Furthermore, New York City lacks the necessary compelling interest in limiting such travel. Other States and other parts of New York may have an interest in keeping licensees from other jurisdictions from practicing and competing in their firing ranges, but that is for those jurisdictions to decide. And even that interest—which New York City lacks—would not be sufficiently compelling to justify the restriction on the fundamental right to travel. Nor would it be the least restrictive means of promoting that interest.

Relatedly, 38 RCNY § 5-23 is in direct conflict with the Firearm Owners Protection Act ("FOPA"), 18 U.S.C. § 926A, which provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle . . . .

Thus, under FOPA, New York City Premises Residence License holders are permitted to take their handguns to ranges in shooting competitions in other states, so long as they can legally have the gun in the state where the range is located. FOPA provides yet another reason that plaintiffs are likely to prevail on the merits.

**5. New York City's Restrictions On Target Practice And Competitive Shooting Violate The Dormant Commerce Clause.**

Finally, 38 RCNY § 5-23 runs afoul of the Constitution's Commerce Clause. The Commerce Clause provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce among the several States." U.S. Const. art. I, § 8, cl. 3. "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 98 (1994). As relevant here, "[a] statute or regulation may violate the" negative—or dormant—Commerce Clause if it "'has the practical effect of "extraterritorial" control of commerce occurring entirely outside the boundaries of the state in question" or "imposes a burden on interstate commerce incommensurate with the local benefits" secured. *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (quoting *Freedom Holdings Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir. 2004)).

New York City's restrictions on target practice and competitive shooting are invalid for both reasons. In enacting and enforcing 38 RCNY § 5-23 New York City seeks to regulate and control an activity that takes place wholly outside of the borders of New York City and New York State: attendance at non-City approved gun ranges and participation in competitive shooting events beyond the City's borders. Ranges that operate beyond New York borders welcome New York City residents who are lawfully licensed to carry firearms. The sponsors of competitive shooting events that occur in other states do the same. The issues of whether a New York City resident who is legally permitted to carry a firearm in the City can practice target shooting at, *e.g.*, a Yonkers gun range, or can attend a competitive shooting event in, *e.g.*, Old Bridge, NJ are properly resolved by

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400

the local legislatures of Yonkers or Old Bridge, or the state legislature of New Jersey. The City of New York has no say in such matters.

The dormant Commerce Clause problem with 38 RCNY § 5-23 would be obvious if the restriction were imposed on surfboards or steamboats. *Cf. Gibbons v. Ogden*, 22 U.S. 1, 27 (1824) (An individual could not be deprived of his "right to go from New-Jersey to New-York, in a vessel, owned by himself, of the proper legal description, and enrolled and licensed according to law."). But New York City can no more limit its residents licensed to use handguns to practice only in New York City, than it could tell its residents that they can own surfboards, but only if they did not use them on New Jersey beaches.

Moreover, 38 RCNY § 5-23 "imposes a burden on interstate commerce incommensurate with the local benefits." Prohibiting New York City residents from frequenting non-City ranges or participating in non-City tournaments clearly burdens interstate commerce. New York City residents are forbidden from utilizing services offered outside the City and non-City operators lose the opportunity to get business from City residents. And this burden is significant when compared to the local benefit, which is none. Restricting New York City residents to City ranges does nothing to promote proficiency in the use of firearms, enhance awareness of firearms safety principles, or encourage the safe and responsible use of firearms. There is no reason to believe that the gun ranges within New York City borders are safer than the facilities of gun ranges that exist outside those borders. Similarly, there is no support for the contention that safety training principles utilized by City gun ranges are so advanced and/or unique that (when compared to those utilized by non-City ranges) requiring a resident to practice firearms safety at a New York City range produces greater firearms proficiency and/or greater awareness of firearms safety in residents. And any argument that

requiring New York City residents to use only New York City ranges has reduced (or even impacted) the incidence of intentional or accidental gun violence within City borders is meritless.

**B.    Plaintiffs Will Suffer Irreparable Harm In The Absence Of A Preliminary Injunction.**

It is well settled that "[t]he violation of a constitutional right . . . constitutes irreparable harm for the purpose of a preliminary injunction." *Ligon v. City of New York*, 12 CIV. 2274 SAS, 2013 WL 628534 (S.D.N.Y. Feb. 14, 2013); *see Johnson v. Miles*, 355 F. App'x 444, 446 (2d Cir. 2009) ("an alleged violation of a constitutional right triggers a finding of irreparable harm"); *Statharos v. N.Y. City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996) ("The district court . . . properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); 11A Charles Alan Wright et al., Federal Practice & Procedure §2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

Prohibiting the exercise of constitutional rights like those at issue here is a classic irreparable injury. Plaintiffs are being prohibited from exercising their fundamental First and Second Amendment rights, and their right to travel. Plaintiff Colantone has refrained from transporting his handgun to his Hancock, New York home. Plaintiffs have refrained from traveling outside of New York City to their preferred ranges and competitions to perfect their ability to protect their hearth and home. Being allowed to do so at some later date is not enough, and neither that nor a monetary remedy fully addresses these serious constitutional injuries. The only way to provide plaintiffs relief is to enjoin the enforcement of 38 RCNY § 5-23.

**C.** **Granting Preliminary Injunctive Relief Is In The Public Interest.**

Granting plaintiffs the relief they seek will serve the public interest. As already noted, when it comes to the public interest 38 RCNY § 5-23 gets it exactly backwards. The public interest is not served by preserving the status quo where New York City residents are unable to protect themselves, their families, and the property within their home. It is served by allowing law-abiding citizen the ability to protect themselves in the home. The preservation of the status quo is also unacceptable where New York City residents' options for practicing their handgun skills are substantially limited. The public interest is served by ensuring that Premises Residence License holders have ample opportunity to maintain proficiency in the use of their handguns, as an injunction would permit. Even 38 RCNY § 5-23, restrictive as it is, recognizes the benefit of licensees "maintain[ing] proficiency in the use of the[ir] handguns." Furthermore, the public interest is always served when constitutional rights are vindicated.

## V.   CONCLUSION

This Court should issue a preliminary injunction against enforcement of the provisions of the Act identified above by the defendants.

Dated: May 7, 2013                  Respectfully Submitted,

GOLDBERG SEGALLA, LLP

By:   /s/   Brian T. Stapleton
Brian T. Stapleton, Esq. (BS 5640)
Matthew S. Lerner, Esq. (MS 2020)
11 Martine Avenue, Suite 750
White Plains, New York 10606-1934
(914) 798-5400
bstapleton@goldbergsegalla.com

***Counsel For Plaintiffs***

## **CERTIFICATION**

I hereby certify that on May 7, 2013, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing was will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: ___/s/___ Brian T. Stapleton___
Brian T. Stapleton, Esq. (BS 5640)

GOLDBERG SEGALLA, LLP
11 Martine Ave., 7th Floor
White Plains, NY 10607
(914) 798-5400