```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                    Plaintiffs,           13 Civ. 2115(RWS)

     -against-                            OPINION


THE CITY OF NEW YORK and THE NEW YORK CITY
POLICE DEPARTMENT - LICENSE DIVISION,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

     Attorneys for Plaintiffs

     GOLDBERG SEGALLA, LLP
     11 Martine Avenue, Suite 750
     White Plains, NY 10606
     By:  Brian T. Stapleton, Esq.


     Attorneys for Defendants

     MICHAEL A. CARDOZO
     CORPORATION COUNSEL OF THE CITY OF NEW YORK
     100 Church Street, 5th Floor
     New York, NY 10007
     By:  Gabrielle Taussig, Esq.
          Michelle Goldberg-Kahn, Esq.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/20/13

**Sweet, D.J.**

Plaintiffs New York State Rifle & Pistol Association ("NYSRPA"), Romolo Colantone ("Colantone"), Efain Alvarez ("Alvarez") and Jose Anthony Irizarry ("Irizarry" and, collectively, "Plaintiffs") have moved for a preliminary injunction enjoining the enforcement of 38 RCNY § 5-23(a) ("§5-23"), a regulation promulgated by defendant the City of New York that governs the use of handguns by individuals who have been granted a handgun license by defendant the New York City Police Department - License Division (the "NYPD License Division").

For the reasons set forth below, the motion is stayed pending a decision by the New York Court of Appeals in <u>Osterweil v. Bartlett</u>, <u>see</u> 20 N.Y.3d 1058 (2013).

**The Motion Is Stayed**

Section 5-23(a) provides that with respect to the type of handgun license known as a "premises license"

> (3) To maintain proficiency in the use of the handgun, the licensee may transport his/her handgun(s) directly to and from an authorized small arms range/shooting club,

1

> unloaded, in a locked container, the
> ammunition to be carried separately.
>
> (4) A licensee may transport his/her
> handgun(s) directly to and from an
> authorized area designated by the New York
> State Fish and Wildlife Law and in
> compliance with all pertinent hunting
> regulations, unloaded, in a locked
> container, the ammunition to be carried
> separately, after the licensee has requested
> and received a "Police Department – City of
> New York Hunting Authorization" Amendment
> attached to her/his license.

38 RCNY § 5-23(a)(3) & (4). This language has been construed by the NYPD License Division to mean that the holder of a premises license who possesses a handgun located in his New York City residence is prohibited by law from transporting that handgun outside the borders of New York City except for the purpose of hunting. See Affidavit of Romolo Colantone ("Colantone Aff.") ¶¶ 8, 11-12 & Exs. A & B.

Plaintiffs have contended that §5-23 violates their right to bear arms under the Second Amendment because, *inter alia*, it effectively precludes them from using a handgun to protect themselves and their families if and when they reside at a secondary residence that is located outside of New York City. See Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Mem.") at 10-12. According to

2

Plaintiffs, because §5-23 prohibits them from transporting a handgun outside of New York City for any reason other than hunting, the regulation makes it illegal for a duly licensed New York City resident to transport his handgun from his primary residence in New York City to a second home that is located outside of New York City.

The strength of Plaintiffs' argument is dependent in large part upon the construction of New York Penal Law § 400.00 ("§400.00"), which is the New York State law governing firearm licenses. Subsection (a)(3) of §400.00 provides that an application for a license to carry a firearm

> shall be made and renewed, in the case of a license to carry or possess a pistol or revolver, to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper.

N.Y. Penal L. § 400.00(a)(3) (emphasis added). If the underlined language – and particularly the word "resides" – is understood literally, and therefore read as permitting an individual to apply for a handgun license with the licensing officer of the city or county in which he has a residence, the

3

cogency of Plaintiffs' second-home argument suffers considerably, as their complaint could be met with a rejoinder to simply acquire a handgun license from the county in which the second home is located, and keep a gun in that home for use when it is being used as a residence. See Memorandum in Reply and Further Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Reply") at 6 & n. 6.

However, if the underlined language above is understood as creating a domicile requirement – *i.e.*, mandating that an individual may only apply for a handgun license in the city or county in which his *primary* residence is located – the combined effect of §400.00(a)(3) and §5-23 would be to preclude an individual whose primary residence is in New York City from applying for a handgun license from any licensing authority other than the NYPD License Division, which as noted above only grants licenses that are subject to the restrictions set forth in §5-23, including the prohibition on transporting a handgun outside of the city limits for reasons other than hunting. Accordingly, reading a domicile requirement into §400.00(a)(3) would essentially render it impossible for a resident of New York City to lawfully exercise what the Supreme Court has held to be the "core" right protected by the Second Amendment – "the

4

right to self-defense in the home." Osterweil v. Bartlett, 706 F.3d 139, 141 (2d Cir. 2013) (citing District of Columbia v. Heller, 554 U.S. 570 (2008)). Under this statutory rubric, the regulation at issue in this case would demand a far more rigorous level of judicial scrutiny than would be employed if the requirement were merely residential in nature.

The question of whether §400.00(a)(3) implicates an individual's domicile or residence has been certified by the Second Circuit to the New York Court of Appeals,[1] see Osterweil, 706 F.3d at 140-45, and the New York Court of Appeals has accepted the certified question, see Osterweil v. Bartlett, 20

---

[1] The precise question that has been certified to the Court of Appeals is as follows:

> Is an applicant who owns a part-time residence in New York but makes his permanent domicile elsewhere eligible for a New York handgun license in the city or county where his part-time residence is located?

Osterweil, 706 F.3d at 145. While the circumstances in Osterweil that gave rise to this question are different than those present in the instant case, as the plaintiff there is domiciled in another state, see id. at 140, rather than (as here) in a different licensing jurisdiction, it appears likely that the Court of Appeals' response to the question will entail a determination of the question that is relevant to the instant case, namely whether or not §400.00(a)(3) permits an individual to apply for a handgun license in the city or county where he merely has a residence, even if he is not domiciled in that licensing jurisdiction.

N.Y.3d 1058 (2013), and the matter is scheduled for oral argument on September 12, 2013.[2]

Since the Court of Appeals' determination of this question is likely to have a material effect upon the analysis of the instant motion, and since argument on the question is scheduled for the near future, it is appropriate to stay the motion pending a decision from the Court of Appeals in Osterweil. See Cobalt Multifamily Investors I, LLC v. Shapiro, 857 F. Supp. 2d 419, 423-24 (S.D.N.Y. 2012) (finding that grounds for a stay existed where the Second Circuit certified a series of questions to the New York Court of Appeals in an unrelated case, and the answers to those questions "would impact adjudication of the claims pending in this litigation"); Salcedo v. Phillips, No. 04 Civ. 7964 (PAC) (GWG), 2007 WL 3097208, at *1 (S.D.N.Y. Oct. 22, 2007) (same); cf. In re CBI Holding Co., Inc., No. 01 Civ. 0131 (KMW), 2010 WL 2287013, at **5-6 (denying motion to stay despite pending question to the Court of Appeals since it was unclear that the Court of Appeals' determination would in fact impact the case, and additionally "[t]he Court

---

[2] See Court of Appeals, State of New York – Certified Questions (500.27), http://www.nycourts.gov/ctapps/certquest.htm (last visited August 19, 2013).

cannot determine when the New York Court of Appeals is likely to rule on the Certified Questions).

**Conclusion**

Based on the conclusions set forth above, Plaintiffs' motion for a preliminary injunction is stayed pending the Court of Appeals' decision in Osterweil.

It is so ordered.

**New York, NY**
~~August~~ September 18 2013

_____
ROBERT W. SWEET
U.S.D.J.