UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                                       Plaintiffs,

                -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT LICENSE DIVISION,

                                 Defendants.

------------------------------------------------------------------------ X

13 CV 2115 (RWS)
ECF Case

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, 5th Floor
New York, New York 10007
(212) 356-2199

June 5, 2014

SHERYL NEUFELD,
MICHELLE GOLDBERG-CAHN,
                 Of Counsel.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT

    A.    STANDARD FOR SUMMARY JUDGMENT.....................................................2

    B.    STANDARD FOR A PRELIMINARY INJUNCTION...............…................3

    POINT I

        THE REQUIREMENTS IN 38 RCNY § 5-23(a) GOVERNING USE OF RESTRICTED PREMISES RESIDENCE LICENSES DO NOT IMPLICATE THE SECOND AMENDMENT; TO THE EXTENT THAT THIS COURT FINDS THAT THEY DO, THIS COURT SHOULD APPLY INTERMEDIATE SCRUTINY AND THE LICENSE DIVISION'S PUBLIC SAFETY RATIONALE FOR THE RULE EASILY SURVIVES REVIEW. ...................................................................5

        A.    This Court Need Not Engage In A Constitutional Scrutiny Analysis To Uphold The Validity Of The Restrictions For Target Practice Set Forth In 38 RCNY § 5-23(a)(3). ..................................6

        B.    If Scrutiny Analysis Is Required, Intermediate Scrutiny Is Applicable To The Challenged Rule....................................................8

        C.    35 RCNY § 5-23(a)(3) Easily Survives Intermediate Scrutiny...................................................12

    POINT II

        THE RULE DOES NOT IMPEDE ON PLAINTIFFS' RIGHT TO TRAVEL.......................................................17

POINT III

    THE RULE PERTAINING TO PREMISES
    RESIDENCE LICENSES DOES NOT IMPEDE
    UPON PLAINTIFFS' RIGHT TO FREEDOM OF
    ASSOCIATION...................................................................................211

POINT IV

    THE RULE FOR PREMISES RESIDENCE
    LICENSES DOES NOT VIOLATE THE
    DORMANT COMMERCE CLAUSE......................................................244

CONCLUSION............................................................................................... 288

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Pages**

Association of New Jersey Rifle & Pistol Clubs v. Port Auth. of N.Y. & N.J.,
    730 F.3d 252, 257 (3d Cir. 2013) ................................................................................. 20

Bach v. Pataki,
    408 F.3d 75 (2d Cir. 2005)........................................................................................ 14, 15

Beach v. Kelly,
    52 A.D.3d 436 (1st Dep't 2008) ............................................................................... 20

Bery v. City of New York,
    97 F.3d 689 (2d Cir. 1996),
    cert. denied, 520 U.S. 1251 (1997) .......................................................................... 3

Boy Scouts of Am. v. Dale,
    530 U.S. 640 (2000) ................................................................................................... 21

Brown & Williamson Tobacco Corp. v. Pataki,
    320 F.3d 200 (2d Cir. 2003)...................................................................................... 27

Clark v. Jeter,
    108 S. Ct. 1910 (1988)............................................................................................... 12

De Illy v. Kelly,
    6 A.D.3d 217 (1st Dep't 2004) ................................................................................. 14

District of Columbia v. Heller,
    554 U.S. 570 (2008)................................................................................................... 5, 6

Ezell v. City of Chicago,
    651 F.3d 684 (7th Cir. 2011) ............................................................................ 10, 11, 12

Fighting Finest, Inc. v. Bratton,
    95 F.3d 224 (1996)..................................................................................................... 21

Five Borough Bicycle Club v. City of New York,
    483 F. Supp.2d 351 (S.D.N.Y. 2007)....................................................................... 18

Freedom Holdings, Inc. v. Spitzer,
    357 F.3d 205 (2d Cir. 2004)...................................................................................... 25, 27

Harrisonville v. W.S. Dickey Clay Mfg. Co.,
    289 U.S. 334 (1933)................................................................................................... 4

Healy v. The Beer Inst.,
    491 U.S. 324 (1989)................................................................................................... 25, 26

| Cases | Pages |
|---|---|

Heller v. District of Columbia ("Heller II"),
   670 F.3d 1244 (D.C. Cir. 2011) ........................................................................ 6

Hillside Dairy Inc. v. Lyons,
   539 U.S. 59 (2003) ........................................................................................... 24

Hodel v. Virginia Surface Mining & Reclamation Ass'n,
   452 U.S. 264 (1981) ......................................................................................... 12

Instructional Sys., Inc. v. Computer Curriculum Corp.,
   35 F.3d 813 (3d Cir. 1994) ............................................................................... 27

Joseph v. Hyman,
   659 F.3d 215 (2d Cir. 2011) ............................................................................. 19

Kachalsky v. County of Westchester,
   701 F.3d 81 (2d Cir. 2012) ............................................... 5, 6, 9-10, 12, 22

King v. New Rochelle Municipal Housing Auth.,
   442 F.2d 646 (2d Cir.),
   cert. denied, 404 U.S. 863 (1971) ................................................................. 18

Kwong v. Bloomberg,
   723 F.3d 160, 167-68 (2d Cir. 2013),
   cert. denied, sub nom., Kwong v. DeBlasio, 2014 U.S. LEXIS 3857 (June 2, 2014) ......9, 10

Kuck v. Danaher,
   600 F.3d 159 (2d Cir. 2010) ............................................................................. 12

Lutz v. City of York,
   899 F.2d 255 (3d Cir. 1990) ............................................................................. 19

Lyng v. UAW,
   485 U.S. 360 (1988) ......................................................................................... 21

Maine v. Taylor,
   477 U.S. 131 (1986) ...................................................................................... 24-25

McBurney v. Young,
   133 S. Ct. 1709 (Apr. 20, 2013) ................................................................... 24, 25

McDonald v. City of Chicago,
   561 U.S. 742, 130 S. Ct. 3020 (2010) ............................................................ 5, 11

Million Youth March, Inc. v. Safir,
   155 F.3d 124 (2d Cir. 1998) ............................................................................... 4

**Cases**                                                **Pages**

National Elec. Mfrs.' Ass'n v. Sorrell,
   272 F.3d 104 (2d Cir. 2001)......................................................................... 25, 26

New York State Rifle & Pistol Ass'n v. Cuomo,
   2013 U.S. Dist. LEXIS 182307 (W.D.N.Y. Dec. 31, 2013)........................................9

Osterweil v. Bartlett,
   706 F.3d 139 (2d Cir. 2013)............................................................................. 6

Osterweil v. Bartlett,
   21 N.Y.3d 580, 999 N.E.2d 516, 977 N.Y.S.2d 153 (N.Y. Ct. App. Oct. 15, 2013)................. 8

Pike v. Bruce Church, Inc.,
   397 U.S. 137 (1970)............................................................................. 25, 27

Piszczatoski v. Filko,
   840 F. Supp.2d 813 (D.N.J. 2012) ............................................................. 22

Plastio v. Koster,
   2013 U.S. Dist. LEXIS 58544 (E.D. Mo. Apr. 24, 2013)......................................... 22

Plaza Health Labs., Inc. v. Perales,
   878 F.2d 577 (2d Cir. 1989)....................................................................... 3

Roberts v. United States Jaycees,
   468 U.S. 609 (1984)............................................................................. 21, 23

Sanitation Recycling Indus. v. City of New York,
   107 F.3d 985 (1997)............................................................................. 21

Schall v. Martin,
   467 U.S. 253 (1984)............................................................................. 12

Schenck v. Pro-Choice Network,
   519 U.S. 357 (1997)............................................................................. 12

Selevan v. New York Thruway Auth.,
   71 F.3d 253 (2d Cir. 2013)....................................................................... 19, 25

Shapiro v. Thompson,
   394 U.S. 618 (1969)............................................................................. 18

Soto-Lopez v. New York City Civil Serv. Comm'n,
   755 F.2d 266 (2d Cir. 1985)....................................................................... 18

**Cases**          **Pages**

Standard & Poor's Corp. v. Commodity Exchange, Inc.,
   683 F.2d 704 (2d Cir. 1982).................................................................. 4

Torraco v. Port Auth. of N.Y. & N.J.,
   615 F.3d 129 (2d Cir. 2010)................................................................ 20

Town of Southhold v. Town of East Hampton,
   477 F.3d 38 (2d Cir. 2007)................................................ 18, 19, 25, 27

Turley v. New York City Police Dep't,
   1996 U.S. Dist. LEXIS 2582, (S.D.N.Y. 1996),
   aff'd in part, rev'd in part, after trial on other issues,
   167 F.3d 757 (2d Cir. 1999)................................................................ 19

U.S. Smokeless Tobacco Mfg., Co. v. City of New York,
   708 F.3d 428, 436 n.3 (2d Cir. 2013).................................................. 11

United States v. Akinrosotu,
   637 F.3d 165 (2d Cir. 2011)................................................................. 4

United States v. Chester,
   628 F.3d 673 (4th Cir. 2010),
   cert. denied, 2011 LEXIS 2138 (Mar. 21, 2011) ................................. 9

United States v. DeCastro,
   682 F.3d 160 (2d Cir. 2012)........................................................... 6, 17

United States v. Marzzarella,
   614 F.3d 85 (3d Cir. 2010),
   cert. denied, 131 S. Ct. 958 (2011) .............................................. 6, 9, 12

United States v. Masciandaro,
   638 F.3d 458 (4th Cir. 2011),
   cert. denied, 132 S. Ct. 756 (2011) ............................................... 6, 13

United States v. Oppedisano,
   2010 U.S. Dist. LEXIS 127094 (E.D.N.Y. Nov. 30, 2010)...................... 9

United States v. Reese,
   627 F.3d 792 (10th Cir. 2010),
   cert. denied, 179 L. Ed. 2d 1214 (2011) ............................................. 9

United States v. Skoien,
   614 F.3d 638 (7th Cir. 2010),
   cert. denied, 131 S. Ct. 1674 (2011) ............................................... 6, 9

**Cases**                                                            **Pages**

Universal City Studios, Inc. v. Reimerdes,
    111 F. Supp.2d 294 (S.D.N.Y. 2000)
    aff'd, sub nom. Universal City Studios. Inc. v. Corley,
    273 F.3d 249 (2d Cir. 2001)........................................................................... 21

Universal City Studios. Inc. v. Corley,
    273 F.3d 249 (2d Cir. 2001)........................................................................... 21

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982)....................................................................................... 4

Woolard v. Gallagher;
    712 F.3d 865, 2013 U.S. App. LEXIS 5617 (4th Cir. Mar. 21, 2013) ........... 22

Woolard v. Sheridan,
    863 F. Supp.2d 462 (D. Md. 2012)
    rev'd on other grounds,  sub. nom, Woolard v. Gallagher; 712 F.3d 865, 2013 U.S.
    App. LEXIS 5617 (4th Cir. Mar. 21, 2013)..................................................... 22

Yakus v. United States,
    321 U.S. 414 (1944)....................................................................................... 4

Younger v. Harris,
    401 U.S. 37 (1971) ......................................................................................... 21

**Statutes**

18 U.S.C. § 926A ................................................................................................ 20

38 RCNY §§ 5-01(a)...................................................................................... 7, 12

38 RCNY §§ 5-02(g) .......................................................................................... 7

38 RCNY § 5-22(a)(14) ...................................................................................... 12

38 RCNY § 5-23 .......................................................................................... *passim*

Environmental Conservaton Law §§ 11-0701, 11-0703................................... 16

Environmental Conservation Law §§ 11-0931, 11-1321................................... 16

Fed. R. Evid. 201(b)........................................................................................... 4

N.Y. Penal Law §  400.00(2)(a).......................................................................... 14

N.Y. Penal Law §  400.00(4) .............................................................................. 14

| Cases | Pages |
|---|---|

N.Y. Penal Law § 400.00(6) .......................................................................... 7

Defendants, the City of New York and the New York City Police Department License Division, submit this memorandum of law in support of their cross-motion for summary judgment and in opposition to plaintiffs' motion for a preliminary injunction. Defendants further submit this memorandum in response to the arguments raised in the Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction, dated May 7, 2013 ("Pl. Mem.").

## PRELIMINARY STATEMENT

Plaintiffs commenced this lawsuit challenging, on constitutional grounds, a specific City rule pertaining to the restrictions on a Premises Residence license, which is a license to possess a firearm in one's home, insofar as this restricted license does not authorize a licensee to travel and use their handguns outside of New York City. However, the Second Amendment of the United States Constitution does not grant a restricted license-holder the right to engage in target shooting or competitive sport, nor does it require the City to permit such activity outside of New York City. Similarly, the Second Amendment does not require New York City to authorize a licensee to use his or her firearm for protection of their second homes outside of the City's boundaries. Rather, the Second Amendment has been found to protect the right of citizens to protect themselves in their homes. The City of New York's Premises Residence license does just that – it authorizes a licensee in New York City keep and possess a handgun inside the New York City premise specified on the license, with the limited exception of allowing a licensee to practice use of the handgun at an authorized small arms range in New York City.

As for plaintiffs' claims under the First Amendment (freedom of association and freedom of speech), the constitutional right to travel, and the Dormant Commerce Clause of the United States Constitution, they similarly fail. Nothing in the challenged rule regarding Premises Residence licenses infringes upon plaintiffs' freedom of association or speech.

Although there is simply no constitutionally-protected right to participate in a shooting competition, nothing in the City's Premises Residence license rules prohibits City residents from lawfully participating in gun shooting competitions if they comply with the laws of the jurisdiction where such competitions are being held without relying on the City-issued Premises Residence license. Nor do the Premises Residence license rules require licensees to join private clubs against their will – if a licensee wishes to practice proficiency in their firearms, they may do so at the several City licensed small arms ranges in New York City that are open to members of the public, or, they may elect to join one of the several other licensed ranges that accept members. The Premises Residence license rules similarly do not violate plaintiffs' constitutional right to travel. Finally, plaintiffs' Dormant Commerce Clause claim is similarly fatal insofar as the restrictions on Premises Residence licenses do not impact "commerce" and any negligible burden on commerce is outweighed by the City's public safety interests. For all of these reasons, defendants' cross-motion for summary judgment should be granted and plaintiffs' motion for a preliminary injunction should be denied.

## ARGUMENT

A.  **Standard for Summary Judgment**

"The purpose of the summary judgment mechanism is to allow the prompt resolution of actions in which there is no genuinely disputed issue as to any material fact." In re Dana Corp., 574 F.3d 129, 147 (2d Cir. 2009). The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995)(internal quotations and citations omitted). Moreover, "[i]n moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an

absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found, 51 F.3d 14, 18 (2d Cir. 1995). Conclusory assertions contained in an affidavit or verified pleading, are not sufficient to create a genuine issue of fact. Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue' for trial."). Thus, when one party presents evidence to support its version of the facts that, although disputed by the other party, is not supported by any evidence, there is no genuine issue of material fact. See Scott v. Harris, 550 U.S. 372, 380-381 (2007). Accordingly, any stated disputes in facts that plaintiffs have not supported with admissible evidence, and defendants have supported, are not "genuine disputes," and do not serve to defeat defendants' cross-motion for summary judgment.

## B. Standard for a Preliminary Injunction

Where "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," as is the case here, a preliminary injunction may only be granted if the moving party meets the more rigorous likelihood-of-success on the merits of its claim standard. Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). The Second Circuit has held that "[v]iolations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction." Bery v. City of New York, 97 F.3d 689, 693 (2d Cir. 1996), cert. denied, 520 U.S. 1251 (1997). Thus, in this case, the irreparable injury requirement dovetails with the requirement that plaintiffs

demonstrate a likelihood of success on the merits. Here, plaintiffs cannot make a clear showing of the likelihood of success on the merits of their claims. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982); see also Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 337-338 (1933); Million Youth March, Inc. v. Safir, 155 F.3d 124 (2d Cir. 1998)(modifying injunction because District Court failed to consider government's interest in public health, safety and convenience in balance against First Amendment rights).[1] As set forth below, the relief sought by plaintiffs is not in the public interest, because the restriction placed upon a Premises Residence license is designed to protect the life and safety of the public, as well as to set appropriate limitations upon the use of this already restricted license.[2] As plaintiffs cannot meet the rigorous standard to be entitled to a preliminary injunction, plaintiffs' motion for should be denied.

---

[1] In considering an injunction, the Court must balance the interests and possible injuries to both parties. See Yakus v. U.S., 321 U.S. 414, 440 (1944). Whether the relief sought is in the public interest is a factor to be considered. Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704 (2d Cir. 1982).

[2] Although plaintiffs state that there are no facts in dispute (Pl. Mem. at 8), defendants do dispute the unsupported statements made by plaintiffs regarding the number of ranges open to the public and information about those ranges. According to License Division records, there are eight such ranges. See Declaration of Andrew Lunetta, dated May 29, 2014 ("Lunetta Dec."), ¶¶ 36-44; Ex. "F." However, defendants do not believe that a hearing is warranted over these purportedly disputed facts, because: (1) they are not genuinely disputed, as plaintiffs offer no evidentiary support for these bald conclusions; and (2) pursuant to Fed. R. Evid. 201(b), the Court may take judicial notice of facts not subject to reasonable dispute because they can readily be determined from information available to the public, and thus, cannot reasonably be questioned. See, e.g., U.S. v. Akinrosotu, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of website). In any event, the parties do agree that there is at least one City-approved range within City borders that is open to the public – the West Side Pistol and Rifle Range. See Pl. Mem. at 2, 6; Am. Cmplt., ¶ 35 (Defs. 56.1 St., ¶ 29). Thus, at least one publicly-open range is in the City without membership as a pre-requisite.

## POINT I

**THE REQUIREMENTS IN 38 RCNY § 5-23(a) GOVERNING USE OF RESTRICTED PREMISES RESIDENCE LICENSES DO NOT IMPLICATE THE SECOND AMENDMENT; TO THE EXTENT THAT THIS COURT FINDS THAT THEY DO, THIS COURT SHOULD APPLY INTERMEDIATE SCRUTINY AND THE LICENSE DIVISION'S PUBLIC SAFETY RATIONALE FOR THE RULE EASILY SURVIVES REVIEW.**

In concluding that the District of Columbia's outright ban on the possession of handguns in the home violated the Second Amendment, the Supreme Court in District of Columbia v. Heller, 554 U.S. 570, 635 (2008), expressly provided that certain regulations are "presumptively valid," including prohibitions on possession by certain categories of people (such as felons, mentally ill persons), in certain places (such as schools and other sensitive places) and regulations may condition qualifications on commercial sale. 554 U.S. at 626-27. The Supreme Court in McDonald v. City of Chicago, 561 U.S. 742, 130 S. Ct. 3020, 3048 (2010) affirmed these presumptively lawful prohibitions. These "presumptively valid" regulations, presume a licensing scheme. The Supreme Court in Heller explicitly stated that nothing in its decision "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." 554 U.S. at 626-27. Indeed, in McDonald, the Supreme Court emphasized that the Second Amendment "limits, but by no means eliminates," governmental discretion to regulate activity falling within the scope of the right and that incorporation "does not imperil every law regulating firearms." 561 U.S. 742; 130 S. Ct. at 2046, 2048.

As the Court of Appeals for the Second Circuit noted in Kachalsky v. County of Westchester, 701 F.3d 81 (2d Cir. 2012), the Supreme Court in Heller stressed that while prohibiting handguns in the home is not permissible, "a variety of other regulatory options

remain available, including categorical bans on firearm possession in certain public locations."

Kachalsky, 701 F.3d at 94 (citing Heller, 554 U.S. at 626-27 & n.26).  Since Heller, several other

courts have upheld registration and licensing requirements, along with certain prohibitions on

firearms.  See, e.g., Kachalsky, 701 F.3d 81 (upholding New York State's "proper cause"

requirement for license to carry a concealed firearm); United States v. DeCastro, 682 F.3d 160

(2d Cir. 2012)(upholding statute prohibiting transportation into New York of firearm purchased

in another state); Heller v. District of Columbia ("Heller II"), 670 F.3d 1244, 1261-64 (D.C. Cir.

2011)(upholding prohibition on possession of ammunition magazines in excess of certain

capacity); United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011), cert. denied, 132 S. Ct.

756 (2011) (upholding statute prohibiting carrying or possession of weapon in motor vehicle in

national park); United States. v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), cert. denied, 131 S. Ct.

958 (2011)(upholding prohibition on possession of firearms with obliterated serial numbers

because the law did not "severely limit the possession of firearms"); United States v. Skoien, 614

F.3d 638 (7th Cir. 2010)(en banc), cert. denied, 131 S. Ct. 1674 (2011)(upholding law

prohibiting the possession of firearms by any person convicted of misdemeanor domestic

violence crime).

A.     **This Court Need Not Engage in a Constitutional Scrutiny Analysis to Uphold the
       Validity of the Restrictions for Target Practice Set Forth in 38 RCNY § 5-23(a)(3).**

Because the acts of target practice and competitive shooting do not fall within the

ambit of rights protected by the Second Amendment, the Second Amendment does not apply to

38 RCNY § 5-23(a)(3).[3]  First, it is clear that the ability to engage in competitive shooting is in

---

[3] Despite plaintiffs' allegation that they are challenging the limitation on target shooting in New York
City for Premises Residence licensees, plaintiffs' style their motion as a "challenge to 38 RCNY § 5-23."
However, 38 RCNY § 5-23 sets forth the various types of handgun licenses – which plaintiffs are not
challenging.  Thus, plaintiffs' challenge is really to 38 RCNY § 5-23(a)(3), and not all of section 5-23.

no way protected by the Second Amendment. As set forth above, the Second Amendment recognizes a right, albeit not unlimited one, to protect oneself in the home. Plaintiffs fail to articulate how participating in competitive shooting matches is in any way connected to the right to self defense in the home. Second, plaintiffs similarly fail to establish how engaging in target practice outside of New York City falls within the protection of the Second Amendment. Although defendants can conceive of an argument that Premises Residence licensees may need to have access to a range for practice of the use of firearms, plaintiffs fail to establish that they have no ability to practice within New York City (though they attempt to allege as much, with no support), or how the need to access a shooting range outside of New York City is protected by the Second Amendment.

Third, plaintiffs' argument that the challenged rule deprives them of the ability to protect themselves in their second homes outside of New York City, simply does not present a Second Amendment problem. The license at issue – a New York City Premises Residence license is only issued to persons with residences in New York City, and it is limited only to the specific premise for which it is issued. See N.Y. Penal Law § 400.00(6); 38 RCNY §§ 5-01(a), 5-02(g), 5-23(a)(1)-(2). That a New York City resident may have another home outside of the City is of no moment in the context of a Premises Residence license. There is nothing in the Penal Law or RCNY preventing such person from obtaining an appropriate license to possess or utilize a firearm in the jurisdiction of their second home. This Court has already acknowledged that if the New York Court of Appeals in Osterweil v. Bartlett, 706 F.3d 139 (2d Cir. 2013) finds that the Penal Law § 400.00(a)(3) residency requirement is read "as p[ermitting an individual to apply for a handgun license with the licensing officer of the city or county in which he has a residence, the cogency of Plaintiffs' second-home argument suffers considerably . . . ." Opinion

of Judge Sweet, dated September 18, 2013 (Dkt No. 22; Exhibit "C" to the accompanying Goldberg-Cahn Dec.)("Op."), at 3-4.[4] This Court then concluded that if the New York Court of Appeals finds that the Penal Law requires an individual to be domiciled in a jurisdiction to apply for a license, "the regulation at issue in this case would demand a far more rigorous level of judicial scrutiny than would be employed if the requirement were merely residential in nature." Op. at 5. Subsequent to this Court's stay opinion, the New York Court of Appeals indeed concluded that an applicant who owns a part-time residence in New York, but is permanently domiciled elsewhere is eligible for a New York handgun license under Penal Law § 400.00(3)(a) where the applicant is a resident. Osterweil v. Bartlett, 21 N.Y.3d 580, 584 (N.Y. Ct. App. 2013). Thus, the Penal Law simply requires one to be a resident, not a domiciliary, for purposes of eligibility of a firearms license. As this Court has already found that a eligibility for a firearm based on residency, not domicile, undermines plaintiffs' argument that 35 RCNY § 5-23(a)(3) prevents plaintiffs from protecting themselves in their second homes, plaintiffs' Second Amendment claim fails as a matter of law.

For all of the foregoing reasons, the restriction on allowing Premises Residence licensees to transport their firearms only to authorized New York City ranges does not require this Court to engage in a further constitutional scrutiny analysis.

**B.      If Scrutiny Analysis is Required, Intermediate Scrutiny is Applicable to the Challenged Rule.**

In the event that this Court finds it necessary to engage in a scrutiny analysis of plaintiffs' challenge to the limitation that Premises Residence licensees only be authorized to

---

[4] Waiting for a decision from the N.Y. Court of Appeals on this very question, this Court issued a stay of plaintiffs' prior motion for a preliminary injunction pending a decision in Osterweil. Op. at 7.

carry their firearms to authorized ranges located in New York City, the appropriate standard of review here is intermediate scrutiny.

A majority of courts, including the Second Circuit and courts in this circuit, to address general challenges under the Second Amendment have concluded that intermediate scrutiny is the appropriate level of review – even when reviewing statutes or laws that may restrict the possession of handguns in the home. See, e.g., Kwong v. Bloomberg, 723 F.3d 160, 167-68 (2d Cir. 2013), cert. denied, sub nom., Kwong v. DeBlasio, 2014 U.S. LEXIS 3857 (June 2, 2014)(applying intermediate scrutiny to fee governing New York City premises residence licenses); Kachalsky, 701 F.3d at 96 (applying intermediate scrutiny to New York's "proper cause" requirement for carry licenses); United States v. Reese, 627 F.3d 792, 800 (10th Cir. 2010), cert. denied, 179 L. Ed. 2d 1214 (2011) (applying intermediate scrutiny to statute prohibiting gun possession – even in the home – for those who have an outstanding order of protection [as opposed to a criminal conviction]); United States v. Skoien, 614 F.3d 638 (7th Cir. 2010)(en banc)(applying intermediate scrutiny to law prohibiting the possession of firearms by any person convicted of misdemeanor domestic violence crime); United States v. Chester, 628 F.3d 673, 677 (4th Cir. 2010) (applying intermediate scrutiny); United States v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010)(applying intermediate scrutiny to law limiting possession of firearms with obliterated serial number because the law did not "severely limit the possession of firearms"); United States. v. Oppedisano, 2010 U.S. Dist. LEXIS 127094 (E.D.N.Y. Nov. 30, 2010)(applying intermediate scrutiny to challenge of federal statute prohibiting persons convicted of certain crimes from possessing firearms); New York State Rifle & Pistol Ass'n v. Cuomo, 2013 U.S. Dist. LEXIS 182307, **42-43 (W.D.N.Y. Dec. 31, 2013)(applying intermediate scrutiny to New York SAFE Act and concluding that a mild form of intermediate

scrutiny applies to restrictions posing modest burdens on the right to possess firearms). As the Second Circuit recently noted, intermediate scrutiny is satisfied if the regulation "is substantially related to the achievement of an important governmental interest." Kachalsky, 701 F.3d at 96-97. Accordingly, intermediate level scrutiny is appropriate in analyzing Second Amendment challenges – even those that touch upon the claimed "core" Second Amendment right to self-defense in the home. See also Kwong, at 763 F.3d at 167-68. However, as set forth above, the ability to engage in competitive shooting and target practice wherever one chooses does not touch on the "core" of the protected right, as competitive shooting is not protected by the Second Amendment. Moreover, restrictions on the ability of Premises Residence licensees to travel with their firearm where they decide they wish to practice their skills do not hit upon the core protected right. Rather, such restrictions are simply a part of the regulatory process that is necessary to protect the public safety insofar as the transport of firearms outside of the home potentially endangers the public. Thus, intermediate scrutiny is the applicable standard of review for the constitutional challenge to the rule challenged herein.

Plaintiffs' attempt to argue that strict scrutiny is appropriate here, is misplaced. At the outset, strict scrutiny should not apply here because the challenged rule does not impinge on the "core" of the Second Amendment as it does not establish or purport to establish a prohibition or ban on the exercise of plaintiffs' Second Amendment right to possess a handgun in the home for self-defense – despite plaintiffs' desperate attempts to make it seem so. Cf. Heller (ban on guns in the home, weapons must be completely disassembled); Ezell v. City of Chicago, 651 F.3d 684 (7th Cir. 2011)(applying more rigorous scrutiny "if not quite 'strict scrutiny'" to Chicago's absolute prohibition on firing ranges in the context of law requiring training at a firing range to qualify for a premises gun license). Plaintiffs argue that the challenged rule

"categorically prohibits engaging in target practice or participating in shooting competitions,"
"effectively prohibits ... the right to keep and bear arms," and otherwise makes it "impossible"
to engage in target practice. Pl. Mem. at 11-12, 14. Despite plaintiffs' hyperbole, the rule does
not prevent or prohibit anyone from engaging in target practice or shooting competitions; and
plaintiffs fail to establish how the rule prohibits such conduct. Rather, the License Division's
interpretation of its rule simply requires plaintiffs do so at New York City-approved ranges. The
laws struck down in Heller and McDonald, were laws that prohibited or banned firearms, not
laws that regulated them.

Furthermore, plaintiffs' argument that the instant challenge is analogous to Ezell,
requiring "near strict" scrutiny, fails. Pl. Mem. at 13. Ezell is clearly distinguishable from this
case because there, the ordinance was simply impossible to satisfy within City limits. In Ezell,
there was a law requiring practice at a firing range, along with a law prohibiting any such firing
ranges from operating within city limits. 651 F.3d at 708 ("The City's firing-range ban is not
merely regulatory; it prohibits the 'law-abiding, responsible citizens' of Chicago from engaging
in target practice in the controlled environment of a firing range")(emphasis in original). Here,
there is no ban, prohibition or otherwise, on firing ranges in New York City. Although plaintiffs
state that only one such range exists that is open to the public (with no support, and that
defendants dispute), there is nothing in the challenged rule that prohibits public gun ranges from
operating in New York City.[5] In any event, all that is required is one public range – which both
parties agree is the case. Separately, nothing in the challenged rule requires licensees to practice

---

[5] Although defendants strenuously dispute plaintiffs' claim that only one range open to the public
operates in New York City (Lunetta Dec., ¶¶ 39-40), the fact that few, or even no, such ranges exist is not
tantamount to a ban. The number of firing ranges open to the public is a function of the market, and not
the challenged rule. See, e.g., U.S. Smokeless Tobacco Mfg., Co. v. City of New York, 708 F.3d 428,
436 n.3 (2d Cir. 2013)("Decision by owners of tobacco bars not to sell the product is a commercial choice
that does not result from the ordinance itself.").

at a range, as the statute challenged in <u>Ezell</u> did. Unlike the ban on firing ranges which made compliance with the statute impossible, the requirement that Premises Residence licensees only transport their firearms to approved ranges (located in New York City) is a purely regulatory measure. The challenged rule does <u>not</u> prevent people from going to a range to engage in target shooting practice or competitive shooting. The rule "merely regulate[s] rather than restrict[s]" the right to possess a firearm in the home and is a minimal, or at most, modest burden on the right. <u>Ezell</u>, 651 F.3d at 708-09. Even with the rule, Premises Residence licensees are authorized to possess an assembled firearm in their home and to transport the weapon to a City-authorized firing range to engage in target practice in a controlled environment. <u>See</u> 38 RCNY §§ 5-01(a); 5-22(a)(14). As such, strict scrutiny is not appropriate.

**C.    35 RCNY § 5-23(a)(3) Easily Survives Intermediate Scrutiny.**

Applying intermediate scrutiny, it is clear that the requirement that Premises Residence licensees practice only at authorized ranges in the City of New York serves an important or substantial government interest in public safety attendant in regulating handgun possession. Intermediate scrutiny essentially requires that the government interest be important and that the fit between the regulation and the government's interest be reasonable. "To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective." <u>Clark v. Jeter</u>, 108 S. Ct. 1910, 1914 (1988). Indeed the Second Circuit has found that "the fit between the challenged regulation need only be substantial, 'not perfect.'" <u>Kachalsky</u>, 701 F.3d at 97 (quoting <u>Marzzarella</u>, 614 F.3d at 97).

The Second Circuit has held that "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention." <u>Kachalsky</u>, 701 F.3d at 97 (citing <u>Schenck v. Pro-Choice Network</u>, 519 U.S. 357, 376 (1997); <u>Schall v. Martin</u>, 467 U.S. 253, 264 (1984); <u>Hodel v. Virginia Surface Mining & Reclamation Ass'n</u>, 452 U.S. 264, 300 (1981);

Kuck v. Danaher, 600 F.3d 159, 166 (2d Cir. 2010)). The City's interest here in limiting the permissible transport of dangerous firearms outside of the home is vital. Lunetta Dec., ¶¶ 2-7. Indeed, courts have found that "outside the home, firearms safety interests often outweigh individual interests in self defense." Masciandaro, 638 F.3d at 470. The Second Circuit in Kachalsky noted that because of the "dangers posted to public safety," there "is a longstanding tradition of states regulating firearm possession and use." 701 F.3d at 94-94 (collecting statutes from Founding era). The Second Circuit further noted that "while the Second Amendment's core concerns are strongest inside hearth and home, states have long recognized a countervailing and competing set of concerns with regard to handgun ownership and use in public." Id. at 96.

The restrictions on the transport of firearms for practice or competition applicable to Premises Residence licensees set forth in 38 RCNY § 5-23(a)(3) are substantially related to the City's substantial interest in public safety and crime prevention. It is well-established that firearms in the public present a greater public danger than firearms inside one's home. See Kachalsky, 701 F.3d at 94-99. Restrictions on transporting firearms for those with restricted Premises Residence licenses, are substantially related to the City's important public interest. Allowing Premises Residence licensees to travel with their firearms to only approved ranges, ensures that licensees are not travelling in the public with their firearms to any place of their choosing. As explained in the accompanying Declaration of NYPD Deputy Inspector Lunetta, the realities of enforcing a rule which authorizes Premises Residence licensees to travel wherever and whenever they choose with their firearms, makes it quite difficult to maintain the limited nature of the license. If holders of Premises Residence licenses have reason to believe that they may carry their firearms anywhere in New York state or across state lines, without consequence, it is likely, from past experience, that many licensees will transport firearms in their vehicles,

thus, eviscerating the restrictions on Premises Residence licenses. Lunetta Dec., ¶¶ 2-10.

Indeed, the License Division's experience with the now-eliminated target license,[6] and the abuse

by target licensees who were caught travelling with their firearms when it was clear that they

were not on the way to or from an authorized range, supports this interest. See Lunetta Dec., ¶¶

9, 24-28; Goldberg-Cahn Dec. Exs. "A" and "B." Examples of abuses of the limitations by

holders of target licenses observed included licensees travelling with loaded firearms, licensees

caught with firearms no where near the vicinity of an authorized range, licensees taking firearms

on airplanes, and licensees travelling with firearms during hours where no authorized range was

open. Lunetta Dec., ¶¶ 27-31, Exs. "C" and "D" (collecting cases). Here, by ensuring that

Premises Residence licensees only travel with their firearms to authorized ranges in New York

City, the City is able to ensure that licensees are only travelling to limited areas with their

restricted licenses while affording them the opportunity to maintain their proficiency in the use

of their firearms. It would frustrate the License Division's ability to monitor Premises Residence

license holders if they were able to state that they were travelling to a range to practice, when

found by law enforcement to have their firearms in their vehicles anywhere in the state. Id. at ¶¶

2-7. In a prior challenge to the Penal Law, the Second Circuit rejected the argument that persons

residing outside of New York were no more difficult to monitor than residents, finding that the

state had demonstrated it could not obtain the same quality information from other states as it did

under its monitoring system under the Penal Law. Bach v. Pataki, 408 F.3d 75, 92-93 (2d Cir.

---

[6] There is no provision in the N.Y. Penal Law (§ 400.00(4)) for a target license, whereas the Penal Law expressly provides for a license to possess a firearm in the home. See Penal Law § 400.00(2)(a). The New York State Supreme Court, Appellate Division, First Department upheld the elimination of the target license. De Illy v. Kelly, 6 A.D.3d 217 (1st Dep't 2004). There, the Court concluded that although a Premises Residence license is "limited to that licensee's dwelling, we do not view respondent's expansion of that right, to allow transport of such arms to authorized target ranges and hunting areas for proficiency enhancement and recreation, as supplanting the statute, but merely supplementing it." 6 A.D.3d at 218.

2005).[7] Like the abuse of the target license, a licensee found with a firearm would simply assert after the fact that they were on their way to a range anywhere in the state.

Where, as here, target shooting is limited to New York City-approved ranges, a patrolling NYPD officer observing a Premises Residence licensee with a firearm, has the ability to ascertain from the licensee where they were going and will report back to the License Division if firearms were not being transported directly to or from an authorized range. Lunetta Dec., ¶¶ 4-7. Further, the License Division has a better ability to investigate the credibility of such assertions when the incident was reported by an officer of the NYPD, as well as the ability to better police and monitor whether the person was in fact travelling directly to or from an authorized range. See id., ¶¶ 4-7; 23-26. In contrast, law enforcement agencies outside of New York City may not report back any incidents of observing Premises Residence licensees travelling with their firearms – as they are not required to do so.[8] See Lunetta Dec., ¶ 24. Moreover, law enforcement outside of New York City may be less able to pursue the credibility of assertions that a Premises Residence licensee was transporting their firearm to a range outside of New York City because the license holder could easily choose from any number of distant ranges (including those outside the jurisdiction of where they were caught) and make such assertions about his or her chosen route. See Lunetta Dec., ¶¶ 4-7; 20-23.

_____

[7] Although Bach was premised upon the right to bear arms being a privilege and not a right pre-Heller, the Second Circuit's findings about the ability of New York to monitor its own residents as compared to other jurisdictions is applicable here. 408 F.3d at 92-93.

[8] As explained by Deputy Inspector Lunetta, only arrests for which finger prints are required to be made that occur outside of New York City, are reported back to the License Division. Arrests that are not "finger-printable offenses" are not automatically reported back to the License Division. Nor are other incidents, such as incidents resulting in summonses or observations of travelling with a firearm, required to be reported to the License Division. See Lunetta Dec., ¶¶ 23-24.

In addition, it simply cannot be disputed that practice at an authorized range, which has been investigated by the NYPD and is required to adhere to certain fire safety requirements, ensures the public safety. The NYPD has the ability to monitor approved ranges, reviews the books of such ranges, and is aware of any incidents that occur at such ranges. See Lunetta Dec., ¶¶ 6-7; 32-38. Moreover, all New York City approved ranges are required to be constructed from material to reduce fire hazards, set their firing booths a certain distance from one another and at certain heights, and be configured in specific ways to reduce fire hazards. See Lunetta Dec., ¶¶ 33-37, Ex. "E."

Plaintiffs make much about the exemption in 38 RCNY § 5-23(a)(4) authorizing Premises Residence licensees to transport their handgun directly to or from an area authorized by N.Y. State Fish & Wildlife Law. Pl. Mem. at 16. However, a Premises Residence licensee with a hunting authorization is not permitted to travel around New York State with their firearms wherever and whenever they choose. Hunting in New York State is a highly regulated activity. Pursuant to Article 11, Title 7 of the New York State Environmental Conservation Law ("ECL"), authorization to hunt may be exercised only at the times, places, manner and to the extent as permitted by specific licenses and stamps to hunt specific species. See, e.g., ECL §§ 11-0701, 11-0703. The state law further proscribes limitations on the use and possession of firearms. See, e.g., ECL §§ 11-0931, 11-1321. Hunting authorizations only allow the transport of a firearm for hunting that is authorized pursuant to the New York State Fish and Wildlife Law. As such, any licensee observed by law enforcement in New York State to be travelling with a firearm stating that they were on a direct route to hunting would be required to produce a copy of the New York City Premises Residence license, a City hunting authorization, a valid hunting license for the specific season and area at issue, and have knowledge of many other rules specific to the game

and area (such as weapon types, ammunition restrictions, time and day restrictions, and game gender and size restrictions). See Lunetta Dec., ¶ 8. An officer anywhere in the state may ask a person with a weapon about game tags, or many other specific questions to evaluate the credibility of the assertion that the person was en route to an area covered by the Fish and Wildlife Law. Id. It would be a far more elaborate lie to justify the illegal transport of firearms, than one alleging that they were en route to a range or shooting competition located anywhere in the state.[9]

## POINT II

## THE RULE DOES NOT IMPEDE ON PLAINTIFFS' RIGHT TO TRAVEL

As set forth above, a Premises Residence license is a restricted firearms license that is issued specifically for the protection of a specific New York City residence. See 38 RCNY § 5-23(a). The rules pertaining to Premises Residence licenses specifically state that any handguns listed as connected to said license "may not be removed from the address specified on the license except as otherwise provided in this chapter." 38 RCNY § 5-23(a)(1). Plaintiffs' specious argument that the restriction on Premises Residence licenses impedes on their fundamental right to travel, fails. See Pl. Mem. at 20-32. Plaintiffs' allegation in this regard is barebones and conclusory, insofar as it fails to articulate how this right is implicated. It is well-

---

[9] While defendants do not concede that strict scrutiny is applicable to the Second Amendment challenge raised here, 38 RCNY § 5-23(a)(3) passes constitutional muster even under strict scrutiny. As the Second Circuit found in the context of a Second Amendment challenge, "heightened scrutiny is triggered only by those restriction that ... operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense." United States v. DeCastro, 682 F.3d at 166. Even under the more exacting test of strict scrutiny, because the rule only, at most, restricts the places where a license may travel with their firearm to go target shooting to a geographic area under the jurisdiction of the NYPD, and does not prohibit target shooting, it meets the least restrictive means test. The restrictions on where licensees bearing already restricted firearms licenses may travel with their firearms is nothing more than a *de minimis* burden on their protected rights.

settled that the "constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal Union." Shapiro v. Thompson, 394 U.S. 618 (1969). This constitutional protection for interstate travel has been extended, in the Second Circuit, to intrastate travel as well. King v. New Rochelle Municipal Housing Auth., 442 F.2d 646, 648 (2d Cir.), cert. denied, 404 U.S. 863 (1971).

Here, however, plaintiffs fail to demonstrate how the requirements in 38 RCNY § 5-23(a) infringe upon their right to travel. Plaintiffs point to nothing that requires New York City to allow its licensees to transport their restricted firearms to other states, or to other locales within New York State. Simply restricting holders of restricted Premises Residence licenses to keep their firearms in their residences, or to and from an authorized small arms range, does not in any way impede on plaintiffs' right to travel. Courts have found that "'travelers do not have a constitutional right to the most convenient form of travel [, and] minor restrictions on travel do not amount to the denial of a fundamental right.'" Town of Southhold v. Town of East Hampton, 477 F.3d 38, 53 (2d Cir. 2007)(citations omitted). "When a statute or regulation has 'merely ... an effect on travel,' it does not raise an issue of constitutional dimension.' 'A statute implicates the constitutional right to travel when it actually deters such travel, or when the impedance of travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right.'" Five Borough Bicycle Club v. City of New York, 483 F. Supp.2d 351, 362-63 (S.D.N.Y. 2007)(quoting Soto-Lopez v. New York City Civil Serv. Comm'n, 755 F.2d 266, 278 (2d Cir. 1985)(emphasis in original). Nothing in the rules pertaining to Premises Residence licenses impedes, deters, or punishes travel. While the rule admittedly does not allow for unrestricted travel with a firearm outside New York City, the rule

does not prevent Premises Residence licensees from travelling outside of New York City – it simply prevents them from travelling with their firearm.

In Town of Southhold, the Second Circuit held that "[t]he fact that the [law] may make travel less direct for some passengers does not meet the threshold required for strict scrutiny review . . . 'something more than a negligible or minimal impact on the right to travel is required before strict scrutiny is applied.'" 477 F.3d at 54 (citations omitted). The Second Circuit has recognized that minor restrictions on travel "simply do not amount to the denial of a fundamental right." Selevan v. New York Thruway Auth., 71 F.3d 253, 257-58 (2d Cir. 2013); see also Joseph v. Hyman, 659 F.3d 215, 219 (2d Cir. 2011). Moreover, in Turley v. New York City Police Dep't, plaintiff street musician challenged certain City regulations as violative of the First Amendment, and raised a right to travel allegation arguing that he cannot afford to buy multiple permits for each day of performing for different locations. Turley, 1996 U.S. Dist. LEXIS 2582, (S.D.N.Y. 1996), aff'd in part, rev'd in part, after trial on other issues, 167 F.3d 757 (2d Cir. 1999). In Turley, the Court found that "the right to travel is not violated by police power regulations that impose reasonable restrictions on the use of streets and sidewalks." Id. at *19; see L utz v. City of York, 899 F.2d 255, 270 (3d Cir. 1990) (finding state ordinance outlawing "cruising" was a reasonable time, place and manner restriction on right to local travel).

Here, like the regulations requiring sound permits for speech (Turley, supra; Lutz, supra), or the requirement to pay tolls to commute to work (Selevan, supra), the requirement that holders of restricted and limited firearms licenses, such as the Premises Residence license, may not travel unrestricted with their firearms throughout the state (or outside of New York state), does not infringe on any fundamental right. Indeed, such restrictions amount to nothing more than reasonable time, place, and manner restrictions on the possession and use of a firearm.

Indeed, the requirement in the RCNY does not prevent the plaintiffs from traveling. The requirement that Premises Residence licensees only be able to take their firearms to small arms ranged authorized by the City of New York is merely a time, place, and manner regulation on an already restricted license, which, for the reasons set forth herein, is entirely constitutional.

Plaintiffs' argument that 38 RCNY § 5-23(a)(3) conflicts with the Firearms Owners' Protection Act ("FOPA"), 18 U.S.C. § 926A similarly lacks merit. Pl. Mem. at 21. FOPA protects individuals from prosecution for illegally transporting firearms when the origin or destination of the transfer is a place where the individual "may lawfully possess and carry such firearm." 18 U.S.C. § 926A. In Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129 (2d Cir. 2010), the Second Circuit held that FOPA does not create a presumption that gun owners may travel interstate with their guns to places that do not permit unlicensed firearm possession, as long as the person complied with requirements that the firearm be transported unloaded in a case. Similarly, in a state court challenge invoking FOPA, the Court held that "[w]here the licensee is not permitted by the terms of the license to lawfully carry the firearm at the time he embarks on a trip to another state, FOPA is inapplicable." Beach v. Kelly, 52 A.D.3d 436, 437 (1st Dep't 2008).[10] Here, Premises Residence licensees are not authorized to carry firearms under the terms of their restricted license, other than in the limited exception of to a New York City authorized range. Thus, plaintiffs do not meet the lawful carry requirement set forth in 18 U.S.C. § 926A.

---

[10] Even if plaintiffs as Premises Residence license holders were authorized to carry firearms under the terms of their restricted license, plaintiffs' claims under FOPA still lack merit as courts have limited the reach of FOPA to only allow for travel of firearms in vehicles. See Association of New Jersey Rifle & Pistol Clubs v. Port Auth. of N.Y. & N.J., 730 F.3d 252, 257 (3d Cir. 2013). While plaintiffs are arguing that they seek to freely travel outside of the City with their handguns, it is not clear that the only means of travel plaintiffs seek to invoke is travel in their vehicles. Indeed, as New York City residents, plaintiffs may not possess or have access to motor vehicles and may have to travel by foot, by train, ferry, or other means, including by foot through such public transportation terminals.

## POINT III

## THE RULE PERTAINING TO PREMISES RESIDENCE LICENSES DOES NOT IMPEDE UPON PLAINTIFFS' RIGHT TO FREEDOM OF ASSOCIATION.

Similarly, the rule pertaining to target practice with premises residence licenses does not violate any of plaintiffs' rights protected under the First Amendment. The First Amendment protects the right of individuals to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for redress of grievances, and the exercise of religion. Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984); Sanitation Recycling Indus. v. City of New York, 107 F.3d 985, 996-97 (1997). However, government regulation or conduct that makes it "more difficult for individuals to exercise their freedom of association … does not, without more, result in a First Amendment violation." Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 228 (1996). Rather, "[t]o be cognizable, the interference with associational rights must be 'direct and substantial' or 'significant.'" Id., quoting Lyng v. UAW, 485 U.S. 360, 366-67 n. 5 (1988). Moreover, the existence of a "'chilling effect' even in the area of First Amendment rights" does not support a freedom of expressive association claim. Id., citing Younger v. Harris, 401 U.S. 37, 51 (1971).

Here, plaintiffs have not even alleged how engaging in target practice and competitive shooting outside of New York City constitutes expressive matter or free association protected by the First Amendment. Universal City Studios, Inc. v. Reimerdes, 111 F. Supp.2d 294, 326 (S.D.N.Y. 2000), aff'd, sub nom. Universal City Studios. Inc. v. Corley, 273 F.3d 249 (2d Cir. 2001). In order for an activity to fall within the ambit of the First Amendment, "a group must engage in some form of expression, whether it be public or private." Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000). Plaintiffs do nothing more than make the bald and conclusory

21

assertion that practicing at ranges and participating in shooting competitions is protected expressive or associational conduct. See Pl. Memo. at 17-19. However, simply asserting that gathering to practice and use what plaintiffs deem to be their constitutional rights protected under the Second Amendment (which defendants do not concede) does not serve to create a right to expression and association protected under the First Amendment. Indeed, Courts have been loathe to implicate First Amendment rights in the context of the Second Amendment. See Kachalsky, 701 F.3d at 91-92 ("it would be . . . imprudent to assume that the principles and doctrines developed in connection with the First Amendment apply equally to the Second [Amendment]."); Plastio v. Koster, 2013 U.S. Dist. LEXIS 58544, *9 (E.D. Mo. Apr. 24, 2013); Woolard v. Sheridan, 863 F. Supp.2d 462, 472 (D. Md. 2012), rev'd on other grounds, sub nom, Woolard v. Gallagher, 712 F.3d 865, 2013 U.S. App. LEXIS 5617, **17-18 (4th Cir. Mar. 21, 2013); Piszczatoski v. Filko, 840 F. Supp.2d 813, 835-36 (D.N.J. 2012).

In any event, the requirement that Premises Residence licensees only utilize New York City authorized small arms ranges for purposes of practicing with their restricted firearm does not directly and substantially interfere with the rights of plaintiffs to exercise their right to freely associate.[11] Rather, that requirement simply affects the place and manner in which plaintiffs may engage in target shooting – an activity that is elective. Although plaintiffs argue that 38 RCNY § 5-23(a)(3) sets forth a requirement that Premises Residence licensees practice "[t]o maintain proficiency in the use of the handgun," nothing in that rule is compulsory, requiring licensees to practice at a range, it simply permits it. Nothing prevents plaintiffs from

---

[11] Plaintiffs offer no support for their contention that all "New York City residents are forbidden from participating in competitive shooting events outside New York City borders." Pl. Mem., at 18. To be sure, certainly New York City residents with unrestricted carry licenses, or residents who have obtained licenses in other jurisdictions, may be able to participate in such competitions outside of the City's borders. Indeed, each of the three individually-named plaintiffs in this action hold firearms permits in one or more states outside of New York. See Colantone Aff., ¶ 3); Irizarry Aff., ¶ 4; and Alvarez Aff., ¶ 4.

associating with other handgun licensees at ranges in New York City, or any shooting competitions held therein. Nor does anything in the City's rule prevent any of the plaintiffs from obtaining a license to utilize, possess, or carry a handgun in the states or localities where plaintiffs seek to engage in target practice or shooting competitions outside of New York City.[12]

Plaintiffs' contention that the rule compels speech or association against their will (Pl. Mem., at 18-19), is not worthy of serious consideration. Even if plaintiffs were correct that the only public range(s) in the City did not offer competitive shooting competitions (which they are not)[13], the fact that plaintiffs may have to join a private club to engage in this elective activity is in no way a result of the government conduct or the challenged rule. In addition, contrary to plaintiffs' arguments, the rule itself does not "eliminate[] the vast majority of options for New York City residents to teach and learn safe and effective handgun practices." Pl. Mem. at 19. As set forth above (see Point I, supra), nothing in the City's rule eliminates any options for New York City residents to teach and practice with their guns. The fact that there may be few ranges that offer competitive shooting events in the City is a function of the market – and not any rule.[14]

---

[12] While a direct and substantial infringement on the right to expressive association can be justified only if it survives strict scrutiny, Roberts, 468 U.S. at 623 (infringing regulations must "serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms"), a content-neutral time, place and manner regulation of expressive conduct is subjected to intermediate scrutiny, as described above.

[13] Defendants are aware of at least one range that holds shooting competitions – the Richmond Borough Gun Club, of which plaintiff Colantone was at one time president. See Lunetta Dec., ¶ 42; Ex. "I."

[14] In any event, it cannot be a violation of the right to associate to impose a prohibition on those who seek to gather to engage in illegal conduct. For all of the reasons set forth here, because the restriction is a valid exercise of police power, it does not violate the Second Amendment.

## THE RULE FOR PREMISES RESIDENCE LICENSES DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE.

Plaintiffs argue that 38 RCNY § 5-23(a)(3) is unconstitutional because it: (1) amounts to extraterritorial control of commerce; and (2) imposes a burden on interstate commerce outweighed by local benefits. Pl. Mem. at 22-24. However, plaintiffs' Dormant Commerce Clause argument fails. Article I, Section 8, Clause 3 of the United States Constitution provides that Congress shall have power "[t]o regulate Commerce with foreign Nations, and among several States, and with the Indian Tribes...." In addition to this express grant of power to Congress, the Commerce Clause contains a negative implication – commonly referred to as the dormant Commerce Clause – "which limits the power of local governments to enact laws affecting interstate commerce." Town of Southold, 477 F.3d 38. The chief concern of the dormant Commerce Clause is economic protectionism – "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." McBurney v. Young, 133 S. Ct. 1709, 1719 (Apr. 20, 2013) (internal quotations omitted).[15] However, this restriction is not absolute, and "the States retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected." Maine v. Taylor, 477 U.S. 131, 138 (1986); see also McBurney, 133 S. Ct. at 1719-20.

A law may violate the dormant Commerce Clause in three ways. First, if a statute clearly discriminates against interstate commerce on its face or in effect, it is virtually invalid per

---

[15] The U.S. Supreme Court recently expressed some misgivings about the Dormant Commerce Clause framework, but nevertheless continued to apply it. McBurney, 133 S. Ct. at 1719-1720; see also id. at 1721 (J. Thomas, concurrence)("I continue to adhere to my view that 'the negative Commerce Clause has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application, and, consequently, cannot serve as a basis for striking down a state statute.'")(quoting Hillside Dairy Inc. v. Lyons, 539 U.S. 59, 68 (2003).

se. See Town of Southold, 477 F.3d at 47. Such a law can withstand judicial scrutiny only if the purpose is unrelated to economic protectionism. See McBurney, 133 S. Ct. at 1719-20; Town of Southold, 477 F.3d at 47; Selevan, 584 F.3d at 94-95. Second, when a law regulates evenhandedly to effectuate a legitimate public interest, and burdens interstate commerce only incidentally, the balancing test articulated in Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970) is applied. Under Pike, the statute will be upheld unless the burden on interstate commerce:

> is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

Id. A party challenging a law on either of these two grounds must first demonstrate that the statute has a "disparate impact" on interstate commerce. See Town of Southold, 477 F.3d at 47. In other words, the statute "must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." National Elec. Mfrs.' Ass'n v. Sorrell, 272 F.3d 104, 109 (2d Cir. 2001). Third, a statute is invalid per se "if it has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).[16]

The extraterritorial aspect of dormant Commerce Clause jurisprudence emerged from Supreme Court price-regulation cases. See Freedom Holdings, 357 F.3d at 219. The last in this line of cases, Healy v. The Beer Inst., 491 U.S. 324 (1989), sets forth the following three principles to guide an extraterritoriality analysis:

---

[16] The extraterritorial reach of a statute is sometimes analyzed as a type of "disparate impact" under the Pike balancing test rather than as an independent basis for invalidity. See Freedom Holdings, 357 F.3d at 216, n.11.

First, the Commerce Clause precludes the application of a state statute that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State, and specifically, a State may not adopt legislation that has the practical effect of establishing a scale of prices for use in other states. Second, a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature....Third, the practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation.

Id. at 336 (internal quotations and citations omitted).

38 RCNY § 5-23(a) differs markedly from the laws at issue in the price regulation cases. First, the rule does not "establish a scale of prices" or affect interstate pricing decisions - the law has absolutely nothing to do with pricing. Second, the Connecticut price affirmation statute struck down in Healy smacked of economic protectionism. Here, the rule regarding where restricted licensees may carry their firearms has nothing to do with economic interests. Thus, the chief concern of the dormant Commerce Clause – economic protectionism – is not implicated here. Third, the rule does not directly control commercial activity occurring wholly outside New York State. The price regulation statutes made specific reference to the conduct of out-of-state actors. Unlike those regulations, the challenged rule does not mention other states for any purpose. See National Elec. Mfrs.' Ass'n v. Sorrell, 272 F.3d at 110. The rule simply provides that restricted licensees may only deviate from the restriction of using their firearm in their home in the limited circumstance of carrying their firearms to City authorized ranges to protect the public safety.[17] The rule does not prohibit persons from purchasing firearms or

---

[17] Plaintiffs' entire extraterritoriality argument rests upon the flawed notion that Premises Residence licensees are "lawfully licensed to carry firearms," which, according to the terms of such license, they are

attending shooting competitions. Like the statute challenged in <u>Brown & Williamson Tobacco Corp. v. Pataki</u>, 320 F.3d 200, 214 (2d Cir. 2003), the rule "neither impedes nor obstructs the flow of" firearms in interstate commerce . . . "it merely" regulates the "manner" in which one transports their firearm.

At most, plaintiffs have demonstrated that 38 RCNY § 5-23(a)(3) is a municipal regulation that has minor, indirect ripple effects outside the City's boundaries. However, such effects are without constitutional significance where, as here, the challenged law does not directly control commerce and out-of-state entities' "remain free to conduct commerce on their own terms...." <u>Freedom Holdings</u>, 357 F.3d at 221; <u>see also</u> <u>Instructional Sys., Inc. v. Computer Curriculum Corp.</u>, 35 F.3d 813, 825 (3d Cir. 1994) ("[I]t is inevitable that a state's law...will have extraterritorial effects. The Supreme Court has never suggested that the dormant Commerce Clause requires Balkanization, with each state's law stopping at the border.").

In the alternative, plaintiffs argue that the rule imposes a burden on commerce incommensurate with the local benefits (Pl. Mem. at 23), or the <u>Pike</u> balancing test. However, before the balancing test is applied, plaintiffs must make a threshold showing of disparate impact. <u>Town of Southhold</u>, 477 F.3d at 50. As set forth above, plaintiffs do not meet their burden of establishing that the rule has an impact on commerce, despite their conclusory statements saying so. In any event, any purportedly unique burden on commerce is outweighed by the strength of the local benefits, and thus, the <u>Pike</u> balancing test is clearly satisfied. As set forth above (Point I, <u>supra</u>), the rule prohibiting where restricted license holders may transport their firearms is clearly related to the strong government interest in protecting the public safety

---

not. Pl. Mem. at 22 (emphasis added). Indeed, City residents bearing a carry license can certainly travel with their license outside of the state if they are lawfully permitted to carry and possess a license in the other jurisdiction.

by ensuring that people are not travelling all over the state with their firearms, and are only travelling with them directly to the places that have been approved by the NYPD. Because the important local interests at stake far outweigh any negligible burden on interstate commerce, and nondiscriminatory alternatives are not available, 38 RCNY § 5-23(a)(3) is not unconstitutional under the Pike balancing test.

## **CONCLUSION**

For the reasons set forth above, the Court should grant defendants' cross-motion for summary judgment in its entirety, and deny plaintiffs' motion for a preliminary injunction, together with such other and further relief as this Court deems just and proper.

Dated:     New York, New York
           June 5, 2014

                          ZACHARY W. CARTER
                          Corporation Counsel of the
                             City of New York
                          Attorney for Defendants
                          100 Church Street
                          New York, New York 10007
                          Email: migoldbe@law.nyc.gov
                          (212) 356-2199

                  By:     _____
                          MICHELLE GOLDBERG-CAHN
                          Assistant Corporation Counsel