UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, ROMOLO COLANTONE, EFRAIN
ALVAREZ, and JOSE ANTHONY IRIZARRY,

                                             Plaintiffs,

              -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT LICENSE DIVISION,

                                           Defendants.

------------------------------------------------------------------------ X

13 CV 2115 (RWS)
ECF Case

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

ZACHARY W. CARTER
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, 5th Floor
New York, New York  10007
(212) 356-2199

August 15, 2014

SHERYL NEUFELD,
MICHELLE GOLDBERG-CAHN,
                Of Counsel.

BENJAMIN HILLENGAS,
                On the Memorandum.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT

    POINT I

        PLAINTIFFS' ARGUMENT THAT 38 RCNY § 5-23(A) VIOLATES THE SECOND AMENDMENT OF THE U.S. CONSTITUTION IS MISGUIDED. ...................................................... 3

        A.  The Second Amendment Does Not Protect the Acts of Target Practice or Competitive Shooting. .................................................................... 3

        B.  Nothing in the Challenged Rule Burdens the So-Called Core Right for Plaintiffs to Protect Themselves in Their Second Homes ................................. 5

        C.  Plaintiffs Fail to Establish That the Challenged Rule Implicates Strict Scrutiny Analysis; Indeed if Any Scrutiny Analysis is Required, Intermediate Scrutiny is Clearly the Standard to Be Applied. .................................................................. 8

    POINT II

        38 RCNY § 5-23(A) IS CONSISTENT WITH PLAINTIFFS' RIGHT TO TRAVEL AND THE PLAIN LANGUAGE OF THE FIREARM OWNERS PROTECTION ACT. .......................................... 13

        A.  Plaintiffs' Reliance on FOPA is Misplaced. ...................................... 13

        B.  Plaintiffs' Right to Travel is in No Way Infringed by the Challenged Rules ..................................... 15

**Page**

POINT III

    THE RULE PERTAINING TO PREMISES
RESIDENCE LICENSES DOES NOT IMPEDE
UPON PLAINTIFFS' RIGHT TO FREELY
ASSOCIATE. ........................................................................ 19

POINT IV

    THERE IS NOTHING IN THE CHALLENGED
RULE THAT VIOLATES THE DORMANT
COMMERCE CLAUSE. ...................................................... 21

CONCLUSION............................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

Am. Bev. Ass'n v. Snyder,
    700 F.3d 796 (6th Cir. 2012) ........................................................................ 23

Attorney General of New York v. Soto-Lopez,
    476 U.S. 898 (1986) ................................................................................... 17

Beach v. Kelly,
    52 A.D.3d 436 (1st Dep't 2008),
    lv. app. denied, 11 N.Y.3d 711 (Nov. 2008) ................................................ 15, 18

Bibb v. Navajo Freight Lines,
    359 U.S. 520 (1959) ................................................................................... 23

De Illy v. Kelly,
    6 A.D.3d 217 (1st Dep't 2004) ..................................................................... 10

Department of Revenue of Ky. v. Davis,
    553 U.S. 328 (2008) ................................................................................... 22

Eric M. Berman, P.C. v. City of New York,
    895 F. Supp. 2d 453 (E.D.N.Y. 2012) ......................................................... 23

Ezell v. City of Chicago,
    651 F.3d 684 (7th Cir. 2011) ......................................................................... 4

Five Borough Bicycle Club v. City of New York,
    483 F. Supp.2d 351 (S.D.N.Y. 2007) ........................................................... 17

Healy v. Beer Inst., Inc.,
    491 U.S. 324 (1989) .............................................................................. 22, 23

Kachalsky v. County of Winchester,
    701 F.3d 81 (2d Cir. 2012) .......................................................................... 3, 9

Kwong v. De Blasio,
    1345 S. Ct. 2496 (June 2, 2014) ..................................................................... 8

Kwong v. Bloomberg,
    723 F.3d 160 (2d Cir. 2013) .......................................................................... 8, 9

Lutz v. City of York,
    899 F.2d 255 (3d Cir. 1990) .......................................................................... 18

**Cases**                                                                                    **Pages**

Minnesota v. Clover Leaf Creamery Co.,
    449 U.S. 456, 101 S. Ct. 715 (1981) ...................................................................... 22

Murad v. City of New York,
    12 A.D.3d 193 (1st Dep't 2004) ......................................................................... 10

Nordyke v. King,
    644 F.3d 776 (9th Cir. 2011) ............................................................................... 8

Northwest Central Pipeline Corp. v. State Corporation Comm'n of Kan.,
    489 U.S. 493 (1989) ........................................................................................... 22

Osterweil v. Bartlett,
    21 N.Y.3d 580 (2013) .................................................................................... 6, 14

Philadelphia v. New Jersey,
    437 U.S. 617 (1978) ........................................................................................... 21

Pike v. Bruce Church Inc.,
    397 U.S. 137 (1970) ...................................................................................... 22, 23

Planned Parenthood of Se. Pa. v. Casey,
    505 U.S. 833 (1992) ............................................................................................. 8

Quill Corp. v. North Dakota,
    504 U.S. 298 (1992) ........................................................................................... 21

Rocky Mountain Farmers Union v. Corey,
    730 F.3d 1070 (9th Cir. 2013) ........................................................................... 23

In the Matter of Sgueglia v. Kelly,
    2014 N.Y. Slip Op. 24215, 2014 N.Y. Misc. LEXIS 3393,
    N.Y.S. Sup. Ct., N.Y. County, Index No. 101407/2013 (July 11, 2014) ................................. 10

Soto-Lopez v. New York City Civil Serv. Comm'n,
    755 F.2d 266 (2d Cir. 1985) ............................................................................... 17

Sweezy v. New Hampshire,
    354 U.S. 234 (1957) ........................................................................................... 21

Toracco v. Port Auth. of N.Y. & N.J.,
    615 F.3d 129 (2d Cir. 2010) ................................................................... 14, 15, 18

Town of Southold,
    477 F.3d 38, 47 (2d Cir.2007) ........................................................................... 23

**Cases**                                                                **Pages**

Turley,
    1996 U.S. Dist. LEXIS 2582, (S.D.N.Y. 1996),
    aff'd in part, rev'd in part,
    after trial on other issues, 167 F.3d 757 (2d Cir. 1999) ............................................ 18

United Haulers Assn., Inc. v. Oneida-Herkimer Solid Waste Management Authority,
    550 U.S. 330 (2007) ................................................................................................ 22

United States v. DeCastro,
    682 F.3d 160 (2d Cir. 2012) ................................................................................. 3, 9

**Statutes**

18 U.S.C. § 926A ................................................................................. 13, 14, 18, 19

38 RCNY § 5-01 ............................................................................................... 7

38 RCNY § 5-01(a) ............................................................................................ 17

38 RCNY § 5-22(a)(9) ....................................................................................... 7

38 RCNY § 5-22(16) ......................................................................................... 7

38 RCNY § 5-23(a) ....................................................................................... passim

38 RCNY § 5-23(a)(1) ....................................................................................... 14

38 RCNY § 5-23(a)(3) ....................................................................................... 18

38 RCNY § 5-33 ............................................................................................... 7

U.S. Const.Art. I, § 8, cl. 3 ............................................................................... 21

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PRELIMINARY
INJUNCTION**

Defendants, the City of New York and the New York City Police Department

License Division, submit this memorandum of law in support in opposition to plaintiffs' cross-

motion for summary judgment and motion for a preliminary injunction and as reply in further

support of defendants' cross-motion for summary judgment.[1]   Defendants further submit this

memorandum in response to the arguments raised by plaintiffs' in Plaintiffs' Memorandum of

Law in Support of Their Cross-Motion for Summary Judgment and Motion for Preliminary

Injunction, dated July 15, 2014 ("Pl. Mem.").

## PRELIMINARY STATEMENT

Although plaintiffs attempt to paint their case as one of constitutional violations

connected with the alleged core protected right to possess a firearm in their home, plaintiffs'

motion papers make plain that plaintiffs believe that their Premises Residence licenses should be

free from restrictions allowing plaintiffs to carry and transport their firearms outside of their

homes – conduct expressly prohibited by the Penal Law and City rules authorizing such a

license.  Plaintiffs claim that all they seek to do is engage in target shooting and competitions

outside of New York City, yet plaintiffs fail to acknowledge that their licenses are limited to only

allow the possession of their firearms in their New York City homes.  Contrary to plaintiffs'

arguments, the Second Amendment of the United States Constitution does not grant a restricted

license-holder the right to engage in target shooting or competitive sport, nor does it require the

---

[1] Defendants continue to maintain that plaintiffs have not made any showing that they are
entitled to a preliminary injunction while final adjudication on the merits of the parties' cross-
motions are pending.

City to permit such activity outside of New York City.  And, while plaintiffs make much of their alleged need to protect themselves in their second homes located outside of the City of New York, nothing in the Second Amendment requires the City of New York to authorize a licensee to use his or her firearm for protection of a second home outside of the City's boundaries.  Nor does anything in the challenged rule prohibit any of the plaintiffs from obtaining a license to lawfully possess a firearm in their second homes.

Moreover, plaintiffs' claims under the First Amendment (freedom of association and freedom of speech), the constitutional right to travel, and the Dormant Commerce Clause of the United States Constitution, similarly fail.  Nothing in the challenged rule regarding Premises Residence licenses infringes upon plaintiffs' freedom of association or speech.  While plaintiffs attempt to create a dispute of material fact seemingly for purposes of defeating defendants' summary judgment motion with respect to the number of authorized ranges in New York City, plaintiffs' attempt is of no moment as all that is required is that there be at least one licensed small arms range open to the public to defeat plaintiffs' claim that they have no ability to practice proficiency of their firearms with their Premises Residence licenses – and both plaintiffs and defendants agree that there is at least one such establishment.  For all of these reasons, along with those set forth in defendants' opening papers, defendants' cross-motion for summary judgment should be granted and plaintiffs' cross-motion for a preliminary injunction should be denied.

## ARGUMENT

### POINT I

### PLAINTIFFS' ARGUMENT THAT 38 RCNY § 5-23(a) VIOLATES THE SECOND AMENDMENT OF THE U.S. CONSTITUTION IS MISGUIDED.

**A.    The Second Amendment Does Not Protect the Acts of Target Practice or Competitive Shooting.**

As articulated in defendants' opening brief,[2] neither the acts of target practice, nor competitive shooting fall within the contours of acts protected by the Second Amendment. See Defs' Mem. at 5-7. Indeed, plaintiffs do not appear to argue as much, instead focusing primarily on the concern about those who have second homes outside of New York City not being able to protect themselves in their homes. In fact, plaintiffs appear to acknowledge that the rights "to learn to use and handle their firearms are not among the 'core' rights protected by the Second Amendment," relying on the controlling precedent in this jurisdiction, Kachalsky v. County of Winchester, 701 F.3d 81, 84 (2d Cir. 2012) and United States v. DeCastro, 682 F.3d 160, 165-66 (2d Cir. 2012). Pl. Mem. at 11-12. Instead plaintiffs argue that such activities *should* be protected under the Second Amendment, reasoning that one needs to engage in target practice and competitive shooting "to effectively exercise that right." Pl. Mem. at 12. Although defendants strenuously disagree with the proposition that target practice is a protected constitutional act because it assists plaintiffs in effectively exercising their core right to protect themselves in their home, the fact remains that 38 RCNY § 5-23(a) specifically authorizes those with the restricted Premises Residence license to transport their firearms for the purposes of

---

[2] Reference is to Defendants' Memorandum of Law in Support of Their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated June 5, 2014.

engaging in target practice, so long as they do so within a New York City-authorized range. Plaintiffs cannot point to anything in the Second Amendment authorizing one to be able to practice use of his or her firearm at any place of his or her choosing.

Plaintiffs' continued reliance on Ezell v. City of Chicago, 651 F.3d 684 (7th Cir. 2011) in support of this contention is misplaced.  As explained in defendants' initial motion papers, the ordinance challenged in Ezell specifically required those with licenses to possess firearms to engage in a one-hour mandatory training at a range.  Moreover, that very same ordinance specifically prohibited the operation of firing ranges within the borders of the City of Chicago.  Ezell, 651 F.3d at 689-90.  Thus, the challenged ordinance required specific training that simply could not be effectuated within that jurisdiction, based on the very terms of that ordinance.  While the Court of Appeals for the Seventh Circuit in Ezell paid lip service to the fact that one needed to acquire and maintain proficiency of their firearm to engage in their Second Amendment protected right to possess a firearm for self-defense in the home, that Court did not conclude that engaging in such conduct was an actual right falling within the protection of the Second Amendment.  And, more importantly, Ezell is entirely distinguishable from the case at hand because – unlike the facts in Ezell – there is absolutely no ban or prohibition on firearms ranges in New York City.  Indeed, defendants have proffered evidence demonstrating that there are currently eight such ranges operating in New York City and nothing prevents more such establishments from operating in the City.  See Lunetta Dec., ¶¶ 39-40, Exhibit "G." Despite plaintiffs' characterizations of whether such ranges are open to the public at large on an ad hoc basis or only to members of the public who choose to become members (much like a fitness club), the fact remains that there are several such ranges in New York City – with at least one in each of the City's five boroughs.  This is a far cry from the facts presented in the Ezell

cases, where there were no such ranges because such ranges were specifically prohibited by the ordinance challenged therein.[3]

Plaintiffs fail to offer any support for their contention that participation in competitive shooting events is conduct protected by the Second Amendment. While plaintiffs attempt to argue that participation in competitive shooting events is somehow related to practicing and perfecting "safe gun handling skills" (Pl. Mem. at 13) for purposes of learning how to defend oneself in the home, plaintiffs offer no support for this bald conclusion. The fact that few ranges in New York City offer competitive shooting events is of no moment. In any event, there is at least one City-approved small arms range that regularly holds competitive shooting events. See Lunetta Dec., ¶ 42, Exhibit "I" (pointing to a range where plaintiff Colantone was president, and thus keenly aware of the competitive shooting events open for participation) Thus, despite plaintiffs' rhetoric, plaintiffs offer nothing to show that anything in 38 RCNY § 5-23(a) eviscerates their self-proclaimed right to participate in competitive shooting events in New York City.

**B.     Nothing in the Challenged Rule Burdens the So-Called Core Right for Plaintiffs to Protect Themselves in Their Second Homes**

Plaintiffs make much of the fact that 38 RCNY § 5-23(a) does not authorize New York City Premises Residence licensees to transport their firearms to their second homes. However, nothing in the challenged rule "makes it impossible for New York City residents with

---

[3] While plaintiffs claim that there is a "limited availability of such ranges and events in New York City" (Pl. Mem. at 13), which defendants strenuously dispute, plaintiffs cannot point to anything in 38 RCNY § 5-23(a) that prohibits, or limits, such ranges and events from occurring in New York City. Thus, any issues that plaintiffs may have with their ability to exercise their self-proclaimed rights to practice and compete with their firearms has nothing to do with any action undertaken by the City of New York, but, rather, is a function of the marketplace in the City for such activities and businesses – which may change at any time.

a second home beyond the borders of New York City, like Romolo Colantone, to use handguns 'for the core lawful purpose of self-defense.'" Pl. Mem. at 8 (quoting Heller). There is simply nothing in the challenged rule (or, indeed anything in the law) that prevents plaintiffs such as plaintiff Colantone from obtaining a license to possess a firearm in his upstate county – an issue that was of concern to this Court when initially reviewing plaintiffs' motion for a preliminary injunction. See Osterweil v. Bartlett, 21 N.Y.3d 580 (2013); see also Opinion of Judge Sweet, dated September 18, 2013 ("Op.") (Dkt No. 22; Exhibit "C" to accompanying Declaration of Michelle Goldberg-Cahn, dated June 5, 2014). Plaintiffs argue that defendants' reliance on Osterweil does not avoid the Second Amendment concern because, in their view, it is a burden on the Second Amendment to have to have separate firearms for each residence. Pl. Mem. at 9-10. However, nothing in the Second Amendment requires municipalities or states to allow citizens to transport their firearms if the license is restricted. This Court has already stated that if plaintiffs are permitted to obtain a firearms license both in New York City as well as other locations in the State of New York where they may have other residences, then "the cogency of plaintiffs' second home argument suffers considerably as their complaint could be met with a rejoinder to simply acquire a handgun license from the county in which the second home is located and keep a gun in that home for use when it is being used as a residence." Op. at 3-4. That is precisely the showing defendants are making here and plaintiffs do not provide sufficient evidence to rebuke it. The Premises Residence license is specific to the New York City residence and the firearms listed on the license must be connected to the license – there is nothing unconstitutional about that. To the extent that plaintiffs make much of their purported safety concern when an upstate licensee leaves their firearm in their upstate rural home, plaintiffs can either store their unloaded firearms in a locked safe as they are undoubtedly required to do in

the county of licensure, or they may voucher their firearms with the local police if they are going to be away from their upstate locations for prolonged periods of time.  This is something that the License Division does regularly for its licensees.[4]

   Plaintiffs incorrectly state that the City's rules do not allow for the transport of a Premises Residence firearm for maintenance or repair, among other things – arguing that this makes plain that the limitations on Premises Residence licenses interferes with plaintiffs' rights to possess firearms in the home.  Pl. Mem. at 2, n.2.  However, plaintiffs are wrong – and clearly grasping at straws to cast the reasonable limitations of a Premises Residence license in a negative light, as prohibiting Premises Residence licensees from transporting their firearms for purpose of repair would be absurd.  Rules such as 38 RCNY § 5-22(16) specifically set forth the process for those with restricted licenses, such as Premises Residence licenses, to obtain approval from the License Division for the transport of their firearms to a gunsmith, for purposes of maintenance and repairs.  See 38 RCNY § 5-22(a)(16).  Similarly, 38 RCNY § 5-22(a)(9) sets forth the process for a licensee to purchase or replace a handgun.  A similar process exists for a licensee to sell his or her firearm.  All of these procedures are not only provided in the rules that all NYPD licensees, such as plaintiffs, are required to be familiar with (see 38 RCNY § 5-33), but are also clearly set forth on the NYPD License Division's website.  See http://www.nyc.gov/html/nypd/html/firearms_licensing/gun_licensing_faq.shtml (last accessed August 5, 2014).

---

[4] In the alternative, a plaintiff such as Colantone, may apply to the NYPD License Division to obtain a different type of firearm license, which may authorize plaintiff Colantone to transport his firearm throughout the state if he is so qualified.  See, e.g., 38 RCNY § 5-01.

Finally, plaintiffs' argument that this could increase the cost of exercising "their Second Amendment right as it necessitates the purchase, registration, and maintenance of multiple firearms" ("Pl. Mem. at 10), is of no moment.  It is well-settled in this Circuit that "the fact that the licensing regime makes the exercise of one's Second Amendment rights more expensive does not necessarily mean that it 'substantially burdens' that right.  Kwong v. Bloomberg, 723 F.3d 160, 167-68 (2d Cir. 2013), cert. denied, sub nom., Kwong v. De Blasio, 1345 S. Ct. 2496 (June 2, 2014) (quoting Nordyke v. King, 644 F.3d 776, 787-88 (9th Cir. 2011)).  It is beyond cavil that increased costs for reasonable regulations that affect the exercise of one's fundamental rights, do not present a constitutional problem.  "A law does not substantially burden a constitutional right simply because it makes the right more expensive or more difficult to exercise."  Nordyke, 644 F.3d at 787-88; see also Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 874 (1992) ("The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to [exercise the right] cannot be enough to invalidate it.").  In any event, plaintiffs have put forth no evidence supporting that the possibility of having to register their firearms in another county has any additional cost component beyond a de minimus and nominal amount.

**C.    Plaintiffs Fail to Establish That the Challenged Rule Implicates Strict Scrutiny Analysis; Indeed if Any Scrutiny Analysis is Required, Intermediate Scrutiny is Clearly the Standard to Be Applied.**

Plaintiffs brazenly articulate their reasoning for how the challenged rule fails under a strict scrutiny analysis, without ever setting forth a basis for this Court to even apply strict scrutiny.  Pl. Mem. at 14-20.  Plaintiffs simply go through a strict scrutiny analysis based on their simple assertion that 38 RCNY § 5-23(a) "impinges upon a fundamental right," with nothing more.  Pl. Mem. at 14.  However, plaintiffs ignore the plethora of caselaw that has emerged since the United States Supreme Court's decisions in Heller and McDonald where the

courts have made it clear that intermediate scrutiny applies to regulations such as the one challenged herein, which may arguably restrict or limit the possession of handguns in the home. (Although in this case, there is no restriction on the possession of handguns in the home, rather, plaintiffs argue that the geographic limitations for plaintiffs to engage in target practice somehow restricts their core Second Amendment rights). The Second Circuit recently concluded that nothing in Heller "mandate[s] that any marginal, incremental or even appreciable restraint on the right to keep and bear arms be subject to heightened scrutiny." United States v. DeCastro, 682 F.3d 160, 166 (2d Cir. 2012). "Rather, heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in Heller) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)." Id. (emphasis added). As set forth in defendants' opening brief, the Second Circuit has clearly applied intermediate scrutiny to Second Amendment challenges to various licensing and regulations. See, e.g., Kwong, 723 F.3d at 167-68; Kachalsky v. County of Westchester, 701 F.3d 81, 96 (2d Cir. 2012); DeCastro, 682 F.3d at 165-66. Thus, for all of the reasons set forth in defendants' opening papers, to the extent that any constitutional scrutiny analysis is applicable to the rule challenged herein, this Court should apply intermediate scrutiny – and not plaintiffs' desired strict scrutiny.

The Courts of this Circuit have already found that "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention." Kachalsky, 701 F.3d at 97. Plaintiffs even admit as much. Pl. Mem. at 20. Plaintiffs, however, downplay the evidence provided by the NYPD that great danger to the public lies in allowing all Premises Residence licensees to travel all across New York State with their firearms, as the NYPD has little capability to effectively police and enforce the restrictions on the Premises Residence

license in doing so.  See, e.g., Lunetta Dec., ¶¶ 2-7.  Although plaintiffs argue that defendants have put forth no evidence that 38 RCNY § 5-23(a) prevents Premises Residence licensees from engaging in unlawful conduct (Pl. Mem. at 20), this is incorrect.  Defendants presented significant evidence of unlawful conduct, increased crime, and an abuse of the now-defunct target license highlighting examples of persons with restricted licensees engaging in unlawful and dangerous conduct around the State of New York by transporting their firearms to places that they were not authorized to do so.  See Lunetta Dec., ¶¶ 9, 24-31; Goldberg-Cahn Dec. Exs. "A" and "B;" see also De Illy v. Kelly, 6 A.D.3d 217 (1st Dep't 2004); Murad v. City of New York, 12 A.D.3d 193 (1st Dep't 2004).  Indeed, a New York State Supreme Court judge reviewing the same rule challenged herein recently concluded that the rule was "promulgated to promote the compelling interest of public safety by decreasing the number of firearms carried in public."  In the Matter of Sgueglia v. Kelly, 2014 N.Y. Slip Op. 24215, 2014 N.Y. Misc. LEXIS 3393, N.Y.S. Sup. Ct., N.Y. County, Index No. 101407/2013 (July 11, 2014)(J. Stallman), at 7.[5]

Although plaintiffs cite to the record supporting the 2001 rulemaking eliminating the target license, plaintiffs disingenuously misstate that the Statement of Basis and Purpose of that rule amendment reflects that the City promulgated the rule solely for the purpose of "administrative convenience and internal consistency."  Pl. Mem. at 16.  However, the Statement of Basis and Purpose supporting the 2001 rule change provides that the rulemaking was proposed based on an extensive review and analysis of the NYPD License Division's rules since early 1997 and that the proposed rules sought "to improve the quality and timeliness of the application

---

[5] Defendants recognize that the rule was reviewed in a proceeding pursuant to CPLR Article 78 employing the different standard of review from that at issue herein.  However, because the state court reviewed the exact rule and restriction challenged herein, defendants present this decision and its findings to the Court for interest.

and renewal process, the investigation of incidents, the determination of fitness, and the safe transport of weapons through New York City has resulted in significant policy changes ...." Goldberg-Cahn Dec., Ex. B (emphases added).  The Statement of Basis and Purpose further made clear that such an analysis included "the amendment to eliminate as a separate category the 'Target' handgun license . . . ."  Id.  Thus, plaintiffs' argument that the challenged rule lacks any significant state interest, falsely claiming that the City promulgated the rule purely for administrative convenience, is plainly wrong.  Indeed, the Statement of Basis and Purpose supports the City's public safety rationale for the rule eliminating the target license.

Plaintiffs further contend that, despite the history of abuse of restricted licenses and the danger such abuse presents to the public, the restrictions on transporting firearms set forth in 38 RCNY § 5-23(a) are in no way substantially related to the City's public safety interest.  Pl. Mem. at 20.  However, plaintiffs fail to persuasively demonstrate that this is the case and rely on inaccurate information in support of their arguments.  For example, plaintiffs argue that 38 RCNY § 5-23(a) undermines public safety by "either foreclosing the use by a licensee of his or her handgun for self-protection in a resident's second home outside of the city or requiring that a licensee leave firearms in a vacant residence" for long periods of time.  Pl. Mem. at 20; see also id. at 15 (arguing that the law makes it "impossible" to use their firearms in their second homes and "difficult" to practice).  However, neither statement is true – as set forth above, nothing in the rule prevents a Premises Residence licensee from obtaining a license in the jurisdiction of the location of the second home; nothing requires the licensee to leave the firearm unattended for months at a time in that home (although it does allow it); and nothing in the rule makes it "difficult (or impossible) to practice" by only authorizing transport of a firearm to one of several existing New York City approved ranges.

Contrary to plaintiffs' arguments, the City did put forth strong evidence supporting the NYPD's interests in effectively monitoring and enforcing the limitations on the restricted Premises Residence license.  Such evidence was based on the experience of the NYPD License Division over the course of many years – not "fears" or "assumptions," as plaintiffs' argue (Pl. Mem. at 17).  See, e.g., Lunetta Dec., ¶¶ 4-7, 23-26 (NYPD officers are more equipped than law enforcement outside New York City to ascertain where a licensee is going and are required to report back violations of the license; law enforcement outside New York City may not be able to properly assess the credibility of assertions about licensees' whereabouts and are not required to report incidents back to the License Division); ¶¶ 2-10, 24-25 (concerns about Premises Residence licensees travelling outside of the City with firearms in their vehicles – with incidents of loaded firearms observed); ¶¶ 6-7; 32-38 (NYPD's ability to monitor NYPD approved small arms ranges).  And defendants do not have to show that those Premises Residence licensees travelling with the applicable hunting authorization to a location outside of the City are more likely to "skirt the regulations for transportation of firearms or to be involved in a stress-inducing situation" as a result of the very limited exception to the challenged rule.  However, defendants simply put forward evidence of the strong public safety concern that exists if there are a significant number more Premises Residence licensees on the roads outside of New York City transporting their firearms than exist under the current rule, and the extreme difficulties in monitoring the restrictions on the large number of Premises Residence licensees in New York City.

For all of the reasons set forth above and in defendants' opening brief, the restriction on the transportation of firearms for Premises Residence licensees set forth in 38

RCNY § 5-23(a) does not burden plaintiffs' Second Amendment rights, and to the extent that this Court concludes otherwise, it easily survives intermediate scrutiny.

**POINT II**

**38 RCNY § 5-23(a) IS CONSISTENT WITH PLAINTIFFS' RIGHT TO TRAVEL AND THE PLAIN LANGUAGE OF THE FIREARM OWNERS PROTECTION ACT.**

Plaintiffs' entire argument that 38 RCNY § 5-23(a) violates their constitutionally-protected right to travel and the Firearms Owners Protection Act, codified at 18 U.S.C. § 926A ("FOPA"), misses the mark. Plaintiffs' argument is premised upon the incorrect assertion that plaintiffs are authorized to carry their firearms lawfully in New York City, despite the restricted nature of a New York City Premises Residence license.

**A.     Plaintiffs' Reliance on FOPA is Misplaced.**

While plaintiffs argue that they are lawfully entitled to possess their firearms in New York City, their entire right to travel and FOPA argument misleadingly overlooks the fact that they are not entitled to <u>carry</u> their firearms in New York City. <u>See</u> Pl. Mem. at 24-25.

FOPA provides as follows:

> Notwithstanding any other provision of law or any rule of regulation of a State or political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearms shall be entitled to transport a firearm for any lawful purpose from any place where he <u>may lawfully possess and carry</u> such firearm to any other place where <u>he may lawfully possess and carry</u> such a firearm .... (Emphases added.).

Although plaintiffs cite this very text in their papers (Pl. Mem. at 24), plaintiffs utterly fail to acknowledge the words "and carry" which appear after each instance of "possess," instead choosing only to read the word "possess" in the statute. This is misleading and contrary to the plain text of the statute upon which plaintiffs rely.

- 13 -

A plain reading of the text of FOPA makes it clear that only persons who may "lawfully possess and carry" their firearm in one place shall be authorized to transport their firearm to "any other place where he may lawfully possess and carry such firearm." 18 U.S.C . § 926A. Nothing in the challenged rule operates to the contrary.  While plaintiffs conveniently disregard the words "and carry" that appear twice in FOPA, plaintiffs further completely ignore the very fact that their Premises Residence licenses do not authorize them to carry their firearms in any circumstance.  As explained in defendants' opening brief, a Premises Residence license is a <u>restricted</u> firearms license that is issued specifically for the protection of a specific New York City residence.  <u>See</u> 38 RCNY § 5-23(a).  Moreover, handguns listed as connected to Premises Residence licenses "may not be removed from the address specified on the license except as otherwise provided in this chapter."  38 RCNY § 5-23(a)(1).  Thus, plaintiffs have no rights at all to lawfully carry their New York City firearms and thus the protections afforded by FOPA have absolutely no bearing on plaintiffs' status as lawful New York City Premises Residence licensees.

Plaintiffs' attempt to argue that the New York Court of Appeals decision in <u>Osterweil</u> somehow supports their FOPA argument is similarly unavailing.  Pl. Mem. at 24. While plaintiffs are correct that <u>Osterweil</u> allows a New York City resident to obtain a firearm license in a jurisdiction outside of New York City, plaintiffs again are incorrect that their Premises Residence licenses allow them to transport their firearms between licensed places – because, again, plaintiffs are not authorized to carry their firearms in New York City.

Plaintiffs' attack on the authority relied upon by defendants lacks merit. Pl. Mem. at 24-25.  For example, the U.S. Court of Appeals for the Second Circuit in <u>Toracco v. Port Auth. of N.Y. & N.J.</u>, 615 F.3d 129 (2d Cir. 2010), makes it clear that in applying FOPA, the

first prong of the analysis is to decide whether the person's "possession and carriage of the firearms in [the state of origin of travel] needed to be lawful." 615 F.3d at 138. Thus, even the Second Circuit in Toracco acknowledged the significance of the portion of FOPA reflecting that one must be authorized to possess and carry a firearm in both the place of origin and destination. Plaintiffs continue to argue that they are not attempting to travel anyplace where they are not permitted to possess their firearms (Pl. Mem. at 25), but leave out the carry aspect. Further, while plaintiffs attempt to dismiss the holding of the New York State Supreme Court, Appellate Division, in Beach v. Kelly, 52 A.D.3d 436, 437 (1st Dep't 2008), lv. app. denied, 11 N.Y.3d 711 (Nov. 2008), simply because it is an opinion from the state court, the holding therein is not only persuasive authority for this Court, but highly instructive. In Beach the court denied the petitioner's FOPA claim employing the same reasoning that defendants argue herein, finding that "[w]here the licensee is not permitted by the terms of the license to lawfully carry the firearm at the time he embarks on a trip to another state, FOPA is inapplicable." 52 A.D.3d at 437. Here, it is precisely because plaintiffs are not permitted by the very terms of their Premises Residence licenses to lawfully carry their firearms within New York City that FOPA cannot serve as a shield to protect them from travelling with their firearms outside of New York.

**B.    Plaintiffs' Right to Travel is in No Way Infringed by the Challenged Rules**

Plaintiffs' offer nothing in support of their barebones argument that the challenged rule impeded upon their constitutional right to travel. See Pl. Mem. at 21-23.[6] While the rule restricts plaintiffs from transporting the firearms that are specifically limited to use in their New York City residences, there is nothing in the rule that in any way "actually deters

---

[6] Indeed, it appears that plaintiffs are aware of the lack of merit in their right to travel argument. See Pl. Mem. at 22 (last line).

Plaintiffs from traveling and spending time outside of New York City." Pl. Mem. at 22.  To argue as much is absurd.  Because plaintiffs (Premises Residence licensees) are not permitted to transport or utilize their firearms outside of their homes in the City, under no scenario does the rule put plaintiffs into their self-proclaimed Hobson situation of having to choose between which of their fundamental rights they would like to exercise – the right to travel or right to keep and bear arms.  And, simply because the plaintiffs have stated that they would like to travel to various shooting competitions, there is no constitutional right implicated because, plaintiffs simply have no constitutionally-protected right to engage in target practice wherever and whenever they wish, or to participate in competitive shooting events at all.  Plaintiffs are free to travel and spend time outside of New York City – they just cannot take their firearms with them if they are connected to their very limited and restricted New York City Premises Residence license.  Further, nothing in the challenge rule deters plaintiffs from obtaining a proper license to possess a firearm in the jurisdiction of their desired place to "spend time outside of New York City."

Plaintiffs' right to travel argument highlights that plaintiffs are not simply challenging the portion of 38 RCNY § 5-23(a) which only authorizes a Premises Residence licensee to transport their firearms to a  New York City-approved Small Arms Range for target practice, but are challenging the limitations of the Premises Residence license as a whole – which is not what is plead in this action.  In arguing that the challenge rule "significantly deters travel by requiring licensees to check their constitutional rights at the doors of their houses" (see Pl. Mem. at 23), plaintiffs conveniently ignore the fact that their licenses are only issued for

possession of their firearm in the specific location of their New York City home.  See 38 RCNY § 5-01(a).[7]

       "When a statute or regulation has 'merely ... an effect on travel,' it does not raise an issue of constitutional dimension.' 'A statute implicates the constitutional right to travel when it actually deters such travel, or when the impedance of travel is its primary objective, or when it uses any classification which serves to <u>penalize</u> the exercise of that right.'"  <u>Five Borough Bicycle Club v. City of New York</u>, 483 F. Supp.2d 351, 362-63 (S.D.N.Y. 2007)(quoting <u>Soto-Lopez v. New York City Civil Serv. Comm'n</u>, 755 F.2d 266, 278 (2d Cir. 1985)(emphasis in original).  Plaintiffs do not cite any case law in support of their right to travel argument, other than cases that set forth that the right exists.  Indeed, plaintiffs' reliance on <u>Attorney General of New York v. Soto-Lopez</u>, 476 U.S. 898, 903 (1986), undercuts plaintiffs' position and supports the arguments of defendants.  Pl. Mem. at 21.  Because nothing in 38 RCNY 5-23(a) "'actually deters such travel,'" or demonstrates that "'impeding travel is its primary objective,'" plaintiffs' argument fails as a matter of law.  As defendants argued in their opening brief, there is simply nothing in the rules pertaining to Premises Residence licenses that impedes, deters, or punishes

---

[7] A Premises Residence license is defined in the rules as follows:

> (a) *Premises License—Residence or Business*. This is <u>a restricted handgun license</u>, issued for a <u>specific</u> business or <u>residence location</u>. The handgun shall be safeguarded at the specific address indicated on the license. This license permits the transporting of an unloaded handgun directly to and from an authorized small arms range/shooting club, secured unloaded in a locked container. Ammunition shall be carried separately.

38 RCNY § 5-01(a)(emphases added).

travel.  Simply because the rule does not allow for unrestricted travel with a firearm outside of New York City, the rule itself in no way prevents Premises Residence licensees from travelling outside of New York City, so long as they do not travel with their firearm.

Moreover, plaintiffs fail to respond to defendants' contention that the restrictions set forth in 38 RCNY § 5-23(a) amount to nothing more than reasonable time, place, and manner restrictions on the possession and use of a firearm.  Defs. Mem. at 17-18 (citing Turley, 1996 U.S. Dist. LEXIS 2582, (S.D.N.Y. 1996), aff'd in part, rev'd in part, after trial on other issues, 167 F.3d 757 (2d Cir. 1999); Lutz v. City of York, 899 F.2d 255, 270 (3d Cir. 1990)).  The requirement that Premises Residence licensees only be able to take their firearms to small arms range authorized by the City of New York is merely a time, place, and manner regulation on an already restricted license.  Such is entirely constitutional.

Plaintiffs' argument that 38 RCNY § 5-23(a)(3) conflicts with the Firearms Owners' Protection Act ("FOPA"), 18 U.S.C. § 926A similarly lacks merit.  Pl. Mem. at 21. FOPA protects individuals from prosecution for illegally transporting firearms when the origin or destination of the transfer is a place where the individual "may lawfully possess and carry such firearm."  18 U.S.C. § 926A.  In Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129 (2d Cir. 2010), the Second Circuit held that FOPA does not create a presumption that gun owners may travel interstate with their guns to places that do not permit unlicensed firearm possession, as long as the person complied with requirements that the firearm be transported unloaded in a case. Similarly, in a state court challenge invoking FOPA, the Court held that "[w]here the licensee is not permitted by the terms of the license to lawfully carry the firearm at the time he embarks on a trip to another state, FOPA is inapplicable."  Beach v. Kelly, 52 A.D.3d 436, 437 (1st Dep't 2008).  Here, Premises Residence licensees are not authorized to carry firearms under the terms

of their restricted license, other than in the limited exception of to a New York City authorized range.  Thus, plaintiffs do not meet the lawful carry requirement set forth in 18 U.S.C. § 926A.

### POINT III

### THE RULE PERTAINING TO PREMISES RESIDENCE LICENSES DOES NOT IMPEDE UPON PLAINTIFFS' RIGHT TO FREELY ASSOCIATE.

As set forth in defendants' opening papers, there is nothing in the challenged rule that violates plaintiffs' rights to freely associate or freedom of speech protected under the First Amendment.  See Defs' Mem. at Point III.  Again, as set forth in defendants' prior papers, plaintiffs assert – with no support – that engaging in target practice and competitive shooting is protected First Amendment activity.  Defendants disagree.

First, nothing in the challenged rule interferes with plaintiffs' right to freely associate.  Nothing in the rule sets proscribes that plaintiffs may not associate with their similarly interested brethren in attending competitive shooting events outside of New York City.  The rule simply does not allow those who do not possess the appropriate firearms license (i.e., a carry license) from actually engaging in the competition using a firearm associated with a New York City Premises Residence License.  This is hardly a "severe" restriction on plaintiffs' rights to associate.  This is akin to saying that while individuals may spend time engaging in recreational activities with medical professionals, the fact that one without the required medical license may not engage in the practice of medicine with their medial professional friends somehow impedes on the right to associate.  This is untenable.  And despite plaintiffs' hyperbole, plaintiffs' admit that the rule would be more problematic "if it expressly prohibited participation in recreational and competitive shooting events altogether."  Pl. Mem. at 26.  But it does not.  That plaintiffs are concerned that there are not many options within New York City that offer competitive shooting

competitions has nothing to do with the rule, but has everything to do with the market. Nor is the alleged lack of availability of more establishments for competitive shooting a constitutional problem. In any event, there are several New York City establishments that offer target practice and competitive shooting – and plaintiffs concede to at least one – thus, there is no restriction on plaintiffs' right to freely associate and practice their marksmanship.

Plaintiffs proffer no support for their "forced association" argument. Pl. Mem. at 27. Defendants have no interest in requiring plaintiffs to join private clubs against their will. Nor do defendants have a rule requiring such. While defendants disagree that there is only one "public range" available to New York City residents (see Defs' 56.1, ¶¶ 27-38), the fact plaintiffs agree that at least one such range exists at all undercuts plaintiffs' argument that there is no where else to go. However, even if the only way to engage in target shooting practice or competitive shooting requires some type of "membership," because that is how these businesses determined best fit for their business model, 38 RCNY § 5-23(a) does not force anyone to join any such club. Defendants note, however, that if plaintiffs are the firearms enthusiasts they claim to be, they are more likely than not to join a firearms club so as to have the most economical way of engaging in target practice and a means of associating with like-minded persons. Indeed, at least plaintiff Colantone was the former president of one such club. See Lunetta Dec., ¶ 42.

Finally, plaintiffs baldly assert that the rule somehow violates their newly-minted First Amendment protection to the unlimited right to teach and learn safe handgun practices in any method of their choosing. Pl. Mem. at 27-28. However, plaintiffs offer no cases to support their assertion that target practice or competitive shooting is somehow protected by the First Amendment. Nothing in the rule, or any of the rules governing the use and possession of

firearms in New York City, interferes with the right to "teach, learn, and convey information" about firearms and how to engage in safe practices in the use thereof. Pl. Mem. at 27. Indeed, the City welcomes such an exchange of information and knowledge. But the cases plaintiffs cite, discussing a protected "'right to lecture,'" and to " 'remain free to inquire, to study and to evaluate,'" do not convey an unlimited right to freely use or practice with the items of such lecture or study – particularly in the case of such a dangerous item as a firearm. Pl. Mem. at 27 (quoting Sweezy v. New Hampshire, 354 U.S. 234, 249-50 (1957)).

## POINT IV

### THERE IS NOTHING IN THE CHALLENGED RULE THAT VIOLATES THE DORMANT COMMERCE CLAUSE.

Plaintiffs' claim that 38 RCNY § 5-23(a) discriminates against interstate commerce, or, alternatively, that it amounts to an undue burden upon interstate commerce, continues to fail. See Pl. Mem, at 28-32. The Commerce Clause of the United States Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States…" U.S. Const. Art. I, § 8, cl. 3. The Supreme Court has recognized that the Clause has "dormant" or "negative" implications. See e.g. Quill Corp. v. North Dakota, 504 U.S. 298, 309 (1992). Under the dormant Commerce Clause, state or municipal legislation may be unconstitutional if it burdens interstate commerce. However, courts take a more permissive approach when a state law is intended to achieve a legitimate local interest and its effect on interstate commerce is incidental.[8]

---

[8] Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978) ("The crucial inquiry… must be directed to determining whether [a challenged statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental").

The dormant Commerce Clause is chiefly concerned with "economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." See Department of Revenue of Ky. v. Davis, 553 U.S. 328, 337-338 (2008).   The dormant Commerce Clause proscribes state regulatory action that discriminates against private interstate commerce.   A facially discriminatory law or rule can survive a challenge based on the dormant Commerce Clause if it advances a legitimate local purpose and is the least restrictive means of achieving that purpose. See Department of Revenue of Ky., 553 U.S. at 338.

As defendants previously explained, when a non-discriminatory state action incidentally burdens interstate commerce, courts apply the balancing test articulated in Pike v. Bruce Church Inc., 397 U.S. 137, 142 (1970).   Under this test, a state action may be invalid if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Id., at 142.   The Pike balancing test is a fact-intensive inquiry, requiring courts to examine the state law's burden on interstate commerce, the nature of the local interests involved, and whether the state can promote the local interests at stake with a smaller impact on interstate commerce.   State laws frequently survive this test. See e.g., Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 472-474, 101 S. Ct. 715 (1981); Northwest Central Pipeline Corp. v. State Corporation Comm'n of Kan., 489 U.S. 493, 525-526 (1989); United Haulers Assn., Inc. v. Oneida-Herkimer Solid Waste Management Authority, 550 U.S. 330, 346-347 (2007) (plurality opinion).

The third way state action can violate the dormant Commerce Clause is by regulating commerce that takes place entirely outside the regulating State's borders. See Healy v. Beer Inst., Inc., 491 U.S. 324, 336 (1989).   The critical inquiry in determining whether a

statute fails because of its extraterritorial effects is "whether the practical effect of the regulation is to control conduct beyond the boundaries of the state." Id. at 337.  The Court has applied the extraterritoriality doctrine "only in the limited context of price-affirmation statutes." Am. Bev. Ass'n v. Snyder, 700 F.3d 796, 807 (6th Cir. 2012).  While courts have applied the extraterritoriality doctrine in a number of instances, "[i]n the modern era, the Supreme Court has rarely held that statutes violate the extraterritoriality doctrine." Rocky Mountain Farmers Union v. Corey, 730 F.3d 1070, 1101 (9th Cir. 2013). As set forth in defendants' opening brief, there is some support for the notion that the dormant Commerce Clause is no longer alive in jurisprudence.  However, plaintiffs are simply incorrect in arguing that the rule regulates commerce taking place entirely outside of the state's borders – in fact, it prohibits Premises Residence licensees from transporting their firearm outside of New York City, including to other ranges within the New York state.

Plaintiffs presuppose that the rule's effect on commerce outweighs its local benefits.  A party seeking to invoke the Pike balancing test has the threshold burden of demonstrating that a challenged rule has a disparate impact on interstate commerce. Town of Southold, 477 F.3d 38, 47 (2d Cir.2007).  Here, the rule is narrowly drawn and reasonably constructed to accomplish the City's stated public safety goals.  Local laws promoting safety and quality of life have a presumption of validity. See Bibb v. Navajo Freight Lines, 359 U.S. 520, 524 (1959).  Courts have also found that "[c]onsiderable deference must be given to the legislature's policy determinations as to the local benefits of the challenged legislation." Eric M. Berman, P.C. v. City of New York, 895 F. Supp. 2d 453, 492 (E.D.N.Y. 2012).

Plaintiffs' contention that the rule amounts to an extraterritorial control of interstate commerce has no merit. Pl. Mem. at 31.  While the rule the Court struck down in

<u>Healy</u> directly invoked neighboring states, 38 RCNY § 5-23(a) does not impact bordering states' laws.  The City does not project its own regulatory regime into other states, and it does not "control" out-of-state activity in any way.  The rule merely sets forth limitations on the use of the license issued by the City of New York to be used outside of the New York City; including to ranges within New York State.  Contrary to plaintiffs' assertions, the rule does not prohibit "attendance at non-City approved fire ranges" (Pl. Mem. at 31), it simply does not allow the use of a firearm associated with only a restricted New York City Premises Residence license at such range.  The rule's effect on interstate commerce – if any – is slight in comparison to its considerable local benefits.  The plaintiffs' requested relief would allow Premises Residence licensees to carry firearms anywhere in New York State and outside of the state.  This would greatly undermine the NYPD's ability to ensure that restricted licensees obey the law and protect public safety.  <u>See</u> Defendants' Mem. in Support of Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for a Preliminary Injunction at Point I; Point I, <u>supra</u>.

Plaintiffs misconstrue the scope of the extraterritoriality doctrine and, in doing so, seek to extend the dormant Commerce Clause into an entirely new area.  Contrary to the plaintiffs' contentions, the extraterritoriality doctrine does not disallow any state rule with cross-border effects.  38 RCNY § 5-23(a) does not amount to an extraterritorial control of commerce.  The rule does not obstruct the flow of firearms in interstate commerce; instead, it regulates the manner in which restricted licensees can transport their firearms.  This is simply not a case where persons are forced to purchase goods prepared within a few miles of the City lines, rather this is a rule that controls the movement of such dangerous instruments in public spaces.  For these reasons, plaintiffs' dormant Commerce Clause claims fail as a matter of law.

## CONCLUSION

For the reasons set forth above, and in Defendants' Memorandum of Law in Support of Their Cross-Motion for Summary Judgment, dated June 5, 2014, the Court should grant defendants' cross-motion for summary judgment in its entirety, and deny plaintiffs' cross-motion for summary judgment and plaintiffs' motion for a preliminary injunction, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            August 15, 2014

                         ZACHARY W. CARTER
                         Corporation Counsel of the
                           City of New York
                         Attorney for Defendants
                         100 Church Street
                         New York, New York 10007
                         Email: migoldbe@law.nyc.gov
                         (212) 356-2199

            By:      _____
                         MICHELLE GOLDBERG-CAHN
                         Assistant Corporation Counsel


SHERYL R. NEUFELD,
MICHELLE GOLDBERG-CAHN,
        Of Counsel;

BENJAMIN HILLENGAS (admitted in NY State Court),
        On the Memorandum.