IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE AND PISTOL )
ASSOCIATION, INC., et al., )
 )
                Plaintiffs, )     Case No.: 1:13-cv-2115-RWS
 )
   v. )
 )
THE CITY OF NEW YORK, et al., )
 )
                Defendants. )
_____)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT and
MOTION FOR PRELIMINARY INJUNCTION**

**GOLDBERG SEGALLA, LLP**
Brian T. Stapleton, Esq. (BS 5640)
Christopher Bopst, Esq.
11 Martine Avenue, Suite 750
White Plains, New York 10606-1934
(914) 798-5400
bstapleton@goldbergsegalla.com
*Counsel For Plaintiffs*

# **TABLE OF CONTENTS**

Table of Authorities……………………..……………………..................... ii

    1. The right to maintain proficiency in the use of a firearm is constitutionally protected..........................................................................1

    2. A regulation must not substantially burden the core right to bear arms ......2

    3. Even under intermediate scrutiny, the regulation still fails .........................4

    4. *Osterweil* does not bar the Plaintiffs' constitutional challenge ...................6

    5. The challenged restriction actually deters travel ........................................7

    6. Defendants misinterpret FOPA....................................................................8

    7. The regulation discriminates in violation of the Dormant Commerce Clause...........................................................................................................9

Conclusion…………………………………………………………………………9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beach v. Kelly*,
    52 A.D.3d 436 (1st Dep't 2008) ..................................................................................8

*Chinese Staff & Workers Assn. v. City of New York*,
    68 N.Y.2d 359 (1986) ...................................................................................................6

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .................................................................................................1,2

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ..................................................................................1,2,3

*Finocchio v. Mahler*,
    37 S.W.3d 300 (Mo. App. 2000) ..................................................................................3

*Frontiero v. Richardson*,
    411 U.S. 677 (1973)......................................................................................................6

*Kachalsky v. County of Winchester*,
    701 F.3d 81 (2d Cir. 2012).............................................................................................5

*McGrane v. Cline*,
    973 P.2d 1092 (Wash. App. 1999)................................................................................3

*Osterweil v. Bartlett*,
    21 N.Y.3d 580 (2013) ................................................................................................6,7

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)......................................................................................................9

*Sgueglia v. Kelly*,
    2014 N.Y. Misc. LEXIS 3393 (N.Y. Sup. Ct. July 11, 2014) ......................................6

*Stanley v. Illinois*,
    405 U.S. 645 (1972)......................................................................................................6

*Toracco v. Port Auth. of N.Y. & N.J.*,
    615 F.3d 129 (2d Cir. 2010)..........................................................................................8

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012).......................................................................................2,3

**Statutes**

38 RCNY § 5-23
.................................................................................................................................... passim

Firearm Owners Protection Act, 18 U.S.C. § 926A........................................................................1,8,9

**Other Authorities**

U.S. Constitution, First Amendment............................................................................................9

U.S. Constitution, Second Amendment .............................................................................1, 2, 3,5,6,9

U.S. Constitution, Commerce Clause ........................................................................................1,9

This lawsuit challenges two separate applications of 38 RCNY § 5-23: its application to an individual who has a second home outside of New York City and its application to an individual who would like to travel to a shooting range or shooting competition outside of New York City.

In Defendants' Memorandum, Defendants demonstrate a manifest disregard for the core right of self defense in the home recognized by the U.S. Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Instead of making a good faith effort to tackle their burden (under either intermediate or strict scrutiny) of showing that there exists a compelling, or even important, governmental interest which would be served by the challenged regulation, and would justify a limitation on a fundamental right, Defendants simply evoke the catch-all of "public safety," make the unsubstantiated claim that Plaintiffs' Second Amendment rights are not violated, and conclude, without analysis, that the challenged regulation is therefore justified. Defendants' arguments with respect to Plaintiffs' Right to Travel, the Firearm Owners' Protection Act, and the Dormant Commerce Clause are similarly unavailing.

**1. The right to maintain proficiency in the use of a firearm is constitutionally protected.**

Contrary to Defendants' protestation that they "strenuously disagree with the proposition that target practice is a protected constitutional act," Defendants' Memorandum (Docket No. 51) at p. 3, it is settled that such activity is fundamental to the exercise of all Second Amendment rights, including self defense in the home. *See also* Defendants Memorandum at pp. 9, 11. It is inarguable that obtaining proficiency in the use of firearms increases the defensive effectiveness of firearms while simultaneously decreasing the risk to public safety that firearms will be used in an unsafe way, or under inappropriate circumstances. This right is hardly the creation of Plaintiffs and their counsel, as Defendants suggest. The Seventh Circuit, in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), directly relying on language from *District of Columbia v. Heller*, 554 U.S. 570 (2008), held:

> The right to possess firearms for protection implies a corresponding right to acquire
> and maintain proficiency in their use; the core right wouldn't mean much without the
> training and practice that make it effective.

*Ezell*, 651 F.3d at 704. Contrary to Defendants' contention, the right to maintain proficiency in the use of firearms is an "important corollary to the meaningful exercise of the core right to possess firearms for self-defense," *id*. at 708, and is entitled to the benefit of strict scrutiny.

Defendants' treatment of *Ezell* is totally without merit or fidelity to the plain holding of that case. Defendants attempt to distinguish *Ezell* by reducing it to a simple matter of the Seventh Circuit being forced to resolve two competing regulations: one that required training for the possession of a firearm, and one that forbade firing ranges where that training could occur. Defendants' Memorandum at pp. 4-5. Defendants characterize the Seventh Circuit's holding that proficiency practice was integral to the Second Amendment as "lip service," arguing "that Court did not conclude that engaging in such activity was an actual right falling within the protection of the Second Amendment." Defendants' Memorandum at p. 4. But the Seventh Circuit actually based its decision on the critical relationship between proficiency and the core right of self defense, holding that precluding target practice "is a serious encroachment on *the right* to maintain proficiency in firearm use." *Ezell*, 651 F.3d at 708 (emphasis added).

**2.  A regulation must not substantially burden the core right to bear arms.**

Curiously, Defendants cite *United States v. DeCastro*, 682 F.3d 160, 166 (2d Cir. 2012), for the proposition that heightened scrutiny is appropriate only for regulations that substantially burden Second Amendment rights, Defendants' Memorandum at p. 9, but then make no effort to demonstrate that the challenged regulation is anything but a clear and substantial burden on those rights. Furthermore, Defendants go on to argue that intermediate scrutiny is the appropriate level of scrutiny in this case under applicable Second Circuit precedent, despite both the manifest substantial

burden and the teachings of *Ezell*. *Id*. In short, Defendants concede that the challenged regulation is a substantial burden on core Second Amendment rights, requiring the application of some form of heightened scrutiny. Defendants' concessions and *Ezell* require strict scrutiny be applied.

An individual with a second residence outside of New York City cannot transport his or her firearm to that home; instead, he or she is required to purchase additional guns and leave them at the various residences. In Mr. Colantone's case, this would involve leaving firearms unattended for months in a remote area of the state with little police presence, where it could become a target for criminals or even curious children.[1] This is a decision that a sensible and responsible gun owner should not be required to make and which could potentially expose individuals to civil lawsuits for liabilities resulting from injuries caused by stolen guns.[2] Requiring somebody to make a decision that may defy his or her sense of responsible gun safety and could potentially subject him or her to civil lawsuits for simply wanting to exercise his or her constitutional rights to bear arms is a substantial burden on that person's constitutional rights.

The regulation tacitly acknowledges the importance of practice by allowing it to occur; limiting the 8 million residents of New York City to one public range in New York, however, substantially burdens the right which is purported to be protected without any valid justification. Defendants' alleged interests in this case are two-fold: limiting the number of firearms being transported in New York City, and, by requiring New York City residents to fire at the single public range licensed in New York City, ensuring that any training is done at a place that NYPD knows is

---

[1] The U.S. Department of Justice reports that during the six-year period from 2005 through 2010, approximately 1.4 million guns, or an annual average of 232,400, were stolen during burglaries and other property crimes. Firearms Stolen during Household Burglaries and Other Property Crimes, 2005–2010 (Nov. 2012), available at http://bjs.gov/content/pub/pdf/fshbopc0510.pdf. Of these firearms thefts, 34 percent were in rural areas. *Id*., p. 5.

[2] Plaintiffs strongly deny that an individual is liable for acts caused by a gun stolen from his or her home, and the case law has been in accord with that position. *See McGrane v. Cline*, 973 P.2d 1092 (Wash. App. 1999); *Finocchio v. Mahler*, 37 S.W.3d 300 (Mo. App. 2000). The existence of appellate case law, however, shows that lawsuits arising from claims of stolen guns are a reality, and can substantially burden the owners.

3

not a fire hazard. *See* Defendants' Memorandum of Law in Support of Defendants' Cross-Motion for Summary Judgment, at pp. 14-16. As to the former justification, if one takes Defendants at their word that the relative paucity of available ranges in New York City "is a function of the marketplace in the City for such activities and businesses - which may change at any time," Defendants' Memorandum at p. 5, n.3, then it stands to reason that market forces will require the creation of new ranges to accommodate those shooters who are prohibited from leaving New York City with their firearm, which would increase the number of firearms being transported such that there would ultimately be no net effect on the number of firearms being transported in New York City.[3] As Defendants have no legitimate interest in the fire-retardant nature of gun ranges outside of the borders of New York City, the latter justification fails on its face to support the restriction on transportation.

### 3. Even under intermediate scrutiny, the regulation still fails.

Defendants argue, not surprisingly, that strict scrutiny does not apply. They contend that if any level of heightened scrutiny should apply, it would be intermediate scrutiny. *See* Defendants' Memorandum at pp. 8-13. Defendants make this argument because they must. They do not even attempt to make an argument under strict scrutiny.[4]

Even if Defendants are correct about the level of scrutiny, which Plaintiffs contest, the regulation should still be found unconstitutional. Under intermediate scrutiny, a regulation "passes constitutional muster only if it is substantially related to the achievement of an important

---

[3] Defendants do not address the very real chilling effect that the challenged regulation will have, and is probably intended to have, on the exercise of Second Amendment rights in New York City. That chilling effect will be a drag on the economic model introduced by Defendants in their Memorandum and discussed above. Intentionally chilling the exercise of a fundamental right can never be a legitimate government interest.

[4] In their initial Memorandum of Law, Plaintiffs demonstrated that, because the challenged regulation impinges upon a fundamental right protected by the Constitution, strict scrutiny should apply, and that the regulation does not satisfy this rigorous standard. *See* Plaintiffs' Memorandum of Law, pp. 14-20. That demonstration is re-incorporated as if fully re-stated and is not repeated here.

4

governmental interest." *Kachalsky v. County of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012). Although Defendants could potentially state an important government interest "in public safety and crime prevention," *id.* at 97, the relationship between the interest and the regulation is far from substantial. 38 RCNY § 5-23 is significantly more broad than constitutionally permissible. Although it is not the Court's role to decide which alternative is preferable, the wide range of less restrictive alternatives underscores the lack of a substantial relationship between the interest and the regulation. Many of these less restrictive alternatives are already used by governments, including Defendants. For example, Defendants allow license holders to transport their firearms across the state for hunting purposes, if they: 1) obtain a special hunting authorization; 2) travel directly to and from an authorized hunting location; 3) transport their firearms unloaded in a locked container; and 4) carry their ammunition separately.[5] As these approaches demonstrate, New York has determined it can adequately further its interest in public safety without forcing upon its hunting citizens the complete transportation prohibition challenged here. The fact that Defendants have chosen a means that goes so far beyond what it has determined in another context to be necessary to promote its interests demonstrates that the challenged laws are not substantially related to the government interest; rather, they are related to concerns of efficiency and ease for the city's police force, a supposed "cure all" that is closer to a blanket prohibition on protected activity than it is a presumptively valid regulation tailored to purposefully advance an important government interest while not unnecessarily burdening a fundamental right.[6]

Instead of creating an alternative that allows individuals to transport their firearms from one

---

[5] Another constitutional failing of the challenged regulation is that it elevates hunting over self defense in the home, even though the latter has been identified as a core Second Amendment right.

[6] Defendants' interest in public safety and crime prevention is diminished outside of New York City's borders, and most of the conduct that is regulated by the challenged regulation would occur outside the borders of New York City.

5

licensed area to another for purposes directly and causally linked to the core Second Amendment right to keep and bear arms in one's home, Defendants have chosen an almost complete bar on any travel with a firearm. When one reads through Defendants' papers, the rationale is clear: it is easier for law enforcement and more convenient to almost completely ban the transport of firearms than to create a less restrictive alternative. The facts that the Defendants: (i) have chosen a significantly more restrictive alternative out of convenience does not make it constitutionally permissible,[7] and (ii) the regulation is overreaching and does not bear a substantial relationship to the interest allegedly being served, make this a constitutional issue rather than a policy one. Finally, the challenged regulation is so far outside the mainstream of existing firearm regulations nationally that it defies comparative analysis. Plaintiffs know of no other regulation, in any context, which intentionally burdens a fundamental right, discriminates against the residents of the regulating authority in favor of non-residents who may be passing through, and seeks to regulate primarily conduct outside of its own jurisdiction. These factors should cause the Court concern at the governmental overreach.

The subject regulation fails any level of heightened scrutiny, and must be invalidated.[8]

### 4. *Osterweil* does not bar the Plaintiffs' constitutional challenge.

Defendants incorrectly argue that the decision of the New York Court of Appeals in *Osterweil v. Bartlett*, 21 N.Y.3d 580 (2013), disposes of the Plaintiffs' Second Amendment

---

[7] Mere administrative ease and convenience are not sufficiently important objectives to justify classifications subjected to intermediate scrutiny. *See*, *e.g.*, *Stanley v. Illinois*, 405 U.S. 645, 656 (1972) (holding that such interests alone cannot support gender-based classifications); *Frontiero v. Richardson*, 411 U.S. 677, 690 (1973) (same).

[8] In their Memorandum, Defendants cite *Matter of Sgueglia v. Kelly*, 2014 N.Y. Misc. LEXIS 3393 (N.Y. Sup. Ct. July 11, 2014), to support their proposition that the challenged regulation is constitutional. There are several reasons why that case is not applicable. First, as Defendants admit, the court in *Sgueglia* was deciding an Article 78 Petition, which limited the case only to "'considering whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.'" *Id*. at *7 (quoting *Chinese Staff & Workers Assn. v. City of New York*, 68 N.Y.2d 359, 363 (1986)). Second, in *Sgueglia*, the petitioner did not assert a violation of the Second Amendment, so any consideration of Second Amendment-related case law consistent with the petition was both *dicta* and not fully briefed and explored. Third, *Sgueglia* was a state court decision interpreting a rule under a state *certiorari* review—the only federal issue was equal protection, which has not been raised in this case. *Sgueglia* was not facing a direct Second Amendment challenge, and its holding is therefore inapposite.

argument. The fact that an individual may possess licensed firearms in different residences in no way alleviates the substantial burden that is imposed on an individual who is not allowed to travel with his or her firearm from one licensed residence to a second licensed residence. If anything, *Osterweil* underscores the absurdity of Defendants' position. An individual who has been found to satisfy the requirements for possession of a licensed firearm by multiple licensing authorities is not allowed to transport that firearm from one residence to another; rather, he or she is financially burdened by the requirement to purchase an additional firearm for each location and is logistically burdened to safeguard those firearms while away from that residence.[9]

### 5. The challenged restriction actually deters travel.

Inexplicably, Defendants continue to argue that nothing about the challenged restriction deters travel or is designed to impede travel. *See* Defendants Memorandum of Law, p. 17. This assertion defies common sense, the intent of the regulation, and the evidence in the record. The purpose of the regulation is to deter travel with firearms—it expressly prohibits traveling with a firearm except under certain very limited conditions. Given the constitutional protection afforded to the right to bear arms, New York's regulation unequivocally requires an individual to choose which constitutional right he or she prefers—the right to travel or the right to keep and bear arms—as the regulation precludes the rights being exercised simultaneously, or in conjunction with one another

Even if the intent of the regulation were not to impede travel, the evidence shows that it has in fact done so. All of the individual Plaintiffs have testified that, but for the challenged regulation, they would travel to various locations throughout New York State or in other states to either go to a shooting range or a shooting competition to hone their skills with their firearm. Colantone Aff.

---

[9] Defendants assert, without any evidentiary proof, that an individual who has a home upstate can "voucher" their firearms with the local police. *See* Defendants' Memorandum at p.7. Although Defendants may offer this service for their residents, there is no evidence that other law enforcement agencies provide this service.

(Docket No. 10-1), ¶ 12-14; Irizarry Aff. (Docket No. 10-2), ¶ 9-10; Alvarez Aff. (Docket No. 10-3), ¶ 9-10. Defendants have not refuted that testimony, because they cannot.

### 6. Defendants misinterpret FOPA.

Defendants argue that because Plaintiffs were unable to "carry" their firearms at the time they embarked on their trip, the Firearms Owners' Protection Act ("FOPA"), 18 U.S.C. § 926A would not apply. Defendants misread the statute, however, and conflate the word "carry" with a requirement that the individual have a "carry license" in the state from which he or she originates. The statute requires that a person be allowed to transport a firearm "from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such a firearm." 18 U.S.C. § 926A. A "place," as defined in the statute, could be a home. An individual with a premises residence license has a right to possess and carry a firearm within his or her home as well as on his or her "premises." 38 RCNY § 5-23.[10] Black's Law Dictionary 1180-81 (6th ed. 1997) defines "premises" as follows:

> Land with its appurtenances and structures thereon. Premises is an elastic and inclusive term, and it does not have one definite and fixed meaning; its meaning is to be determined by its context and is dependent upon circumstances in which used, and may mean a room, shop, building, or any definite area.

By its plain language, FOPA protects Plaintiffs who pack their unloaded firearms into their cars, while on their premises, and transport those firearms directly to another place in which they are licensed to possess and carry a firearm.[11] Nothing in FOPA requires a "carry license." 38 RCNY § 5-23, in direct contradiction to FOPA, prohibits this conduct, making it void and unenforceable.

---

[10] The entirety of the *Heller* case focused on the legality of carrying a firearm in one's home.

[11] Neither of the cases relied upon by Defendants to support their arguments that one must be lawfully able to "carry" a firearm for FOPA to apply are relevant to the disposition of this case. *Beach v. Kelly*, 52 A.D.3d 436, 437 (1st Dep't 2008), is based on the erroneous holding that possession of a handgun is a privilege, and not a right. In *Toracco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 138 (2d Cir. 2010), the Second Circuit found that the officers had probable cause to institute the arrests at issue in that case, making any comment on the right to carry a firearm on one's person outside the home *dicta*.

8

### 7. The regulation discriminates in violation of the Dormant Commerce Clause.

Defendants concede that in order for a facially discriminatory law or rule to pass constitutional muster it must advance a legitimate local purpose and be the least restrictive means of achieving that purpose.[12] *See* Defendants' Memorandum of Law, p. 22. This is a burden Defendants cannot meet. 38 RCNY § 5-23 is discriminatory on its face because it allows holders of New York City premises residence licenses to practice shooting *only* at New York City ranges. The validity of the regulation then turns on whether it is the least restrictive means of advancing a legitimate local purpose. While public safety is generally a legitimate local purpose, simply slamming the door on any facility outside New York City is far from the least restrictive means of achieving this purpose.

The availability of less restrictive means demonstrates that the challenged law violates the Dormant Commerce Clause's prohibition against facially discriminatory laws.

### CONCLUSION

For the foregoing reasons, and those presented in Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, 38 RCNY § 5-23 violates the Second Amendment, the constitutional right to travel, the Firearm Owners Protection Act, the First Amendment rights to freedom of association and freedom of speech and the dormant Commerce Clause of the U.S. Constitution. This Court should issue summary judgment pursuant to Fed. R. Civ. P. 56 in the form of an Order: (1) granting declaratory judgment that 38 RCNY § 5-23 is unconstitutional on the above grounds; (2) permanently enjoining the implementation and enforcement of 38 RCNY § 5-23 by the New York City Police Department in any manner that prohibits or precludes the plaintiffs from traveling beyond either the borders of New York City or New York State with a licensed

---

[12] Defendants argue that facially nondiscriminatory regulations that have an incidental effect on interstate commerce must be subjected to the balancing test proscribed by *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Defendants Memorandum at p. 21. Though the challenged regulation would certainly fail an administration of the *Pike* test, such a test is not required in this case, because the challenged regulation is plainly facially discriminatory, forbidding Plaintiffs from traveling to shooting ranges and competitions in other states.

9

handgun to either travel to a second home or to attend a shooting range or competition; (3) awarding Plaintiffs attorneys fees and expenses; and (4) granting any other relief it deems appropriate.

Dated: August 29, 2014

Respectfully Submitted,

**GOLDBERG SEGALLA, LLP**
By:  /s/   Christopher Bopst_____
Brian T. Stapleton, Esq. (BS 5640)
Christopher Bopst, Esq. (CB 3168)
11 Martine Avenue, Suite 750
White Plains, New York 10606-1934
(914) 798-5400
bstapleton@goldbergsegalla.com
*Counsel For Plaintiffs*